**NOT YET SCHEDULED FOR ORAL ARGUMENT**

# United States Court of Appeals
# for the District of Columbia Circuit

### No. 25-5353

DR. RALPH DE LA TORRE, M.D.,

*Plaintiff-Appellant,*

*v.*

BILL CASSIDY, M.D., in his capacity as Chairman of the Committee on Health, Education, Labor, and Pensions of the United States Senate, *et al.*,

*Defendants-Appellees.*

*On Appeal from the United States District Court for the District of Columbia in No. 1:24-cv-02776-TNM, Honorable Trevor Neil McFadden*

## OPENING BRIEF OF APPELLANT

Derek L. Shaffer
Christopher G. Michel
William A. Burck
Alexander J. Merton
Rachel G. Frank
Kaylee A. Otterbacher
QUINN EMANUEL URQUHART
 & SULLIVAN LLP
1300 I Street, NW, Suite 900
Washington, DC 20005
(202) 538-8000
derekshaffer@quinnemanuel.com
christophermichel@quinnemanuel.com
williamburck@quinnemanuel.com
ajmerton@quinnemanuel.com
rachelfrank@quinnemanuel.com
kayleeotterbacher@quinnemanuel.com

DECEMBER 19, 2025

*Counsel for Plaintiff-Appellant*

CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES

In accordance with D.C. Circuit Rule 28(a)(1), counsel for Ralph de La Torre certify as follows:

### A.    PARTIES, AMICI, AND INTERVENORS

The parties who appeared before the district court were Dr. de la Torre, as Plaintiff, and Senator Bernard Sanders, Senator Bill Cassidy, M.D., Senator Patty Murray, Senator Robert P. Casey, Jr., Senator Tammy Baldwin, Senator Christopher Murphy, Senator Tim Kaine, Senator Margaret Wood Hassan, Senator Tina Smith, Senator Ben Ray Luján, Senator John W. Hickenlooper, Senator Edward J. Markey, Senator Susan M. Collins, Senator Lisa Murkowski, Senator Mike Braun, Senator Roger Marshall, M.D., Senator Mitt Romney, Senator Tommy Tuberville, Senator Markwayne Mullin, and Senator Ted Budd, in their official capacities as members of the Committee on Health, Education, Labor, and Pensions of the United States Senate, and the Committee on Health, Education, Labor, and Pensions of the United States Senate, as Defendants.  No intervenors or amici appeared before the district court.

The parties in this Court are Dr. de la Torre, as Plaintiff-Appellant, and Senator Bill Cassidy, M.D., Senator Bernard Sanders, Senator Patty Murray, Senator Tammy Baldwin, Senator Christopher Murphy, Senator Tim Kaine, Senator Margaret Wood Hassan, Senator John W. Hickenlooper, Senator Edward J. Markey, Senator Andy Kim, Senator Lisa Blunt Rochester, Senator Angela Alsobrooks, Senator Susan M. Collins, Senator Lisa Murkowski, Senator Markwayne Mullin, Senator Roger Marshall, M.D., Senator Tim Scott, Senator Josh Hawley, Senator Tommy Tuberville, Senator Jim Banks, Senator Jon Husted, and Senator Ashley Moody, in their official capacities as members of the Committee on Health, Education, Labor, and Pensions of the United States Senate,[1] and the Committee on Health, Education, Labor, and Pensions of the United States Senate, as Defendants-Appellees.

No intervenors or amici have appeared in this Court.

---

[1] Former Defendants Robert P. Casey, Jr., Tina Smith, Ben Ray Luján, Mike Braun, Mitt Romney, and Ted Budd are no longer members of the Committee and thus have been "automatically substituted with the current members of the HELP Committee, insofar as the membership has changed." *See* JA 122 n.1.

## B.    RULINGS UNDER REVIEW

This appeal seeks review of the following:

1.    The order of the Honorable Trevor N. McFadden, entered on September 16, 2025, which is reprinted in the Joint Appendix at JA 144. The Order is not yet published in the *Federal Supplement*.

2.    The memorandum opinion accompanying the Order, also entered on September 16, 2025, which is reprinted at JA 122-43.  The Memorandum Opinion is not yet published in the *Federal Supplement*, but is available electronically at 2025 WL 2651248.

## C.    RELATED CASES

This case has not previously been on review before this Court or any other court, other than the district court, which issued the rulings being appealed.


*/s/ Derek L. Shaffer*
Derek L. Shaffer

*Counsel for Plaintiff-Appellant*
*Ralph de la Torre*

# TABLE OF CONTENTS

**Page**

Certificate As To Parties, Rulings, And Related Cases ...........................i

Table Of Authorities ..........................................................................vi

Introduction ......................................................................................1

Statement Of Jurisdiction .................................................................3

Statement Of The Issues ...................................................................4

Statement Of The Case .....................................................................5

    A.    Factual Background ..............................................................5

    B.    District Court Proceedings ....................................................9

Summary Of The Argument ..............................................................11

Standard Of Review ..........................................................................13

Argument ..........................................................................................15

I.    THE DISTRICT COURT ERRED IN PLACING ON PLAINTIFF THE BURDEN TO DISPROVE SPEECH OR DEBATE CLAUSE IMMUNITY ....................................................15

    A.    Every Circuit Requires Defendants To Prove That Immunity Applies ...................................................................16

    B.    The District Court Erred In Its Speech Or Debate Immunity Analysis ................................................................19

    C.    The District Court's Burden Allocation Requires Reversal .................................................................................23

II.     THE DISTRICT COURT ERRED IN HOLDING THAT
        SPEECH OR DEBATE IMMUNITY PROTECTS
        COMPELLING A WITNESS TO APPEAR SOLELY TO
        INVOKE THE FIFTH AMENDMENT ........................................... 23

        A.     Compelling Public Fifth Amendment Invocation Is Not
               A Legislative Act ................................................................. 24

        B.     The District Court Failed To Analyze Whether This
               Specific Conduct Was Legislative ....................................... 29

III.    AT A MINIMUM, JURISDICTIONAL DISCOVERY IS
        WARRANTED ........................................................................... 37

Conclusion ........................................................................................ 43

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Am. Nat'l Ins. Co. v. F.D.I.C.*,
    642 F.3d 1137 (D.C. Cir. 2011) .......................................................... 14

*Banneker Ventures, LLC v. Graham*,
    798 F.3d 1119 (D.C. Cir. 2015) ........................................................ 23

*Bethune-Hill v. Va. State Bd. of Elections*,
    114 F. Supp. 3d 323 (E.D. Va. 2015) ................................................ 22

*Blassingame v. Trump*,
    87 F.4th 1 (D.C. Cir. 2023) ......................................................... 17, 19

*Broidy Cap. Mgmt. LLC v. Muzin*,
    12 F.4th 789 (D.C. Cir. 2021)............................................................ 20

*Bryant v. Jones*,
    575 F.3d 1281 (11th Cir. 2009) ......................................................... 18

*Burns v. Reed*,
    500 U.S. 478 (1991)............................................................................ 17

*Canary v. Osborn*,
    211 F.3d 324 (6th Cir. 2000)............................................................. 18

*Collins v. N.Y. Cent. Sys.*,
    327 F.2d 880 (D.C. Cir. 1963) ........................................................... 42

*Ctr. for Biological Diversity v. U.S. Int'l Dev. Fin. Corp.*,
    77 F.4th 679 (D.C. Cir. 2023)............................................................ 13

*Davis v. Grant Park Nursing Home LP*,
    639 F. Supp. 2d 60 (D.D.C. 2009) ..................................................... 14

*Doe v. McMillan*,
    412 U.S. 306 (1973).................................................................... 32, 34

*Eastland v. U.S. Servicemen's Fund*,
    421 U.S. 491 (1975)............................................... 24, 25, 26, 30, 31, 33

*Farouki v. Petra Int'l Banking, Corp.*,
    683 F. Supp. 2d 23 (D.D.C. 2010) ....................................... 14

*Fields v. Off. of Eddie Bernice Johnson*,
    459 F.3d 1 (D.C. Cir. 2006) ................................................ 16

*Forrester v. White*,
    484 U.S. 219 (1988)................................................... 17, 18

*Gov't of V.I. v. Lee*,
    775 F.2d 514 (3d Cir. 1985) ......................................... 16, 17

*In re Grand Jury Inves.*,
    587 F.2d 589 (3d Cir. 1978) ......................................... 18, 23

*Gravel v. United States*,
    408 U.S. 606 (1972).........................................15, 24, 27, 30, 31, 32, 34

*GTE New Media Servs., Inc. v. BellSouth Corp.*,
    199 F.3d 1343 (D.C. Cir. 2000) ........................................... 39

*Hafer v. Melo*,
    502 U.S. 21 (1991)............................................................ 18

*Herbert v. Nat'l Acad. of Scis.*,
    974 F.2d 192 (D.C. Cir. 1992) ........................................... 42

*Highmark Inc. v. Allcare Health Mgmt. Sys., Inc.*,
    572 U.S. 559 (2014)........................................................... 14

*Ivanenko v. Yanukovich*,
    995 F.3d 232 (D.C. Cir. 2021) ........................................... 20

*Jewish War Veterans of the U. S. of Am., Inc. v. Gates*,
    506 F. Supp. 2d 30 (D.D.C. 2007) ...................................... 40

*Jud. Watch, Inc. v. Schiff*,
    998 F.3d 989 (D.C. Cir. 2021) ........................................... 33

vii

*Kamplain v. Curry Cnty. Bd. of Comm'rs*,
   159 F.3d 1248 (10th Cir. 1998) ......................................................... 18

*Kilbourn v. Thompson*,
   103 U.S. 168 (1880) ........................................................................... 32

*King v. Jackson*,
   487 F.3d 970 (D.C. Cir. 2007) .......................................................... 14

*Lewis v. Mutond*,
   62 F.4th 587 (D.C. Cir. 2023)............................................................ 38

*Lujan v. Defs. of Wildlife*,
   504 U.S. 555 (1992) ..................................................................... 19, 20

*Massie v. Pelosi*,
   72 F.4th 319 (D.C. Cir. 2023)............................................................ 20

*McGrain v. Daugherty*,
   273 U.S. 135 (1927) ........................................................................... 26

*McSurely v. McClellan*,
   521 F.2d 1024 (D.C. Cir. 1975) .......................................... 1, 26, 31, 35

*McSurely v. McClellan*,
   553 F.2d 1277 (D.C. Cir. 1976) ............................... 1, 2, 26, 30, 31, 35

*Meadows v. Pelosi*,
   639 F. Supp. 3d 62 (D.D.C. 2022) ..................................................... 21

*MINPECO, S.A. v. Conticommodity Servs., Inc.*,
   844 F.2d 856 (D.C. Cir. 1988) ..................................................... 14, 30

*Musgrave v. Warner*,
   104 F.4th 355 (D.C. Cir. 2024)................................... 15, 30, 38, 39, 42

*Quinn v. United States*,
   349 U.S. 155 (1955).................................................................25, 29, 33

*In re Sealed Case*,
   80 F.4th 355 (D.C. Cir. 2023)............................................................ 41

*Sparrow v. United Air Lines, Inc.*,
216 F.3d 1111 (D.C. Cir. 2000) .......................................................... 27

*Thomas v. Principi*,
394 F.3d 970 (D.C. Cir. 2005) ............................................................ 14

*Trevino By & Through Cruz v. Gates*,
23 F.3d 1480 (9th Cir. 1994) ............................................................... 18

*Trump v. Mazars USA, LLP*,
591 U.S. 848 (2020) ..................................................................... 24, 25

*United States v. Brewster*,
408 U.S. 501 (1972) ................................................................ 18, 26, 37

*United States v. Cross*,
170 F. Supp. 303 (D.D.C 1959) ................................................... 2, 26, 28

*United States v. Menendez*,
831 F.3d 155 (3d Cir. 2016) ................................................................ 17

*United States v. Rostenkowski*,
59 F.3d 1291 (D.C. Cir. 1995) .................................................. 16, 19, 21

*Watkins v. United States*,
354 U.S. 178 (1957) ............................................................. 2, 24, 25, 26

*Williams v. Big Picture Loans, LLC*,
929 F.3d 170 (4th Cir. 2019) .............................................................. 21

## **Statutes**

28 U.S.C. § 1291 ..................................................................................... 3

28 U.S.C. § 1331 ................................................................................. 3, 19

28 U.S.C. § 2107(b) ................................................................................ 4

## **<u>Rules</u>**

Fed. R. App. Proc. 4(a)(1)(B) ..................................................................... 4

Senate R. XXV(l)(1) ................................................................................. 29

INTRODUCTION

In sweeping terms, the district court held that any Congressional action bearing the formalities of legislative procedure—no matter how divorced from a legitimate legislative purpose—receives categorical Speech or Debate immunity and is therefore impervious to judicial review.  The district court thus afforded Congress free license to do its worst upon going through the motions of legislative procedure.  In this case, the result was absolute immunity for Congress's coercive efforts to compel a citizen to appear on national television for the sole purpose of chilling and penalizing his invocation of the Fifth Amendment.

This Court has foreclosed that reasoning, explaining that the Speech or Debate Clause "is not a license to invade privacy where no legislative purpose can be plausibly interposed." *McSurely v. McClellan*, 553 F.2d 1277, 1296 (D.C. Cir. 1976) (en banc).  "Congressional investigative activities—*e.g.*, holding hearings, issuing subpoenas ... may lose their protected status if no conceivable legislative purpose can be found for those activities in a particular case." *McSurely v. McClellan*, 521 F.2d 1024, 1039 n.60 (D.C. Cir. 1975).  That is for good reason.  Under the district court's logic, Congress could haul any witness before the

1

cameras precisely to prompt the adverse inference of criminality that the Fifth Amendment and constitutional presumption of innocence are designed to prohibit—even when Congress knows the witness will rightly provide no testimony at all. Nor are those specters remote. As members of Congress themselves put it, the avowed goal here was to make Dr. de la Torre "take the Fifth Amendment right out in public for everyone to see." JA 60 (Am. Compl. ¶ 53 n.19).

Orchestrating a public spectacle to generate prejudicial inferences against a witness is not a legislative act. Just like the confiscation and retention of non-essential documents in *McSurely*, 553 F.2d at 1296, it advances no deliberative or information-gathering function of Congress. The district court's holding thus expands the Speech or Debate Clause beyond proper bounds. Far from protecting legislative deliberation, the district court's reasoning allows the Clause to be distended to immunize brazen violation of constitutional rights. The Fifth Amendment protects not only the right to remain silent, but the right to do so without being subjected to government-staged humiliation and stigmatization designed to chill its exercise. *See Watkins v. United States*, 354 U.S. 178, 187 (1957); *United States v. Cross*, 170 F. Supp. 303, 309 (D.D.C 1959). When

2

Congress knows beforehand that a witness will offer no testimony—when silence is the only possible outcome—compelling a public appearance serves no legislative purpose. Rather, it is calculated only to penalize and chill the invocation of constitutional rights.

Compounding its error, the district court placed the burden on Dr. de la Torre to disprove Congressional immunity while simultaneously denying him the discovery necessary to meet that burden. This created a perfect storm of judicial abdication: Congress may assail constitutional rights, claim immunity, demand that citizens disprove it before accessing relevant evidence, and thereby evade all judicial review and accountability. That betrays the Framers' intent for the Speech or Debate Clause, which is meant to safeguard legislative independence— not to provide absolute sanctuary for constitutional violations. This Court should reverse.

## STATEMENT OF JURISDICTION

The district court had jurisdiction under 28 U.S.C. § 1331. This is an appeal from the final judgment of the district court, which this Court has jurisdiction to hear under 28 U.S.C. § 1291. The district court entered its final judgment on September 16, 2025. JA 144. Sixteen days

following entry of final judgment, on October 2, 2025, Dr. Ralph de la Torre noticed this appeal, JA 11, satisfying the 60-day limit provided by 28 U.S.C. § 2107(b) and Federal Rule of Appellate Procedure 4(a)(1)(B).

## STATEMENT OF THE ISSUES

I.    Whether the district court erred as a matter of law by requiring plaintiff to disprove defendants' entitlement to Speech or Debate Clause immunity, departing from established precedent in this Circuit and the unanimous rule in other circuits that the party invoking immunity bears the burden of proving it applies.

II.    Whether the district court erred as a matter of law by categorically immunizing Congressional subpoena enforcement against any judicial review, on the theory that such enforcement necessarily constitutes a permissible "legislative action," even where the sole function of the purported enforcement is to punish and procure silence as a result of the witness's stated exercise of his Fifth Amendment rights.

III.    Whether the district court abused its discretion by denying any jurisdictional discovery based on its erroneous conclusion that no facts could affect the Speech or Debate analysis, despite Dr. de la Torre's

4

targeted requests for information bearing directly on whether the challenged acts served any legislative function.

## STATEMENT OF THE CASE

### A.    Factual Background

Dr. Ralph de la Torre served as Chairman and Chief Executive Officer of Steward Health Care System LLC, one of the nation's largest private healthcare systems operating dozens of hospitals across nine states.  JA 45, 50 (Am. Compl. ¶¶ 1, 11).  Like many healthcare systems, Steward faced severe financial challenges from the COVID-19 pandemic, nationwide healthcare labor shortages, and inflationary pressures.  JA 56-57 (Am. Compl. ¶¶ 44-45).  In May 2024, Steward filed for Chapter 11 bankruptcy protection.  JA 57 (Am. Compl. ¶ 46).

Members of the Senate Health, Education, Labor, and Pensions Committee thereafter launched a public campaign portraying Dr. de la Torre as a criminal who destroyed Steward for personal gain.  Senators Bernard Sanders and Ed Markey demanded that Dr. de la Torre "get off of his yacht and explain to Congress how much he has gained financially while bankrupting the hospitals he manages."  JA 57-58 (Am. Compl. ¶ 47).  Senator Markey claimed Dr. de la Torre "pocketed hundreds of

millions of dollars and used it to engage in international schemes, spy on corporate rivals, and purchase luxury goods." JA 58 (Am. Compl. ¶ 47). The Committee also publicly announced that Steward was "the subject of a federal investigation over alleged fraud and violations of the Foreign Corrupt Practices Act." JA 58 (Am. Compl. ¶ 47).

In service of this campaign, the Committee launched an investigation into Steward and issued a subpoena to Dr. de la Torre on July 25, 2024, commanding his appearance at a September 12, 2024 hearing titled, "Examining the Bankruptcy of Steward Health Care: How Management Decisions Have Impacted Patient Care." JA 45 (Am. Compl. ¶ 3). The Hearing was explicitly intended to be a "day of reckoning" to "hold Dr. de la Torre accountable" for an alleged "elaborate Ponzi scheme" that "t[ook] over a massive hospital system and then loot[ed] it" for personal gain. JA 58-59 (Am. Compl. ¶ 49).

In the face of the Committee's predetermined claims of criminal wrongdoing, on September 4, 2024—more than a week before the hearing—Dr. de la Torre formally invoked his Fifth Amendment privilege against self-incrimination and informed the Committee he would provide no substantive testimony. JA 59 (Am. Compl. ¶¶ 50-51). The Committee

responded the next day, explicitly acknowledging that Dr. de la Torre had invoked "[t]he Fifth Amendment privilege against self-incrimination" as a reason why "it would be inappropriate to compel [him] to appear before the Committee." JA 59 (Am. Compl. ¶ 51). The Committee made no inquiry into the scope or the basis for Dr. de la Torre's Fifth Amendment invocation, nor did it take further action in pursuit of the facts it purported to seek from Dr. de la Torre. JA 59-60 (Am. Compl. ¶ 52). The Committee did not seek documents from Dr. de la Torre, nor offer a closed hearing where Dr. de la Torre's confidentiality obligations could be honored. JA 60 (Am. Compl. ¶ 52). Instead, the Committee commanded his appearance under threat of "criminal penalties." JA 59 (Am. Compl. ¶ 51).

It soon became clear that the Committee was out to induce the public to infer criminal misconduct. JA 60 (Am. Compl. ¶ 53). Senator Elizabeth Warren declared that, "if Mr. de la Torre believes [his] answers will put him at risk for going to jail, he can take the Fifth Amendment right out in public for everyone to see." JA 60 (Am. Compl. ¶ 53 n.19). Senator Edward Markey promised they would "not stop until" Dr. de la

Torre either "answers for what he has done or is put behind bars." JA 60 (Am. Compl. ¶ 53 n.18).

When Dr. de la Torre did not appear at the September 12 hearing, Committee members and witnesses used his absence to smear him publicly. JA 46-47 (Am. Compl. ¶ 5). They branded him a "health care terrorist," called for his imprisonment, and labeled him a "coward." JA 46-47 (Am. Compl. ¶ 5). Senator Bill Cassidy declared that refusing to provide answers was "contemptible." JA 48 (Am. Compl. ¶ 8). Senators Sanders and Cassidy claimed it was "essential" to receive Dr. de la Torre's testimony despite knowing he would invoke the Fifth Amendment. JA 48 (Am. Compl. ¶ 8).

On September 18, 2024, Dr. de la Torre reiterated his Fifth Amendment invocation to the Committee via letter. JA 61 (Am. Compl. ¶ 57). The next day, the Committee passed both civil and criminal contempt resolutions against him. JA 61-62 (Am. Compl. ¶ 58).

On September 23, 2024, Senator Sanders reported the criminal contempt resolution to the full Senate floor. JA 63 (Am. Compl. ¶ 61). Neither Senator Sanders nor Senators Cassidy and Markey—who spoke on September 25 in favor of the resolution—mentioned Dr. de la Torre's

Fifth Amendment invocation.  JA 63-64 (Am. Compl. ¶ 62).  They omitted that Dr. de la Torre had invoked his Fifth Amendment rights on September 4; that the Committee acknowledged such invocation on September 5; that the hearing proceeded as punishment for the invocation; and that Dr. de la Torre reminded the Committee of his invocation after the hearing.  JA 63-64 (Am. Compl. ¶ 62).  The Senate unanimously passed the criminal contempt resolution on September 25, 2024.  JA 64 (Am. Compl. ¶ 63).  Committee members continue to assert that Dr. de la Torre "remains in violation of [the Committee's] subpoena." JA 63 (Am. Compl. ¶ 61).

## B.    DISTRICT COURT PROCEEDINGS

Dr. de la Torre filed this action on September 30, 2024, seeking declaratory and injunctive relief.  JA 12.  He asserted that compelling his appearance solely to invoke the Fifth Amendment publicly violated his constitutional rights and exceeded Congress's legislative authority.  JA 66-71 (Am. Compl. ¶¶ 67-86).

Defendants moved to dismiss, claiming absolute Speech or Debate Clause immunity for all subpoena-related activities.  JA 73.  They invoked this same immunity to oppose Dr. de la Torre's narrowly tailored

requests for jurisdictional discovery.  JA 120; ECF 22 at 29-30; ECF 25 at 15-16.[2]

The district court granted Defendants' motion on September 16, 2025.  JA 144.  It held that Speech or Debate immunity jurisdictionally barred all of Dr. de la Torre's claims.  JA 140.  It found that the Committee's healthcare investigation fell within its legislative jurisdiction and that all challenged conduct—issuing the subpoena, declining to excuse Dr. de la Torre's appearance, and voting on contempt resolutions—constituted legislative acts.  JA 126.

The court placed the burden on Dr. de la Torre to disprove immunity, reasoning that the jurisdictional dimensions of Speech or Debate immunity in this Circuit obligate plaintiffs to demonstrate its inapplicability.  JA 126.  The court distinguished contrary authority without meaningful explanation and failed to follow precedent from this Court holding that legislators bear the burden of proving Speech or Debate applicability.  JA 126.

---

[2]  ECF numbers refer to filings in the district court docket, No. 1:24-cv-02776.  The docket sheet is reproduced at JA 8-11.

The court never analyzed whether compelling Dr. de la Torre's appearance in the wake of his Fifth Amendment invocation served any legislative function. Instead, it stated that the "only purpose argument that could succeed would be that the Committee's investigation was completely unrelated to its legislative purview." JA 136. The court denied all jurisdictional discovery, characterizing Dr. de la Torre's requests as seeking only information about "the Committee's knowledge about his Fifth Amendment invocation." JA 141.

Dr. de la Torre timely appealed on October 2, 2025. JA 11.

## SUMMARY OF THE ARGUMENT

The district court's dismissal rests on three fundamental errors, each of which independently warrants reversal.

I.    The district court misallocated the burden of proof by requiring Dr. de la Torre to disprove Speech or Debate Clause immunity rather than requiring Defendants to prove their entitlement to it. Every circuit to address this issue—including this one—holds that legislators bear the burden of proving immunity applies. This uniform approach reflects courts' treatment of immunities generally: the official claiming immunity must justify it. The district court's departure from this

11

universal rule is not only unprecedented but squarely contrary to governing precedent.

II.    Regardless of which party bears the burden of proof, the conduct here falls outside Speech or Debate protection.  Compelling a witness to appear publicly, solely to exact penalties and induce adverse inferences for invoking the Fifth Amendment, is not a legislative act protected by the Speech or Debate Clause.  Notably, the district court did not, as required by the Speech or Debate Clause, analyze whether this specific conduct served any legislative function.  Instead, it treated all subpoena-related activities as categorically immune simply because the healthcare investigation fell within the Committee's jurisdiction.  But jurisdiction to investigate a particular subject does not immunize every action taken during that investigation.  Otherwise, Congress could just as easily misuse its investigations as fig leaves for, *e.g.*, perpetrating invidious racial discrimination and censorship, ends which courts have expressly held are unprotected by the Speech or Debate Clause.

Congressional subpoena power exists to secure information necessary to craft and debate legislation.  Once Dr. de la Torre invoked his Fifth Amendment privilege and informed the Committee he would

12

provide no testimony, compelling his appearance could yield only silence—not information in furtherance of legislating. Forcing a witness to invoke constitutional protections on national television serves only to punish, create spectacle, and chill exercise of constitutional rights—not to advance legislation.

III.   At a minimum, the district court abused its discretion in denying jurisdictional discovery.  Dr. de la Torre sought specific documents about what information, if any, the Committee expected to obtain from his appearance—facts directly relevant to whether compelling that appearance served any legislative function.  The district court's blanket denial, after misallocating the burden of proof at the threshold, unfairly precluded Dr. de la Torre from developing facts essential to the jurisdictional inquiry.

This Court should reverse and remand with instructions to reallocate the burden of proof and analyze the immunity within prescribed bounds.

## STANDARD OF REVIEW

This Court reviews de novo the grant of a motion to dismiss. *See Ctr. for Biological Diversity v. U.S. Int'l Dev. Fin. Corp.*, 77 F.4th 679,

685 (D.C. Cir. 2023) (citing *King v. Jackson*, 487 F.3d 970, 972 (D.C. Cir. 2007)).   This Court must "assume the truth of all material factual allegations in the complaint and 'construe the complaint liberally, granting plaintiff the benefit of all inferences that can be derived from the facts alleged' … and upon such facts determine jurisdictional questions." *Am. Na'l Ins. Co. v. F.D.I.C.*, 642 F.3d 1137, 1139 (D.C. Cir. 2011) (quoting *Thomas v. Principi*, 394 F.3d 970, 972 (D.C. Cir. 2005)).

Whether the party asserting Speech or Debate Clause immunity bears the burden of establishing their entitlement to immunity is a question of law that this Court reviews de novo.  *See Highmark Inc. v. Allcare Health Mgmt. Sys., Inc.*, 572 U.S. 559, 563 (2014).  Similarly, whether the Speech or Debate Clause applies to particular conduct is "a pure question of law that [this Court] review[s] de novo." *MINPECO, S.A. v. Conticommodity Servs., Inc.*, 844 F.2d 856, 859 (D.C. Cir. 1988).

The standard for permitting jurisdictional discovery in this Circuit is "quite liberal," *Farouki v. Petra Int'l Banking, Corp.*, 683 F. Supp. 2d 23, 28 (D.D.C. 2010) (quoting *Davis v. Grant Park Nursing Home LP*, 639 F. Supp. 2d 60, 75 (D.D.C. 2009) (citation omitted)).  A court abuses its discretion when it denies discovery that "could produce information that

would affect the Speech-or-Debate analysis." *Musgrave v. Warner*, 104 F.4th 355, 366 (D.C. Cir. 2024).

ARGUMENT

## I.    THE DISTRICT COURT ERRED IN PLACING ON PLAINTIFF THE BURDEN TO DISPROVE SPEECH OR DEBATE CLAUSE IMMUNITY

Immunity from suit is an extraordinary privilege and the party invoking it must establish whether such protection is merited. The Speech or Debate Clause provides immunity only for acts that are legislative in nature, thereby protecting legislative independence but permitting meaningful opportunity for judicial review of constitutional violations. *Gravel v. United States*, 408 U.S. 606, 625 (1972). In confronting the immunity dispute here, the district court erred by placing the burden on Dr. de la Torre to disprove application of Speech or Debate Clause immunity to Defendants' conduct. Tellingly, every circuit to address this issue—including this one—has held that legislators bear the burden of proving immunity applies. By parting ways, the district court transformed an already formidable privilege into a virtually insuperable barrier—effectively shielding from judicial review any and all

15

Congressional actions taken on the floor, even ones that are flagrantly illegal.

### A. Every Circuit Requires Defendants To Prove That Immunity Applies

This Court has already held that legislators must demonstrate their conduct is protected by the Speech or Debate Clause. *See United States v. Rostenkowski*, 59 F.3d 1291, 1300 (D.C. Cir. 1995) ("[The] burden of establishing the applicability of legislative immunity, by a preponderance of the evidence, rests with [legislator]." (quoting *Gov't of V.I. v. Lee*, 775 F.2d 514, 524 (3d Cir. 1985))). Dr. de la Torre need not prove the absence of immunity—"[r]ather, the burden of proof is the other way round." *Id.*

In *Fields v. Office of Eddie Bernice Johnson*, this Court reinforced this point when a plurality of the Court obliged a Congressional office to provide an affidavit "recounting facts sufficient to show that the challenged [action was] ... protected by the Speech or Debate Clause." 459 F.3d 1, 16 (D.C. Cir. 2006) (plurality op.). In order "[t]o invoke the Speech or Debate Clause," the defendant—not the plaintiff—must come forward with evidence establishing their entitlement to immunity. *Id.*

16

("To invoke the Speech or Debate Clause, the employing office should include with this evidence an affidavit ....").

This uniform approach tracks the Supreme Court's treatment of absolute immunity. Any official seeking absolute immunity bears the burden of demonstrating it applies. *Burns v. Reed*, 500 U.S. 478, 486 (1991) ("[T]he official seeking absolute immunity bears the burden of showing that such immunity is justified for the function in question.") (collecting cases). This mandate governs defendants seeking to apply prosecutorial immunity, *see id.*, judges claiming judicial immunity, *Forrester v. White*, 484 U.S. 219, 224 (1988), and presidents claiming executive immunity, *Blassingame v. Trump*, 87 F.4th 1, 30 (D.C. Cir. 2023). Immunity under the Speech or Debate Clause should be no different.

Every other circuit to address this issue agrees. For nearly 50 years, the Third Circuit has maintained that a "Member seeking to invoke the Clause's protections bears the burden of establishing the applicability of legislative immunity by a preponderance of the evidence."

*See United States v. Menendez*, 831 F.3d 155, 165 (3d Cir. 2016) (cleaned up); *see also Gov't of V.I.*, 775 F.2d at 524 ("Since Senator Lee is asserting

17

a legislative privilege, the burden of establishing the applicability of legislative immunity, by a preponderance of the evidence, rests with him."); *In re Grand Jury Inves.*, 587 F.2d 589, 597 (3d Cir. 1978). The Eleventh Circuit likewise requires legislators to "'show that such immunity is justified for the governmental function at issue.'" *Bryant v. Jones*, 575 F.3d 1281, 1304 (11th Cir. 2009) (quoting *Hafer v. Melo*, 502 U.S. 21, 28-29 (1991)).[3]

The Speech or Debate Clause protects legislative independence; it does not exempt Members of Congress from ordinary proof requirements. *United States v. Brewster*, 408 U.S. 501, 516 (1972). Keeping the burden on defendants to establish their immunity helps guard against "extend[ing] the scope of the [Clause's] protection further than its purposes require." *See Forrester*, 484 U.S. at 224.

---

[3]    Sister circuits similarly place the burden on state or local legislators to demonstrate their common-law legislative immunity. *See Canary v. Osborn*, 211 F.3d 324, 328 (6th Cir. 2000); *Kamplain v. Curry Cnty. Bd. of Comm'rs*, 159 F.3d 1248, 1251 (10th Cir. 1998); *Trevino By & Through Cruz v. Gates*, 23 F.3d 1480, 1482 (9th Cir. 1994); *Bryant*, 575 F.3d at 1304.

### B. The District Court Erred In Its Speech Or Debate Immunity Analysis

In departing from the established, uniform rule, the district court erroneously conflates a plaintiff's general obligation to establish the court's subject matter jurisdiction over the claims with defendants' separate burden to prove entitlement to an immunity defense. In fact, each are separate inquiries involving distinct burden allocations.

As an initial matter, there is no dispute that a plaintiff has the burden of establishing a federal court's subject matter jurisdiction. *See* JA 126 (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992)). Here, it is uncontested that 28 U.S.C. § 1331 confers subject matter jurisdiction on the district court to adjudicate Dr. de la Torre's claim. JA 51 (Am. Compl. ¶ 14).

Dr. de la Torre has facially established this Court's subject matter jurisdiction over his claims. At that point, Defendants bear the burden to prove that the Speech or Debate Clause immunizes the conduct challenged in the complaint. *See Rostenkowski*, 59 F.3d at 1300; *Blassingame*, 87 F.4th at 30. Rather than apply the straightforward rule set forth in *Rostenkowski*, *Blassingame*, and other absolute immunity cases, however, the district court treated the jurisdictional implications

19

of the Speech or Debate Clause as being transformative.  According to the district court, because Speech or Debate immunity is jurisdictional in this Circuit, *Massie v. Pelosi*, 72 F.4th 319, 321 (D.C. Cir. 2023), Dr. de la Torre bears the burden of disproving it just as he bears "the burden of proving federal subject matter jurisdiction under the usual rule [for deciding subject matter jurisdiction]."  JA 126.

Jurisdictional status, however, does not change the burden allocation when deciding specifically whether the Speech or Debate Clause applies.  This Court has never held that the jurisdictional nature of an immunity necessitates that plaintiffs disprove the applicability of immunity in every case in the same way a "party invoking federal jurisdiction" must establish the prerequisites to file in federal court.  *Cf. Lujan*, 504 U.S. at 561.  Even in cases where jurisdiction-stripping immunities are at issue, defendants bear the burden of proving they apply.  For example, foreign sovereign immunity may deprive a court's jurisdiction to adjudicate a claim, yet foreign sovereigns must nonetheless establish applicability of the immunity.  *Ivanenko v. Yanukovich*, 995 F.3d 232, 236 (D.C. Cir. 2021); *Broidy Cap. Mgmt. LLC v. Muzin*, 12 F.4th 789, 798-99 (D.C. Cir. 2021).  The same is true for

tribal sovereign immunity.  *See*, *e.g.*, *Williams v. Big Picture Loans, LLC*, 929 F.3d 170, 176-77 (4th Cir. 2019).  Speech or Debate immunity is "analogous" as a jurisdictional bar, *Meadows v. Pelosi*, 639 F. Supp. 3d 62, 72-73 (D.D.C. 2022), and the burden of demonstrating it properly lies with the invoking party.

Here, the district court erred by placing the burden of proof on Dr. de la Torre to negate Defendants' claimed immunity, rather than requiring Defendants—as the proponents of the jurisdiction-stripping defense—to establish that the Speech or Debate Clause affirmatively applies to the specific *ultra vires*, non-legislative conduct challenged in this case.  Strikingly, the district court disregarded clearly established precedent holding that the party *seeking to invoke the protection of an immunity* must establish its applicability.

In *Rostenkowski*, 59 F.3d at 1300, this Court squarely held that legislators bear the burden of proving Speech or Debate applicability.  While *Rostenkowski* concerned Speech or Debate as an evidentiary-privilege, as opposed to immunity-from-suit, the Court did not differentiate between the two categories for purposes of allocating the burden of proof, nor has any subsequent decision done so.  There is no

reason why the burden of proving immunity should change depending on whether immunity happens to be raised as a bar to suit or to evidence. *Rostenkowski* requires the Committee and its members to establish their entitlement to Speech or Debate immunity.

Whether the Clause is invoked as a defense to discovery or as an immunity from suit, the fundamental inquiry remains the same: "the party claiming the privilege must prove that the activities are 'an integral part of'" legislative activities. *Bethune-Hill v. Va. State Bd. of Elections*, 114 F. Supp. 3d 323, 331 (E.D. Va. 2015) (citation omitted). The district court dismissed this explicit burden-allocation language without explanation, asserting that it "support[ed] only the substantive privilege standard, not the burden-shifting proposition." JA 126. Not so. The court in *Bethune-Hill* both articulated and applied a burden-shifting proposition by identifying which party must establish a privilege applies (*i.e.*, the party claiming the privilege) and how (*i.e.*, by proving the activities are an "integral part" of legislative activities); by failing to come to grips with this, the district court erred.

22

### C.     The District Court's Burden Allocation Requires Reversal

The district court's approach to which party bears the burden to demonstrate Speech or Debate Immunity flips traditional litigation and precedent on its head.  The "information as to which [activities] were legislative acts is in [the members'] possession alone," not in Dr. de la Torre's.  *See In re Grand Jury Inves.*, 587 F.2d at 597.  The burden of "persuasion by a preponderance of the evidence" thus "falls on [them]." *Id.*  Accordingly, because the district court "failed to place the burden... to establish [the] entitlement to immunity" on Defendants, if "the record and briefing before [this Court] do[es] not enable [the Court] *definitively* to apply the correct immunity analysis," the Court should "vacate the district court's dismissal of the claims ... and remand for further proceedings." *Banneker Ventures*, *LLC v. Graham*, 798 F.3d 1119, 1139 (D.C. Cir. 2015) (emphasis added).

## II.     THE DISTRICT COURT ERRED IN HOLDING THAT SPEECH OR DEBATE IMMUNITY PROTECTS COMPELLING A WITNESS TO APPEAR SOLELY TO INVOKE THE FIFTH AMENDMENT

The Speech or Debate Clause is not absolute.  When Dr. de la Torre invoked the Fifth Amendment and made clear he would provide no

23

testimony, the Committee's continued insistence on his appearance served no legislative purpose. A subpoena that can produce only silence—not information—cannot be "integral [to] the deliberative and communicative processes" that the Speech or Debate Clause protects. *Gravel*, 408 U.S. at 625.

### A. Compelling Public Fifth Amendment Invocation Is Not A Legislative Act

The Speech or Debate Clause protects only acts that are "legislative in nature." *Id.* The Supreme Court has carefully delineated that those acts must be "an integral part of the deliberative and communicative processes by which Members participate in committee and House proceedings." *Id.* This requires more than merely using legislative procedures—the act must actually serve legislative functions. *See Eastland v. U.S. Servicemen's Fund*, 421 U.S. 491, 502 (1975). Compelling a witness to appear solely to invoke the Fifth Amendment and face gratuitous, chilling public condemnation for it serves no such function.

Because Congressional subpoena power "is 'justified solely as an adjunct to the legislative process,'" Congressional subpoena power itself exists only to gather information needed to legislate. *See Trump v.*

*Mazars USA, LLP*, 591 U.S. 848, 862-63 (2020) (quoting *Watkins*, 354 U.S. at 197). The Supreme Court has repeatedly emphasized this limitation: A subpoena must "concern[] a subject on which legislation 'could be had.'" *Eastland*, 421 U.S. at 506. It "must serve a 'valid legislative purpose.'" *Mazars*, 591 U.S. at 863 (quoting *Quinn v. United States*, 349 U.S. 155, 161 (1955)). And it must be "related to, and in furtherance of, a legitimate task of the Congress." *Watkins*, 354 U.S. at 187.

These are not empty formalities, but substantive limits on Congressional power. In *Watkins*, the Court warned that Congressional investigative power "is not unlimited." *Id.* Congress cannot become "a law enforcement or trial agency." *Id.* It has "no general authority [of inquiry] ... without justification in terms of the functions of the Congress." *Id.* Similarly, in *Quinn*, the Court emphasized that Congress cannot "inquire into private affairs unrelated to a valid legislative purpose." 349 U.S. at 161. These limits derive from the separation of powers—Congress may not exercise "powers [] assigned under our Constitution to the Executive and the Judiciary." *Id.*

The subject of any Congressional inquiry "always must be one 'on which 'legislation could be had.'" *Eastland*, 421 U.S. at 504 n.15 (quoting *McGrain v. Daugherty*, 273 U.S. 135, 173 (1927)). Congress "has no power to compel [testimony] for other than a bona fide legislative purpose, even [if it] be relevant to the subject matter of the authorized investigation." *Cross*, 170 F. Supp at 306 (citing *Watkins*, 354 U.S. at 187). The Clause protects Congress's exercise of legitimate powers from judicial interference; it "does not extend beyond what is necessary to preserve the integrity of the legislative process." *Brewster*, 408 U.S. at 517.

This Court has applied these principles to find that even presumptively legislative acts lose Speech or Debate Clause protection when divorced from legislative purpose. "Congressional investigative activities—*e.g.*, holding hearings, issuing subpoenas ... may lose their protected status if no *conceivable legislative purpose* can be found from those activities in a particular case." *McSurely*, 521 F.2d at 1039 n.60 (emphasis added). The Committee's broad authorization to investigate "does not render everything [they do] ... privileged activity which is 'essential to legislating.'" *McSurely*, 553 F.2d at 1295 (en banc) (quoting

*Gravel*, 408 U.S. at 621). Even with "broad authorization for an investigation ... a Member of Congress ... is not free to use every conceivable means to obtain investigatory materials, without fear of ... suit." *Id.* at 1287.

The Committee's conduct far transgressed these constitutional bounds. Dr. de la Torre invoked his Fifth Amendment privilege before the hearing. JA 45-46, 59-60, 66-67 (Am. Compl. ¶¶ 4, 50-53, 71-74). The Committee knew "before the Hearing [] Dr. de la Torre informed the Committee that he could not provide testimony at the Hearing because he was invoking his Fifth Amendment rights." JA 59 (Am. Compl. ¶ 50). At the motion to dismiss stage, these allegations must be credited, accompanied by "the benefit of all inferences that [could] be derived." *Sparrow v. United Air Lines, Inc.*, 216 F.3d 1111, 1113 (D.C. Cir. 2000).

Once the Committee knew Dr. de la Torre invoked the Fifth Amendment, compelling his appearance could serve no legislative purpose. No testimony would be forthcoming. No documents would be produced. No information would aid the Committee's investigation into private equity's role in healthcare or Steward Health Care's bankruptcy. *See* JA 5, 132. The only possible result was silence. And when Congress

27

insists on compelling only what it knows it cannot constitutionally obtain—testimony—it reveals that its purpose is not information but punishment.  Such an exercise of compulsory power does not further any deliberative or communicative function of Congress; it simply manufactures a spectacle designed to generate the very adverse inferences that are prohibited under the Fifth Amendment.  *See Cross*, 170 F. Supp. at 309.

The Committee's insistence on requiring Dr. de la Torre to publicly reinvoke the Fifth Amendment is akin to Congress issuing a subpoena to someone physically incapable of testifying, discovering their condition, and insisting on their appearance anyway.  Whatever the validity of the initial subpoena, once Congress learned testimony is impossible, continued insistence could serve no legislative function.  Here, the constitutional protection of the Fifth Amendment creates the same impossibility.  Dr. de la Torre's invocation ensured his testimony would have left the Committee in the same position it was in before.

When the constitutional right to refuse testimony "is under attack by those who wrongly conceive of it as merely a shield for the guilty... governmental bodies must be most scrupulous in protecting its exercise."

*Quinn*, 349 U.S. at 164.  Compelling public invocation serves only to feed such misconceptions, not to gather legislative information.  This exceeds Congress's constitutional authority and falls outside Speech or Debate protection.

### B.    The District Court Failed To Analyze Whether This Specific Conduct Was Legislative

The district court never examined whether compelling Dr. de la Torre's appearance after he invoked the Fifth Amendment served any legislative purpose.  Instead, it analyzed the Committee's investigation generally, treating all subpoena-related activities as categorically immune.

The district court found that the Committee's healthcare investigation fell within its jurisdiction under Senate Rule XXV(l)(1), which grants authority over "[m]easures relating to education, labor, health and public welfare."  JA 123.  It also correctly found that initially issuing the subpoena to Dr. de la Torre was legislative.  JA 129.  Dr. de la Torre has never disputed either of these findings.  Yet the court failed to analyze the specific conduct Dr. de la Torre challenged:  compelling his appearance after the Committee knew he invoked the Fifth Amendment and no testimony would be forthcoming.  Instead, the court found that

issuing subpoenas, voting, and referring resolutions to the House or Senate were all legislative acts protected by immunity. JA 129-30.

But this categorial approach dissolves essential limitations on the Speech or Debate Clause. The Speech or Debate Clause "is not a license to invade privacy where no legislative purpose can be plausibly interposed." *McSurely*, 553 F.2d at 1296; *see also Gravel*, 408 U.S. at 626 (explaining that the Clause "does not purport to confer a general exemption upon Members of Congress from liability…"). Rather, Congress can only investigate subjects "on which legislation could be had," *Musgrave*, 104 F.4th at 363, such that courts are required to ask "whether *particular activities* other than literal speech or debate fall within the 'legitimate legislative sphere.'" *Eastland*, 421 U.S. at 503 (emphasis added) (citation omitted); *MINPECO, S.A.*, 844 F.2d at 860. Whether the Committee acted within the "legislative sphere" cannot be answered solely in reference to the overall legitimacy of an investigation.

That a Congressional investigation may fall "within the broad authorization of the Senate resolution does not render everything done … privileged activity which is 'essential to legislating.'" *McSurely*, 553 F.2d at 1295. Indeed, "investigative activities—*e.g.*, holding hearings,

30

issuing subpoenas … may lose their protected status if no *conceivable legislative purpose* can be found for those activities *in a particular case*." *McSurely*, 521 F.2d at 1039 n.60 (emphasis added). Thus, even with "broad authorization for an investigation," a Member of Congress "is not free to use every conceivable means to obtain investigatory materials without fear of prosecution or civil suit." *McSurely*, 553 F.2d at 1287.

In *Eastland*, for example, the Supreme Court examined whether a subpoena served the Subcommittee's authorized purpose. The Court found the subpoena sought information about "the sources of [] funds used [for] activities suspected ... to have a potential for undermining the morale of the Armed Forces"—directly relevant to the Subcommittee's charge to investigate "subversive activities." 421 U.S. at 506-07. The objective legislative purpose of the subpoena justified the immunity that followed. *Id.* at 507-08.

Conversely, in *Gravel*, the Supreme Court performed judicial review of illegal non-legislative actions flowing from immune legislative acts. 408 U.S. at 618-19. If the House orders an unconstitutional arrest, that order may be immune, but "those who made the arrest" are not. *Id.* at 618. "The Speech or Debate Clause could not be construed to

31

immunize an illegal arrest even though directed by an immune legislative act." *Id.* at 619. Similarly, creating a committee report receives immunity, but publicly disseminating private information from that report does not. *Doe v. McMillan*, 412 U.S. 306, 312, 315 (1973). Even in *Kilbourn v. Thompson*, 103 U.S. 168 (1880)—a case the district court raised *sua sponte* then distinguished as inapplicable, JA 134-35— the Supreme Court examined whether specific congressional acts served legitimate legislative purposes, without accepting broad claims of investigative authority. *See* 103 U.S. at 204-05.

Once Dr. de la Torre invoked his Fifth Amendment rights, the Committee's continued pursuit served no conceivable legislative function, regardless of the legitimacy of the broader investigation. The Committee knew it would gather no information to aid the Committee's investigation. JA 59-60 (Am. Compl. ¶¶ 50-53). Instead, members of Congress wanted Dr. de la Torre to "take the Fifth Amendment right out in public for everyone to see" and to face his "day of reckoning." JA 19, 35 (Am. Compl. ¶¶ 53 & n.19, 73). These statements reveal that the Committee's true function was to create a public spectacle, not to elicit information.

Forcing Dr. de la Torre to appear could yield only silence—the same silence the Committee already possessed through his written invocation. Defendants' sole objective was to harass Dr. de la Torre for withholding information, as they knew he would do in exercise of his constitutional right.

There was no legislative function in forcing Dr. de la Torre to publicly reiterate his objection simply to foster public perception of criminal guilt. *See Quinn*, 349 U.S. at 164. Requiring Dr. de la Torre to pillory himself by re-invoking Fifth Amendment rights on national television was by no means "essential" to any legislative process. *See Jud. Watch, Inc. v. Schiff*, 998 F.3d 989, 992 (D.C. Cir. 2021) (immunity applies when gathering information plays "a critical role in furthering [a Committee's] inquiry," such as "corroborating witness testimony" or "filling numerous factual gaps"). While "[t]he wisdom of congressional approach or methodology is not open to judicial veto," *Eastland*, 421 U.S. at 509, the proper judicial inquiry extends past inquiry into the initial legitimacy of the investigation and subpoena.

The district court dismissed Dr. de la Torre's authorities by claiming he "relies on cases that stand for an entirely different

proposition: Illegal, non-legislative actions flowing from immune legislative acts may be reviewed." JA 137. But cases like *Gravel* and *McMillan* are akin to this one in important respects; in those cases, too, Congressional action was valid at the start but lost its legislative purpose later. *See Gravel*, 408 U.S. at 615, 624-25; *McMillan*, 412 U.S. at 306-24. Under the district court's reasoning, Congress could engage in any conduct—no matter how removed from the legislative process—and claim continuing, absolute immunity simply by initiating its conduct with Congressional procedures. That simply is not the law, and it should not become the law.

The district court's reliance on *McSurely*'s "facially legitimate purpose" standard exemplifies its conflation of an overall investigation's validity with the specific conduct being challenged. The court cited *McSurely* for the proposition that legislative purpose analysis "turns on the objective relationship with the Committee's assignment, not the Committee's purpose in seeking the particular witness." JA 134. But *McSurely*'s "facially legitimate purpose" test addresses only whether courts should examine why committees investigate particular subjects— not whether specific conduct within investigations serves legislative

functions. *See* 521 F.2d at 1039-40. Indeed, *McSurely* refutes the district court's categorical approach. There, the riot investigation had facial legitimacy and the initial subpoenas were valid. *Id.* at 1040. When Investigator Brick knowingly retained love letters he admitted were irrelevant, however, that specific conduct exceeded legislative bounds. 553 F.2d at 1294. The en banc court was pellucid on this point: "That the investigation ... fell within the broad authorization ... does not render everything done ... privileged activity." *Id.* at 1295. Even facially legitimate investigations cannot immunize conduct that "serve[s] no legitimate legislative function." *Id.* at 1296 n.66. The district court nevertheless collapsed this critical distinction, treating the Committee's legitimate healthcare investigation as conferring blanket immunity. But just as investigating riots did not make seizing love letters legislative, investigating healthcare does not make compelling silence legislative. *McSurely* examined whether specific acts—taking irrelevant documents—served any legislative purpose, regardless of the investigation's validity. In this case, too, the question is whether compelling post-invocation appearance serves any legislative function—

and that question is not answered by noting simply that Congress had reason to be investigating something.

By refusing to examine whether compelling post-Fifth Amendment appearance served any legislative function, the district court effectively adopted a rule of absolute immunity for all subpoena-related activities. Under the court's approach, Congress could go to any end to compel anyone to appear regardless of whether any information could be obtained, so long as it used subpoena procedures. A member would enjoy absolute immunity for any illegal or unconstitutional act performed on the chamber floor, even if the act was patently devoid of any legislative purpose or legitimate legislative activity. Even the perpetration of racial discrimination and censorial campaigns would be categorically beyond review if it emanates from the legislative floor.

By presuming Speech or Debate immunity applies to any and all conduct on the House or Senate floor—including a legislature's patently illegal and *ultra vires* conduct—the district court creates an insurmountable burden and deprives citizens of any avenue to obtain judicial redress for Congressional overreach or misconduct. These untenable results illustrate why, contrary to the district court's ruling,

36

Speech or Debate immunity turns on the nature of the act, not merely the location where it occurs. Only conduct that is genuinely legislative in character is entitled to constitutional protection; everything else remains subject to judicial review. The district court's contrary interpretation transforms the Speech or Debate Clause from a shield protecting legislative independence into a sword attacking constitutional rights. The Clause does not "make Members of Congress super-citizens," *Brewster*, 408 U.S. at 516, yet that is the regrettable upshot of the decision below. This Court should reverse.

## III.  AT A MINIMUM, JURISDICTIONAL DISCOVERY IS WARRANTED

Even assuming arguendo that some ambiguity exists about whether compelling post-invocation appearance is legislative, the district court abused its discretion in denying discovery.

The facts alleged in the Amended Complaint, taken as true at this stage, establish that the challenged acts are non-legislative. Dr. de la Torre alleges that he invoked his Fifth Amendment privilege before the hearing, that he informed the Committee he would provide no testimony, and that Defendants nevertheless insisted on his appearance solely to force a public invocation of constitutional rights. JA 59-60, 66-68 (Am.

37

Compl. ¶¶ 50-53, 71-74). These well-pleaded facts, combined with Defendants' burden to prove immunity applies (*see* Section I, *supra*), warrant reversal. Compelling a witness to appear when no information can be obtained serves no legislative function as a matter of law (*see* Section II, *supra*). Nevertheless, if this Court finds any ambiguity about whether these specific acts are legislative, it should at minimum remand for jurisdictional discovery. The district court abused its discretion by denying Dr. de la Torre the opportunity to develop facts about what information, if any, could have been obtained from compelling his appearance—facts directly relevant to whether these acts served any legislative function.

The standard for obtaining jurisdictional discovery is designedly liberal. Under this Court's recent holding in *Musgrave v. Warner*, a district court should allow jurisdictional discovery unless it determines "either that the discovery was itself precluded by the Speech or Debate Clause, or that 'no facts that additional discovery could produce would affect' the Speech-or-Debate Clause analysis." 104 F.4th at 365 (quoting *Lewis v. Mutond*, 62 F.4th 587, 595 (D.C. Cir. 2023)). This is an extremely low bar—plaintiff need only demonstrate that requested

38

discovery could produce information relevant to the jurisdictional inquiry. *See also GTE New Media Servs., Inc. v. BellSouth Corp.*, 199 F.3d 1343, 1351-52 (D.C. Cir. 2000). Nor does a district court need to establish its jurisdiction before permitting jurisdictional discovery. *See Musgrave*, 104 F.4th at 365.

Dr. de la Torre sought specific categories of documents bearing on whether the challenged acts served any legislative function. These included: (1) "Documents, communications, and admissions regarding the ultimate legislative purpose of Dr. de la Torre's attendance at the September 12 Hearing despite his invocation—i.e., which specific legislation it would have informed or how it would have served the deliberative and communicative legislative process"; (2) "Documents, communications, and admissions regarding the Committee's enforcement efforts of the Subpoena, and what the purported purpose was of Dr. de la Torre appearing at the September 12 Hearing solely to re-invoke the Fifth Amendment, a fact at the heart of whether an action is within the 'legislative sphere'"; and (3) "Documents, communications, and admissions regarding the Committee's decision to 'overrule' Dr. de la Torre's Fifth Amendment invocation and the grounds for such decision,

which informs the legislative purpose of the Committee's actions and whether they were within the 'legislative sphere.'"  ECF 25 at 15-16.

These requests directly bear on the objective legislative function test because they stand to illuminate what information, if any, the Committee could have obtained from his appearance.  The district court itself acknowledged that legislative function can be relevant to Speech or Debate immunity.  JA 127.  And *Jewish War Veterans of the United States of America, Inc. v. Gates* confirms that "documents that reflect legislative purpose, rather than the motives of individual legislators" "must be produced."  506 F. Supp. 2d 30, 55 (D.D.C. 2007).  Documents showing what the Committee expected to obtain from his appearance bear directly on whether compelling that appearance could serve any legislative function.

The district court made three critical errors.  *First*, it mischaracterized Dr. de la Torre's requests as seeking only information about "the Committee's knowledge about his Fifth Amendment invocation," which it deemed irrelevant.  JA 141.  But the requests sought evidence of whether the Committee's actions supported specific legislation or were otherwise in the legislative sphere—a question

directly relevant to whether the acts served a legislative function. Whether compelling appearance can produce information for legislation is not a question of subjective knowledge but of objective capability.

*Second*, the district court failed to apply the document-by-document analysis required by precedent. The D.C. Circuit has emphasized that Speech or Debate restrictions on discovery are not "categorical" and require "fact-specific" analysis. *In re Sealed Case*, 80 F.4th 355, 359 (D.C. Cir. 2023) (ordering a "communication-by-communication" application of whether acts were "legislative"). The court's blanket denial ignored this distinction.

*Third*, the district court failed to account for how its burden misallocation made discovery essential. Having wrongly required Dr. de la Torre to disprove immunity, *see* Section I, *supra*, the court then denied him the tools necessary to meet that burden. This created an impossible Catch-22: prove the absence of legislative function without access to evidence about what function the acts could serve.

Under the abuse of discretion standard, the district court's errors require reversal. This Court has recognized that "ruling on a Rule 12(b)(1) motion may be improper before the plaintiff has had a chance to

41

discover the facts necessary to establish jurisdiction." *Herbert v. Nat'l Acad. of Scis.*, 974 F.2d 192, 198 (D.C. Cir. 1992) (citing *Collins v. N.Y. Cent. Sys.*, 327 F.2d 880 (D.C. Cir. 1963)). Here, Dr. de la Torre demonstrated that the requested discovery could produce information affecting the Speech or Debate analysis—meeting *Musgrave*'s requirement. *See* 104 F.4th at 365. Documents about what information the Committee expected to obtain directly bear on whether compelling his appearance could serve any legislative function. This was not a fishing expedition but targeted discovery about objective facts relevant to the immunity inquiry.

This Court should, at a minimum, remand with instructions to permit jurisdictional discovery. Even if the Court views these acts as ambiguously (rather than clearly) non-legislative, it follows from such ambiguity that Dr. de la Torre should be permitted to develop a factual record. In particular, he should have the opportunity to obtain evidence about what information, if any, the Committee could have obtained from compelling his appearance after he invoked the Fifth Amendment. Denying discovery in these circumstances was an abuse of discretion.

CONCLUSION

For the foregoing reasons, this Court should reverse the district court's judgment and remand for further proceedings.

Dated:  December 19, 2025

Respectfully submitted,

QUINN EMANUEL URQUHART & SULLIVAN LLP

*/s/ Derek L. Shaffer*

DEREK L. SHAFFER
CHRISTOPHER G. MICHEL
WILLIAM A. BURCK
ALEXANDER J. MERTON
RACHEL G. FRANK
KAYLEE A. OTTERBACHER
1300 I St. NW Suite 900
Washington, DC 20005
(202) 538-8000

*Counsel for Plaintiff-Appellant*
*Ralph de La Torre*

## CERTIFICATE OF COMPLIANCE

In accordance with Federal Rules of Appellate Procedure 28(a)(10) and 32(g)(1), I certify that the foregoing brief complies with the type-volume limitation of Rule 32(a)(7)(B) because this brief contains 7,927 words, excluding the parts of the brief exempted by Rule 32(f).

I further certify that this brief complies with the typeface requirement of Rule 32(a)(5) and the type-style requirement of Rule 32(a)(6) because this brief has been prepared in Microsoft Word using proportionately spaced 14-point Century Schoolbook font.

*/s/ Derek L. Shaffer*
Derek L. Shaffer

*Counsel for Plaintiff-Appellant*
*Ralph de La Torre*

**CERTIFICATE OF SERVICE**

I hereby certify that, on December 19, 2025, I electronically filed the foregoing brief with the Clerk of the Court by using the appellate CM/ECF system. I further certify that all participants in the case are registered CM/ECF users and will be served by the appellate CM/ECF system.


*/s/ Derek L. Shaffer*
Derek L. Shaffer

*Counsel for Plaintiff-Appellant*
*Ralph de la Torre*