**NOT YET SCHEDULED FOR ORAL ARGUMENT**

# United States Court of Appeals
# for the District of Columbia Circuit

## No. 25-5353

DR. RALPH DE LA TORRE, M.D.,

*Plaintiff-Appellant,*

*v.*

BILL CASSIDY, M.D., in his capacity as Chairman of the Committee on Health, Education, Labor, and Pensions of the United States Senate, *et al.*,

*Defendants-Appellees.*

*On Appeal from the United States District Court for the District of Columbia in No. 1:24-cv-02776-TNM, Honorable Trevor Neil McFadden*

# JOINT APPENDIX

Derek L. Shaffer
Christopher G. Michel
William A. Burck
Alexander J. Merton
Rachel G. Frank
Kaylee A. Otterbacher
QUINN EMANUEL URQUHART
 & SULLIVAN LLP
1300 I Street, NW, Suite 900
Washington, DC 20005
(202) 538-8000
derekshaffer@quinnemanuel.com
christophermichel@quinnemanuel.com
williamburck@quinnemanuel.com
ajmerton@quinnemanuel.com
rachelfrank@quinnemanuel.com
kayleeotterbacher@quinnemanuel.com

*Counsel for Plaintiff-Appellant*

Morgan J. Frankel
Patricia Mack Bryan
Thomas E. Caballero
Vivian M. Rivera
OFFICE OF SENATE LEGAL COUNSEL
642 Hart Senate Office Building
Washington, DC 20510
(202) 224-44335
morgan_frankel@legal.senate.gov
pat_bryan@legal.senate.gov
thomas_caballero@legal.senate.gov
vivian_rivera@legal.senate.gov

*Counsel for Defendants-Appellees*

DECEMBER 19, 2025

## <u>TABLE OF CONTENTS</u>

**Page**

District Court Docket Sheet for the District of Columbia ................... JA1

Complaint (Dkt. No. 1)
     filed September 30, 2024........................................................... JA12

Amended Complaint (Dkt. No. 17)
     filed December 10, 2024 ........................................................... JA41

Defendants' Motion to Dismiss Amended Complaint (Dkt. No. 18)
     filed December 23, 2024 ........................................................... JA73

Exhibit A to Memorandum of Points and Authorities in Support
of Defendants' Motion to Dismiss Amended Complaint
(Dkt. No. 18-2)
     filed December 23, 2024 ........................................................... JA75

Exhibit B to Memorandum of Points and Authorities in Support
of Defendants' Motion to Dismiss Amended Complaint
(Dkt. No. 18-3)
     filed December 23, 2024 ......................................................... JA117

Plaintiff's Motion for Leave to Conduct Limited Jurisdictional
Discovery (Dkt. No. 20)
     filed January 2, 2025............................................................... JA120

Memorandum Opinion (Dkt. No. 26)
     filed September 16, 2025......................................................... JA122

Order Granting Defendants' Motion to Dismiss (Dkt. No. 27)
     filed September 16, 2025......................................................... JA144

APPEAL,CLOSED,TYPE–L

## U.S. District Court
### District of Columbia (Washington, DC)
### CIVIL DOCKET FOR CASE #: 1:24–cv–02776–TNM

| | |
|---|---|
| DE LATORRE v. SANDERS et al | Date Filed: 09/30/2024 |
| Assigned to: Judge Trevor N. McFadden | Date Terminated: 09/16/2025 |
| Case in other court:  USCA, 25–05353 | Jury Demand: None |
| Cause: 28:1331 Federal Question: Other Civil Rights | Nature of Suit: 440 Civil Rights: Other |
| | Jurisdiction: U.S. Government Defendant |

**Plaintiff**

**RALPH DE LA TORRE**
*M.D.*

represented by **Alexander Merton**
QUINN EMANUEL URQUHART &
SULLIVAN LLP
1300 I Street NW
Suite 900
Washington, DC 20005
202–538–8000
Email: ajmerton@quinnemanuel.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Kaylee Ann Otterbacher**
QUINN EMANUEL URQUHART &
SULLIVAN, LLC
1300 I St. NW
Suite 900
Washington, DC 20005
262–409–6990
Email: kayleeotterbacher@quinnemanuel.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**William A. Burck**
QUINN EMANUEL URQUHART &
SULLIVAN, LLP
1300 I Street, NW
Suite 900
Washington, DC 20005
(202) 538–8000
Email: williamburck@quinnemanuel.com
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**BERNARD SANDERS**
*in his capacity as Chairman of the
Committee on Health, Education, Labor,
and Pensions of the United States Senate*

represented by **Morgan John Frankel**
OFFICE OF SENATE LEGAL COUNSEL
642 Hart Senate Office Building
United States Senate
Washington, DC 20510
(202) 224–4435
Fax: (202) 224–3391
Email: morgan_frankel@legal.senate.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Patricia M. Bryan**
OFFICE OF SENATE LEGAL COUNSEL
642 Hart Senate Office Building
United States Senate

JA1

Washington, DC 20510
(202) 224–4435
Fax: (202) 224–3391
Email: pat_bryan@legal.senate.gov
*ATTORNEY TO BE NOTICED*

**Thomas Edward Caballero**
OFFICE OF SENATE LEGAL COUNSEL
642 Hart Senate Office Building
United States Senate
Washington, DC 20510
(202) 224–4435
Fax: (202) 224–3391
Email: thomas_caballero@legal.senate.gov
*ATTORNEY TO BE NOTICED*

**Vivian Maria Rivera**
OFFICE OF SENATE LEGAL COUNSEL
Hart Senate Office Building
120 Constitution Ave NE
Suite 642
Washington, DC 20002
202–224–4435
Email: vivian_rivera@legal.senate.gov
*ATTORNEY TO BE NOTICED*

**Defendant**

**BILL CASSIDY, M.D.**
*in his capacity as Ranking Member of the*
*Committee on Health, Education, Labor,*
*and Pensions of the United States Senate*

represented by **Morgan John Frankel**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Patricia M. Bryan**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Thomas Edward Caballero**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Vivian Maria Rivera**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**PATTY MURRAY**
*in her capacity as member of the*
*Committee on Health, Education, Labor,*
*and Pensions of the United States Senate*

represented by **Morgan John Frankel**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Patricia M. Bryan**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Thomas Edward Caballero**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Vivian Maria Rivera**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**ROBERT P. CASEY, JR.**
*in his capacity as member of the*
*Committee on Health, Education, Labor,*
*and Pensions of the United States Senate*

represented by  **Morgan John Frankel**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Patricia M. Bryan**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Thomas Edward Caballero**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Vivian Maria Rivera**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**TAMMY BALDWIN**
*in her capacity as member of the*
*Committee on Health, Education, Labor,*
*and Pensions of the United States Senate*

represented by  **Morgan John Frankel**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Patricia M. Bryan**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Thomas Edward Caballero**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Vivian Maria Rivera**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**CHRISTOPHER MURPHY**
*in his capacity as member of the*
*Committee on Health, Education, Labor,*
*and Pensions of the United States Senate*

represented by  **Morgan John Frankel**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Patricia M. Bryan**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Thomas Edward Caballero**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Vivian Maria Rivera**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**TIM KAINE**
*in his capacity as member of the*
*Committee on Health, Education, Labor,*
*and Pensions of the United States Senate*

represented by  **Morgan John Frankel**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Patricia M. Bryan**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Thomas Edward Caballero**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Vivian Maria Rivera**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**MARGARET WOOD HASSAN**
*in her capacity as member of the*
*Committee on Health, Education, Labor,*
*and Pensions of the United States Senate*

represented by **Morgan John Frankel**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Patricia M. Bryan**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Thomas Edward Caballero**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Vivian Maria Rivera**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**TINA SMITH**
*in her capacity as member of the*
*Committee on Health, Education, Labor,*
*and Pensions of the United States Senate*

represented by **Morgan John Frankel**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Patricia M. Bryan**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Thomas Edward Caballero**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Vivian Maria Rivera**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**BEN RAY LUJAN**
*in his capacity as member of the*
*Committee on Health, Education, Labor,*
*and Pensions of the United States Senate*

represented by **Morgan John Frankel**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Patricia M. Bryan**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Thomas Edward Caballero**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Vivian Maria Rivera**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**JOHN W. HICKENLOOPER**
*in his capacity as member of the*
*Committee on Health, Education, Labor,*
*and Pensions of the United States Senate*

represented by **Morgan John Frankel**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Patricia M. Bryan**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Thomas Edward Caballero**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Vivian Maria Rivera**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**
**EDWARD J. MARKEY**
*in his capacity as a member of the*
*Committee on Health, Education, Labor,*
*and Pensions of the United States Senate*

represented by **Morgan John Frankel**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Patricia M. Bryan**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Thomas Edward Caballero**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Vivian Maria Rivera**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**
**SUSAN M. COLLINS**
*in her capacity as a member of the*
*Committee on Health, Education, Labor,*
*and Pensions of the United States Senate*

represented by **Morgan John Frankel**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Patricia M. Bryan**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Thomas Edward Caballero**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Vivian Maria Rivera**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**
**LISA MURKOWSKI**
*in her capacity as a member of the*
*Committee on Health, Education, Labor,*
*and Pensions of the United States Senate*

represented by **Morgan John Frankel**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Patricia M. Bryan**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Thomas Edward Caballero**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Vivian Maria Rivera**
(See above for address)
*ATTORNEY TO BE NOTICED*

<u>Defendant</u>

**MIKE BRAUN**
*in his capacity as a member of the
Committee on Health, Education, Labor,
and Pensions of the United States Senate*

represented by  **Morgan John Frankel**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Patricia M. Bryan**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Thomas Edward Caballero**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Vivian Maria Rivera**
(See above for address)
*ATTORNEY TO BE NOTICED*

<u>Defendant</u>

**ROGER MARSHALL, M.D.**
*in his capacity as a member of the
Committee on Health, Education, Labor,
and Pensions of the United States Senate*

represented by  **Morgan John Frankel**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Patricia M. Bryan**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Thomas Edward Caballero**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Vivian Maria Rivera**
(See above for address)
*ATTORNEY TO BE NOTICED*

<u>Defendant</u>

**MITT ROMNEY**
*in his capacity as a member of the
Committee on Health, Education, Labor,
and Pensions of the United States Senate*

represented by  **Morgan John Frankel**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Patricia M. Bryan**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Thomas Edward Caballero**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Vivian Maria Rivera**
(See above for address)
*ATTORNEY TO BE NOTICED*

<u>Defendant</u>

JA6

**TOMMY TUBERVILLE**
*in his capacity as a member of the*
*Committee on Health, Education, Labor,*
*and Pensions of the United States Senate*

represented by **Morgan John Frankel**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Patricia M. Bryan**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Thomas Edward Caballero**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Vivian Maria Rivera**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**MARKWAYNE MULLIN**
*in his capacity as a member of the*
*Committee on Health, Education, Labor,*
*and Pensions of the United States Senate*

represented by **Morgan John Frankel**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Patricia M. Bryan**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Thomas Edward Caballero**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Vivian Maria Rivera**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**TED BUDD**
*in his capacity as a member of the*
*Committee on Health, Education, Labor,*
*and Pensions of the United States Senate*

represented by **Morgan John Frankel**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Patricia M. Bryan**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Thomas Edward Caballero**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Vivian Maria Rivera**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**COMMITTEE ON HEALTH**
**EDUCATION, LABOR, AND**
**PENSIONS OF THE UNITED**
**STATES SENATE**

represented by **Morgan John Frankel**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Patricia M. Bryan**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Thomas Edward Caballero**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Vivian Maria Rivera**
(See above for address)
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 09/30/2024 | 1 | COMPLAINT against Tammy Baldwin, in her capacity as member of the Committee on Health, Education, Labor, and Pensions of the United States Senate, Mike Braun, in his capacity as a member of the Committee on Health, Education, Labor, and Pensions of the United States Senate, Ted Budd, in his capacity as a member of the Committee on Health, Education, Labor, and Pensions of the United States Senate, Robert P. Casey, Jr. in his capacity as member of the Committee on Health, Education, Labor, and Pensions of the United States Senate, Bill Cassidy, M.D. in his capacity as Ranking Member of the Committee on Health, Education, and Pensions of the United States Senate, Susan M. Collins, in her capacity as a member of the Committee on Health, Education, Labor, and Pensions of the United States Senate, Committee on Health Education, Labor, and Pensions of the United States Senate, Margaret Wood Hassan, in her capacity as member of the Committee on Health, Education, Labor, and Pensions of the United States Senate, John W. Hickenlooper, in his capacity as member of the Committee on Health, Education, Labor, and Pensions of the United States Senate, Tim Kaine, in his capacity as member of the Committee on Health, Education, Labor, and Pensions of the United States Senate, Ray Ben Lujan, in his capacity as member of the Committee on Health, Education, Labor, and Pensions of the United States Senate, Edward J. Markey, in his capacity as a member of the Committee on Health, Education, Labor, and Pensions of the United States Senate, Roger Marshall, M.D., in his capacity as a member of the Committee on Health, Education, Labor, and Pensions of the United States Senate, Markwayne Mullin, in his capacity as a member of the Committee on Health, Education, Labor, and Pensions of the United States Senate, Lisa Murkowski, in her capacity as a member of the Committee on Health, Education, Labor, and Pensions of the United States Senate, Christopher Murphy, in his capacity as member of the Committee on Health, Education, Labor, and Pensions of the United States Senate, Patty Murray, in her capacity as member of the Committee on Health, Education, Labor, and Pensions of the United States Senate, Mitt Romney, in his capacity as a member of the Committee on Health, Education, Labor, and Pensions of the United States Senate, Bernard Sanders, in his capacity as Chairman of the Committee on Health, Education, Labor, and Pensions of the United States Senate, Tina Smith, in her capacity as member of the Committee on Health, Education, Labor, and Pensions of the United States Senate, Tommy Tuberville, in his capacity as member of the Committee on Health, Education, Labor, and Pensions of the United States Senate ( Filing fee $ 405 receipt number ADCDC−11193782) filed by Ralph De La Torre, M.D.. (Attachments: # 1 Civil Cover Sheet, # 2 Summons)(Burck, William) (Entered: 09/30/2024) |
| 09/30/2024 | | Case Assigned to Judge Trevor N. McFadden. (zmtm) (Entered: 09/30/2024) |
| 09/30/2024 | 2 | SUMMONS (21) Issued Electronically as to All Defendants. (Attachments: # 1 Notice and Consent)(zmtm) (Entered: 09/30/2024) |
| 09/30/2024 | 3 | MOTION for Leave to Appear Pro Hac Vice :Attorney Name– Alexander J. Merton, Filing fee $ 100, receipt number ADCDC−11196326. Fee Status: Fee Paid. by Ralph De La Torre, M.D.. (Attachments: # 1 Declaration, # 2 Exhibit A– Certificate of Good Standing, # 3 Text of Proposed Order)(Burck, William) (Entered: 09/30/2024) |
| 09/30/2024 | 4 | MOTION for Leave to Appear Pro Hac Vice :Attorney Name– Kaylee A. Otterbacher, Filing fee $ 100, receipt number ADCDC−11196472. Fee Status: Fee Paid. by Ralph De La Torre, M.D.. (Attachments: # 1 Declaration, # 2 Exhibit Certificate of Good Standing, # 3 Text of Proposed Order)(Burck, William) (Entered: 09/30/2024) |
| 09/30/2024 | 5 | STANDING ORDER Establishing Procedures for Cases Before Judge Trevor N. McFadden. The parties are hereby ORDERED to read and comply with the directives in the attached standing order. Signed by Judge Trevor N. McFadden on 09/30/2024. |

JA8

| | | |
|---|---|---|
| | | (lctnm2). (Entered: 09/30/2024) |
| 09/30/2024 | | MINUTE ORDER granting 3 Plaintiff's Motion for Mr. Alexander J. Merton to Appear Pro Hac Vice. **Counsel should register for e–filing via PACER and file a notice of appearance pursuant to LCvR 83.6(a).** Click for instructions. SO ORDERED. Signed by Judge Trevor N. McFadden on 09/30/2024. (lctnm2) (Entered: 09/30/2024) |
| 09/30/2024 | | MINUTE ORDER granting Plaintiff's 4 Motion for Kaylee A. Otterbacher to Appear Pro Hac Vice. **Counsel should register for e–filing via PACER and file a notice of appearance pursuant to LCvR 83.6(a).** Click for instructions. SO ORDERED. Signed by Judge Trevor N. McFadden on 09/30/2024. (lctnm2) (Entered: 09/30/2024) |
| 10/02/2024 | 6 | NOTICE of Appearance by Kaylee Ann Otterbacher on behalf of RALPH DE LA TORRE, M.D. (Otterbacher, Kaylee) (Entered: 10/02/2024) |
| 10/02/2024 | 7 | NOTICE of Appearance by Alexander Merton on behalf of RALPH DE LA TORRE, M.D. (Merton, Alexander) (Entered: 10/02/2024) |
| 10/25/2024 | 8 | ENTERED IN ERROR.....RETURN OF SERVICE/AFFIDAVIT of Summons and Complaint Executed. RALPH DE LA TORRE, M.D. served on 10/4/2024 (Attachments: # 1 Exhibit 1)(Otterbacher, Kaylee) Modified on 10/28/2024 (mg). (Entered: 10/25/2024) |
| 10/25/2024 | 9 | RETURN OF SERVICE/AFFIDAVIT of Summons and Complaint Executed on United States Attorney General. Date of Service Upon United States Attorney General 10/7/2024. (Attachments: # 1 Exhibit 1)(Otterbacher, Kaylee) (Entered: 10/25/2024) |
| 10/25/2024 | 10 | RETURN OF SERVICE/AFFIDAVIT of Summons and Complaint Executed as to the United States Attorney. Date of Service Upon United States Attorney on 10/7/2024. Answer due for ALL FEDERAL DEFENDANTS by 12/6/2024. (Attachments: # 1 Exhibit 1)(Otterbacher, Kaylee) (Entered: 10/25/2024) |
| 10/28/2024 | | NOTICE OF ERROR regarding 8 Summons Returned Executed as to Federal Defendant. The following error(s) need correction: Select parties that have been **served** and enter date of **delivery** (not date mailed). Please refile. (mg) (Entered: 10/28/2024) |
| 10/28/2024 | 11 | RETURN OF SERVICE/AFFIDAVIT of Summons and Complaint Executed. TAMMY BALDWIN served on 10/4/2024; MIKE BRAUN served on 10/4/2024; TED BUDD served on 10/4/2024; ROBERT P. CASEY, JR. served on 10/4/2024; BILL CASSIDY, M.D. served on 10/4/2024; SUSAN M. COLLINS served on 10/4/2024; COMMITTEE ON HEALTH EDUCATION, LABOR, AND PENSIONS OF THE UNITED STATES SENATE served on 10/4/2024; MARGARET WOOD HASSAN served on 10/4/2024; JOHN W. HICKENLOOPER served on 10/4/2024; TIM KAINE served on 10/4/2024; RAY BEN LUJAN served on 10/4/2024; EDWARD J. MARKEY served on 10/4/2024; ROGER MARSHALL, M.D. served on 10/4/2024; MARKWAYNE MULLIN served on 10/4/2024; LISA MURKOWSKI served on 10/4/2024; CHRISTOPHER MURPHY served on 10/4/2024; PATTY MURRAY served on 10/4/2024; MITT ROMNEY served on 10/4/2024; BERNARD SANDERS served on 10/4/2024; TINA SMITH served on 10/4/2024; TOMMY TUBERVILLE served on 10/4/2024 (Attachments: # 1 Exhibit 1)(Otterbacher, Kaylee) (Entered: 10/28/2024) |
| 11/26/2024 | 12 | NOTICE of Appearance by Thomas Edward Caballero on behalf of All Defendants (Caballero, Thomas) (Entered: 11/26/2024) |
| 11/26/2024 | 13 | NOTICE of Appearance by Vivian Maria Rivera on behalf of All Defendants (Rivera, Vivian) (Entered: 11/26/2024) |
| 11/26/2024 | 14 | NOTICE of Appearance by Patricia M. Bryan on behalf of All Defendants (Bryan, Patricia) (Entered: 11/26/2024) |
| 11/26/2024 | 15 | NOTICE of Appearance by Morgan John Frankel on behalf of All Defendants (Frankel, Morgan) (Entered: 11/26/2024) |
| 11/26/2024 | 16 | MOTION to Dismiss by TINA SMITH, RAY BEN LUJAN, JOHN W. HICKENLOOPER, EDWARD J. MARKEY, SUSAN M. COLLINS, LISA |

| | | |
|---|---|---|
| | | MURKOWSKI, MIKE BRAUN, ROGER MARSHALL, M.D., MITT ROMNEY, TOMMY TUBERVILLE, MARKWAYNE MULLIN, TED BUDD, COMMITTEE ON HEALTH EDUCATION, LABOR, AND PENSIONS OF THE UNITED STATES SENATE, BERNARD SANDERS, BILL CASSIDY, M.D., PATTY MURRAY, ROBERT P. CASEY, JR., TAMMY BALDWIN, CHRISTOPHER MURPHY, TIM KAINE, MARGARET WOOD HASSAN. (Attachments: # 1 Memorandum in Support, # 2 Exhibit A, # 3 Exhibit B, # 4 Text of Proposed Order)(Frankel, Morgan) (Entered: 11/26/2024) |
| 12/10/2024 | 17 | AMENDED COMPLAINT against TAMMY BALDWIN, MIKE BRAUN, TED BUDD, ROBERT P. CASEY, JR., BILL CASSIDY, M.D., SUSAN M. COLLINS, COMMITTEE ON HEALTH EDUCATION, LABOR, AND PENSIONS OF THE UNITED STATES SENATE, MARGARET WOOD HASSAN, JOHN W. HICKENLOOPER, TIM KAINE, RAY BEN LUJAN, EDWARD J. MARKEY, ROGER MARSHALL, M.D., MARKWAYNE MULLIN, LISA MURKOWSKI, CHRISTOPHER MURPHY, PATTY MURRAY, MITT ROMNEY, BERNARD SANDERS, TINA SMITH, TOMMY TUBERVILLE filed by RALPH DE LA TORRE. (Attachments: # 1 Exhibit A)(Burck, William) (Entered: 12/10/2024) |
| 12/12/2024 | | MINUTE ORDER: In light of the Plaintiff's 17 Amended Complaint, the Defendants' 16 Motion to Dismiss is DENIED as moot. Zeytuna Inc. v. Giron, 597 F. Supp. 3d 29, 61 (D.D.C. 2022) ("Generally, when a plaintiff amends a complaint, it renders a motion to dismiss that complaint moot....") (cleaned up). SO ORDERED. Signed by Judge Trevor N. McFadden on 12/12/2024. (lctnm2). (Entered: 12/12/2024) |
| 12/23/2024 | 18 | MOTION to Dismiss *Amended Complaint* by TINA SMITH, BEN RAY LUJAN, JOHN W. HICKENLOOPER, EDWARD J. MARKEY, SUSAN M. COLLINS, LISA MURKOWSKI, MIKE BRAUN, ROGER MARSHALL, M.D., MITT ROMNEY, TOMMY TUBERVILLE, MARKWAYNE MULLIN, TED BUDD, COMMITTEE ON HEALTH EDUCATION, LABOR, AND PENSIONS OF THE UNITED STATES SENATE, BERNARD SANDERS, BILL CASSIDY, M.D., PATTY MURRAY, ROBERT P. CASEY, JR., TAMMY BALDWIN, CHRISTOPHER MURPHY, TIM KAINE, MARGARET WOOD HASSAN. (Attachments: # 1 Memorandum in Support, # 2 Exhibit A, # 3 Exhibit B, # 4 Text of Proposed Order)(Frankel, Morgan) (Entered: 12/23/2024) |
| 12/24/2024 | 19 | MEET AND CONFER STATEMENT. (Otterbacher, Kaylee) (Entered: 12/24/2024) |
| 12/28/2024 | | MINUTE ORDER: The Defendants' Motion to Dismiss the Amended Complaint was filed on 12/23/2024. The Plaintiffs' Opposition will be due on January 6, 2025. The Defendants' Reply will be due on January 13, 2025. No action is necessary in this case until resolution of the Motion to Dismiss. SO ORDERED. Signed by Judge Trevor N. McFadden on 12/28/2024. (lctnm2). (Entered: 12/28/2024) |
| 12/31/2024 | | Set/Reset Deadlines: Plaintiffs' Opposition due by 1/6/2025. Defendants' Reply due by 1/13/2025. (hmc) (Entered: 12/31/2024) |
| 01/02/2025 | 20 | MOTION for Discovery by RALPH DE LA TORRE. (Attachments: # 1 Memorandum in Support of Motion, # 2 Text of Proposed Order)(Merton, Alexander) (Entered: 01/02/2025) |
| 01/06/2025 | 21 | Memorandum in opposition to re 18 Motion to Dismiss,, filed by RALPH DE LA TORRE. (Attachments: # 1 Memorandum in Support of Plaintiff's Opposition to Defendants' Motion to Dismiss Amended Complaint, # 2 Text of Proposed Order)(Merton, Alexander) (Entered: 01/06/2025) |
| 01/07/2025 | | MINUTE ORDER: In light of the Plaintiff's 20 Motion for Discovery, Defendants shall file a combined Reply in support of the Motion to Dismiss and Opposition to the Motion for Discovery on January 16, 2025. Plaintiff may file a Reply in support of the Motion for Discovery by January 23, 2025. SO ORDERED. Signed by Judge Trevor N. McFadden on 1/7/2025. (lctnm2). (Entered: 01/07/2025) |
| 01/16/2025 | 22 | REPLY to opposition to motion re 18 Motion to Dismiss,, *combined with Opposition to Plaintiff's Motion for Leave to Conduct Limited Jurisdictional Discovery* filed by TINA SMITH, BEN RAY LUJAN, JOHN W. HICKENLOOPER, EDWARD J. MARKEY, SUSAN M. COLLINS, LISA MURKOWSKI, MIKE BRAUN, ROGER MARSHALL, M.D., MITT ROMNEY, TOMMY TUBERVILLE, MARKWAYNE |

| | | |
|---|---|---|
| | | MULLIN, TED BUDD, COMMITTEE ON HEALTH EDUCATION, LABOR, AND PENSIONS OF THE UNITED STATES SENATE, BERNARD SANDERS, BILL CASSIDY, M.D., PATTY MURRAY, ROBERT P. CASEY, JR., TAMMY BALDWIN, CHRISTOPHER MURPHY, TIM KAINE, MARGARET WOOD HASSAN. (Attachments: # 1 Text of Proposed Order)(Frankel, Morgan) (Entered: 01/16/2025) |
| 01/16/2025 | 23 | RESPONSE re 20 MOTION for Discovery *combined with Reply in Support of Defendants' Motion to Dismiss Amended Complaint* filed by TINA SMITH, BEN RAY LUJAN, JOHN W. HICKENLOOPER, EDWARD J. MARKEY, SUSAN M. COLLINS, LISA MURKOWSKI, MIKE BRAUN, ROGER MARSHALL, M.D., MITT ROMNEY, TOMMY TUBERVILLE, MARKWAYNE MULLIN, TED BUDD, COMMITTEE ON HEALTH EDUCATION, LABOR, AND PENSIONS OF THE UNITED STATES SENATE, BERNARD SANDERS, BILL CASSIDY, M.D., PATTY MURRAY, ROBERT P. CASEY, JR., TAMMY BALDWIN, CHRISTOPHER MURPHY, TIM KAINE, MARGARET WOOD HASSAN. (Attachments: # 1 Text of Proposed Order)(Frankel, Morgan) (Entered: 01/16/2025) |
| 01/22/2025 | 24 | NOTICE *of Defendant Senators No Longer Serving as Members of the Committee on Health, Education, Labor, and Pensions* by TINA SMITH, BEN RAY LUJAN, JOHN W. HICKENLOOPER, EDWARD J. MARKEY, SUSAN M. COLLINS, LISA MURKOWSKI, MIKE BRAUN, ROGER MARSHALL, M.D., MITT ROMNEY, TOMMY TUBERVILLE, MARKWAYNE MULLIN, TED BUDD, COMMITTEE ON HEALTH EDUCATION, LABOR, AND PENSIONS OF THE UNITED STATES SENATE, BERNARD SANDERS, BILL CASSIDY, M.D., PATTY MURRAY, ROBERT P. CASEY, JR., TAMMY BALDWIN, CHRISTOPHER MURPHY, TIM KAINE, MARGARET WOOD HASSAN (Frankel, Morgan) (Entered: 01/22/2025) |
| 01/23/2025 | 25 | REPLY to opposition to motion re 20 Motion for Discovery filed by RALPH DE LA TORRE. (Merton, Alexander) (Entered: 01/23/2025) |
| 09/16/2025 | 26 | MEMORANDUM OPINION granting Defendants' 18 Motion to Dismiss and denying Plaintiff's 20 Motion for Discovery. See attached Memorandum Opinion for details. SO ORDERED. Signed by Judge Trevor N. McFadden on 9/16/2025. (lctnm2). (Entered: 09/16/2025) |
| 09/16/2025 | 27 | ORDER. For the reasons stated in the 26 Memorandum Opinion, Defendants' 18 Motion to Dismiss is GRANTED and Plaintiff's 20 Motion for Discovery is DENIED. SO ORDERED. Signed by Judge Trevor N. McFadden on 9/16/2025. (lctnm2). (Entered: 09/16/2025) |
| 10/01/2025 | 28 | NOTICE OF APPEAL TO DC CIRCUIT COURT as to 26 Order on Motion to Dismiss, 27 Order by RALPH DE LA TORRE. Filing fee $605, receipt number ADCDC–11998303. Parties have been notified. (Merton, Alexander) Modified to add payment information on 10/2/2025 (znmw). (Entered: 10/01/2025) |
| 10/02/2025 | 29 | Transmission of the Notice of Appeal, Order Appealed (Memorandum Opinion), and Docket Sheet to US Court of Appeals. The Court of Appeals fee was paid re 28 Notice of Appeal to DC Circuit Court. (znmw) Modified fee status on 10/2/2025 (znmw). (Entered: 10/02/2025) |
| 10/07/2025 | | USCA Case Number 25–5353 for 28 Notice of Appeal to DC Circuit Court, filed by RALPH DE LA TORRE. (mg) (Entered: 10/08/2025) |

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

**DR. RALPH DE LA TORRE, M.D.,**
4939 Brookview Drive
Dallas, TX 75220

          Plaintiff,

v.

**BERNARD SANDERS, in his capacity as**
**Chairman of the Committee on Health,**
**Education, Labor, and Pensions of the**
**United States Senate**;
332 Dirksen Senate Office Building
Washington, D.C. 20510

**BILL CASSIDY, M.D.**, **in his capacity as**
**Ranking Member of the Committee on**
**Health, Education, Labor, and Pensions of**
**the United States Senate**;
455 Dirksen Senate Office Building
Washington, D.C. 20510

**PATTY MURRAY, in her capacity as a**
**member of the Committee on Health,**
**Education, Labor, and Pensions of the**
**United States Senate**;
154 Russell Senate Office Building
Washington, D.C. 20510

**ROBERT P. CASEY, JR., in his capacity**
**as a member of the Committee on Health,**
**Education, Labor, and Pensions of the**
**United States Senate**;
393 Russell Senate Office Building
Washington, D.C. 20510

**TAMMY BALDWIN, in her capacity as a**
**member of the Committee on Health,**
**Education, Labor, and Pensions of the**
**United States Senate**;
141 Hart Senate Office Building
Washington, D.C. 20510

Case No.:

JA12

**CHRISTOPHER MURPHY, in his capacity as a member of the Committee on Health, Education, Labor, and Pensions of the United States Senate**;
136 Hart Senate Office Building
Washington, D.C. 20510

**TIM KAINE, in his capacity as a member of the Committee on Health, Education, Labor, and Pensions of the United States Senate**;
231 Russell Senate Office Building
Washington, D.C. 20510

**MARGARET WOOD HASSAN, in her capacity as a member of the Committee on Health, Education, Labor, and Pensions of the United States Senate**;
324 Hart Senate Office Building
Washington, D.C. 20510

**TINA SMITH, in her capacity as a member of the Committee on Health, Education, Labor, and Pensions of the United States Senate**;
720 Hart Senate Office Building
Washington, D.C. 20510

**BEN RAY LUJÁN, in his capacity as a member of the Committee on Health, Education, Labor, and Pensions of the United States Senate**;
498 Russell Senate Office Building
Washington, D.C. 20510

**JOHN W. HICKENLOOPER, in his capacity as a member of the Committee on Health, Education, Labor, and Pensions of the United States Senate**;
374 Russell Senate Office Building
Washington, D.C. 20510

**EDWARD J. MARKEY, in his capacity as a member of the Committee on Health, Education, Labor, and Pensions of the United States Senate**;

2

JA13

255 Dirksen Senate Office Building
Washington, D.C. 20510

**SUSAN M. COLLINS, in her capacity as a
member of the Committee on Health,
Education, Labor, and Pensions of the
United States Senate**;
413 Dirksen Senate Office Building
Washington, D.C. 20510

**LISA MURKOWSKI, in her capacity as a
member of the Committee on Health,
Education, Labor, and Pensions of the
United States Senate**;
522 Hart Senate Office Building
Washington, D.C. 20510

**MIKE BRAUN**, **in his capacity as a
member of the Committee on Health,
Education, Labor, and Pensions of the
United States Senate;**
404 Russell Senate Office Building
Washington, DC 20510

**ROGER MARSHALL, M.D., in his
capacity as a member of the Committee on
Health, Education, Labor, and Pensions of
the United States Senate**;
479A Russell Senate Office Building
Washington, DC 20510

**MITT ROMNEY, in his capacity as a
member of the Committee on Health,
Education, Labor, and Pensions of the
United States Senate**;
354 Russell Senate Office Building
Washington, D.C. 20510

**TOMMY TUBERVILLE, in his capacity
as a member of the Committee on Health,
Education, Labor, and Pensions of the
United States Senate**;
455 Russell Senate Office Building
Washington, D.C. 20510

**MARKWAYNE MULLIN, in his capacity**

3

JA14

**as a member of the Committee on Health,**
**Education, Labor, and Pensions of the**
**United States Senate**;
330 Hart Senate Office Building
Washington, D.C. 20510

**TED BUDD, in his capacity as a member**
**of the Committee on Health, Education,**
**Labor, and Pensions of the United States**
**Senate**; and
304 Russell Senate Office Building
Washington, D.C. 20510

**COMMITTEE ON HEALTH,**
**EDUCATION, LABOR, AND PENSIONS**
**OF THE UNITED STATES SENATE,**
428 Dirksen Senate Office Building
Washington, D.C. 20510

                    Defendants.

_____

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

Plaintiff Dr. Ralph de la Torre, M.D., ("Dr. de la Torre") hereby respectfully seeks judicial

redress for continuing violations of his constitutional rights, particularly under the Fifth

Amendment to the U.S. Constitution, by these Defendants:  Senators Bernard Sanders, Bill

Cassidy, M.D., Patty Murray, Robert P. Casey, Jr., Tammy Baldwin, Christopher Murphy, Tim

Kaine, Margaret Wood Hassan, Tina Smith, Ben Ray Luján, John W. Hickenlooper, Edward J.

Markey, Susan M. Collins, Lisa Murkowski, Mike Braun, Roger Marshall, M.D., Mitt Romney,

Tommy Tuberville, Markwayne Mullin, and Ted Budd, as well as the U.S. Senate Committee on

Health, Education, Labor, and Pensions (the "Committee," and collectively with each individual

Defendant Senator, "Defendants").  As alleged herein, Defendants are collectively undertaking a

concerted effort to punish Dr. de la Torre for invoking his Fifth Amendment right not to "be

compelled . . . to be a witness against himself," and continue to command his sworn testimony by

compulsion without regard for the validity of his invocation.  Because such punishment is patently

4

JA15

unconstitutional, this Court should grant the declaratory and injunctive relief necessary to stop it.

1.     Dr. Ralph de la Torre has had a distinguished career, bedecked by numerous accomplishments.  He was the founder, chairman, and CEO of Steward Health Care System, LLC ("Steward"), the largest physician-led, minority-owned, integrated health care system in the United States.  After earning a Bachelor of Science degree in Engineering from Duke University, Dr. de la Torre attended a joint program administered by Harvard Medical School and the Massachusetts Institute of Technology, earning a doctorate in medicine as well as a master's degree in science.  After a renowned career as a cardiac surgeon, Dr. de la Torre became a leader in the healthcare industry.  He ultimately founded Steward in 2010, where he pioneered a physician-led health care model that emphasizes value-based care, patient outcomes, and cost-effective services, thus expanding access to quality medical care for the many communities served by Steward.

2.     On May 6, 2024, however, Steward filed for Chapter 11 protection under the U.S. Bankruptcy Code.  Since Steward's bankruptcy announcement, members of the Committee have painted Dr. de la Torre as a villain and scapegoated him for the company's problems, even those caused by systemic deficiencies in Massachusetts' health care system.

3.     On July 25, 2024, the Committee served Dr. de la Torre with a subpoena (the "Subpoena") commanding his testimony in a hearing the Committee set for September 12, 2024 titled "Examining the Bankruptcy of Steward Health Care:  How Management Decisions Have Impacted Patient Care" (the "Hearing").  That Hearing, however, was simply a device for the Committee to attack Dr. de la Torre and try to publicly humiliate and condemn him.

4.     More than a week before the Hearing, on September 4, 2024, Dr. de la Torre

JA16

conveyed to the Committee in writing, *e.g.*,[1] that he would not be able to provide testimony at the Hearing because he was invoking his Fifth Amendment rights in the face of a ferocious campaign, by members of the United States Congress and others, to pillory and crucify him as a loathsome criminal.[2]

5.     In response, the Committee wrote back on September 5, 2024 recognizing that Dr. de la Torre had invoked "[t]he Fifth Amendment privilege against self-incrimination" as a reason why "it would be inappropriate to compel Dr. de la Torre to appear before the Committee."  But the Committee then "reject[ed] any suggestion that Dr. de la Torre can refuse to appear for testimony before the Committee on this ground," and sought to intimidate and dissuade Dr. de la Torre from standing on his Fifth Amendment rights by threatening him with "criminal penalties" for "[f]ailure to comply with the Committee's subpoena" *unless* he submitted to the Committee's televised spectacle of public degradation and pillorying where he would be forced to refuse repeatedly to answer questions on constitutional grounds, all while the Committee members attacked him (including for remaining silent) and solicited vitriolic testimony[3] from other

---

[1]     Dr. de la Torre also explained that he would be prohibited from providing sworn testimony at the Hearing because Steward has denied authorization for Dr. de la Torre to testify on Steward's behalf; Dr. de la Torre is prohibited by a federal court's order from revealing certain information obtained in Steward's bankruptcy proceeding; and testifying at the Hearing could jeopardize an agreement in principle with Steward's creditors that could help keep the majority of Steward hospitals open, thereby preserving nearly 30,000 jobs while enabling recovery for general unsecured creditors.

[2]     Senator Markey, for instance, promised that Dr. de la Torre's "day of reckoning is going to arrive here on September 12th in the HELP Committee." *See Executive Session of the S. Comm. on Health, Educ., Labor, and Pensions*, 118th Cong. (2024).  Senator Sanders, for his part, has vowed to "hold Dr. de la Torre accountable for his financial mismanagement and his greed." *See Examining the Bankruptcy of Steward Health Care: How Management Decisions Have Impacted Patient Care: Hearing before the S. Comm. on Health, Educ., Labor, and Pensions*, 118th Cong. (2024).

[3]     Other senators and witnesses at the Committee's Hearing have said that they want to make him "answer for the [alleged] harm he's inflicted on our communities[,]" that he is  a "health

JA17

witnesses calling Dr. de la Torre a "health care terrorist[]," advocating for his imprisonment, and

labeling him as a "coward."  Indeed, the Committee made it abundantly clear that they would put

Dr. de la Torre's invocation itself at the heart of their televised circus and paint him as guilty for

the sin of remaining silent in the face of these assaults on his character and integrity.

      6.     By weaponizing Congress's civil and criminal contempt procedures in response to

Dr. de la Torre's invocation of his Fifth Amendment rights under the U.S. Constitution, the

Committee has bulldozed over Dr. de la Torre's constitutional rights and has sought to make him

pay a steep price for invoking them—and in so doing, the Committee's actions exemplify its

blatant and unconstitutional attempts to chill and deter Dr. de la Torre from continuing to stand on

his rights.

      7.     Although the D.C. Bar Legal Ethics Committee has repeatedly recognized that

when a Fifth Amendment privilege is asserted before a congressional committee, "there is no need

to test that claim of privilege in public,"[4] the Committee nevertheless held a promise of criminal

retribution over Dr. de la Torre's head unless he subjected himself to the Committee's public

humiliation in order for him to continue to stand on his constitutional rights, an intimidation tactic

that the Senate and its counsel themselves have previously recognized "could serve only an

improper purpose of showmanship and d[oes] not perform any legislative or public-informing

_____

care terrorist[,]" that he should be "put [] in jail because that's where he deserves to be," and that
"Dr. de la Torre is a coward."  *See id.* (Statements of Edward Markey and witness Michael Charles
Echols); Press Release, Senator Edward Markey, Senator Markey Slams Steward CEO, Demands
de la Torre Take Accountability for Steward's Failures (Sept. 5, 2024),
https://www.markey.senate.gov/news/press-releases/senator-markey-slams-steward-ceo-
demands-de-la-torre-take-accountability-for-stewards-failures.
    [4]   D.C. Bar Legal Ethics Comm., Op. 358 (2011) (affirming D.C. Bar Legal Ethics
Comm., Op. 31 (1977)).

JA18

function."[5]

8.      After Dr. de la Torre, consistent with his invocation of his constitutional rights, did not appear and testify at the Hearing, members of the Committee responded with outrage and spelled out their resolve to sanction Dr. de la Torre for any refusal to testify based on the Fifth Amendment.  For example:

- "It's unfortunate we've got to this point. But if someone shows contempt for the American people by . . . refusing to provide answers, that is contemptible." (Statement of Sen. Bill Cassidy on Sept. 19, 2024).[6]

- "It is essential for our Committee to receive [Dr. de la Torre's] testimony in order to understand the financial downfall of the company . . ."  (Statement of Sens. Bernard Sanders and Bill Cassidy on Sept. 19, 2024).[7]

- "We were hopeful that Dr. de la Torre would comply with our bipartisan subpoena . . . to testify to the harm Steward has caused to patients, health care workers, and the communities in which they live."  (Statement of Sens. Bernard Sanders and Bill Cassidy on Sept. 12, 2024).[8]

- "The American people deserve to hear directly from Dr. de la Torre about how this disaster unfolded."  (Statement of Sen. Ed Markey on Sept. 19, 2024).[9]

---

[5]    *See* SAMUEL DASH, CHIEF COUNSEL: INSIDE THE ERVIN COMMITTEE -- THE UNTOLD STORY OF WATERGATE, 191 (1976).

[6]    *Contempt Resolutions: Executive Session of the S. Comm. on Health, Educ., Labor, and Pensions*, 118th Cong. (2024).

[7]    Press Release, Senator Bernard Sanders, In Historic First, HELP Committee Holds Steward CEO Ralph de la Torre in Civil and Criminal Contempt with Bipartisan Vote (Sept. 19, 2024),    https://www.sanders.senate.gov/press-releases/news-in-historic-first-help-committee-holds-steward-ceo-ralph-de-la-torre-in-civil-and-criminal-contempt-with-bipartisan-vote/.

[8]    Press Release, Senator Bernard Sanders, Ranking Member Cassidy, Chair Sanders Announce Committee Vote to Hold Steward Health CEO in Contempt Following Failure to Comply    with    Congressional    Subpoena    (Sept.    12,    2024), https://www.help.senate.gov/ranking/newsroom/press/video-ranking-member-cassidy-announces-committee-vote-to-hold-steward-health-ceo-in-contempt-following-failure-to-comply-with-congressional-subpoena.

[9]    Press Release, Senator Edward Markey, Senator Markey Statement on HELP Committee's Unanimous Vote to Hold Steward CEO Dr. Ralph de la Torre in Contempt of Congress (Sept. 19, 2024), https://www.markey.senate.gov/news/press-releases/senator-markey-statement-on-help-committees-unanimous-vote-to-hold-steward-ceo-dr-ralph-de-la-torre-in-contempt-of-congress.

JA19

9.      Before the Committee proceeded on September 19, 2024 to pass civil and criminal contempt resolutions (collectively referred to herein as the "Contempt Resolutions") against him, Dr. de la Torre, on September 18, 2024, reminded the Committee that "on the advice of counsel, Dr. de la Torre invokes his procedural and substantive rights under the Fifth Amendment of the U.S. Constitution, including the privilege to refrain from testifying at the Committee's Hearing."

10.     Still, the Committee barreled forward to punish Dr. de la Torre for having had the temerity to invoke his inalienable constitutional rights. After passing the Contempt Resolutions on September 19, 2024, the Committee issued a Contempt Report on September 23, 2024.[10] Therein, the Committee again recognized that "Dr. de la Torre would not testify as commanded by the Subpoena" because he was invoking his "constitutional rights and the on-going bankruptcy proceedings as reasons it would be inappropriate for Dr. de la Torre to appear before the Committee." But it also stated that the Committee had "overruled the objections raised by Dr. de la Torre's counsel and ordered Dr. de la Torre to appear at the hearing as commanded by the subpoena" because, according to the Committee, "the Fifth Amendment privilege against self-incrimination does not permit witnesses to refuse to appear when summoned to testify before a congressional committee." Not only is the Committee wrong as a matter of law, the Committee's bottom line was explicit: it was weaponizing Congress's civil and criminal contempt proceedings to punish Dr. de la Torre, not because his invocation of the Fifth Amendment "depriv[ed] the Committee of his testimony on questions pertinent to its inquiry and subject matters under consideration," but because his invocation deprived the Committee of a televised opportunity to ridicule him in front of the American public for standing on his constitutional rights.

11.     All told, the Committee is undertaking a fearsome effort to compel Dr. de la Torre

_____

[10]  S. Rep. No. 118-230 (2024).

JA20

to do what he cannot be compelled to do consistent with the Fifth Amendment—namely, to provide testimony that could self-incriminate him for purposes of possible criminal proceedings. While recognizing Dr. de la Torre's invocation of his Fifth Amendment rights, the Committee is blowing past that invocation and levying devastating punishments because Dr. de la Torre would not answer the Committee's questions in light of his constitutional objections. Of course, anyone familiar with the Fifth Amendment right against self-incrimination, and certainly members of Congress, should recognize that Dr. de la Torre cannot be so compelled to testify. Nor can Dr. de la Torre be punished—whether by being tarred and feathered live at a public hearing, by being held in contempt, by being prosecuted by the United States, or by any other means—on the basis that he is continuing to invoke his Fifth Amendment rights. As matters presently stand, however, Dr. de la Torre is being punished for invoking his Fifth Amendment rights in response to the Subpoena, and is also under continued threat to either surrender his Fifth Amendment rights or else face punishment at the hands of the Committee.

12.    These circumstances are chilling, they are unconstitutional, and they warrant judicial redress. Accordingly, Dr. de la Torre now respectfully requests a declaratory judgment that he cannot be compelled to comply with the Subpoena, a declaratory judgment that he cannot be punished for asserting his Fifth Amendment rights in response to the Subpoena, an injunction prohibiting the Committee and its legal counsel from enforcing the Subpoena against him, as well as an injunction prohibiting Dr. de la Torre from being punished for asserting his Fifth Amendment rights in response to the Subpoena.

## JURISDICTION AND VENUE

13.    This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1331 because this action arises under the Constitution and the laws of the United States.

14.    This Court has personal jurisdiction over the Senate Committee on Health,

JA21

Education, Labor, and Pensions because it is located in and operates from Washington, D.C. and the Subpoena to Dr. de la Torre issued from the Committee.

15.    This Court has personal jurisdiction over all Defendant Senators because all have Washington, D.C.-based offices and are members of the Committee, which operates from Washington, D.C.

16.    Venue is proper pursuant to 28 U.S.C. § 1391(b)(2) because the District Court for the District of Columbia is the judicial district in which a "substantial part of the events" leading to this action took place.  The District of Columbia is where the Subpoena to Dr. de la Torre was issued and was the place of compliance listed in the Subpoena.

17.    This Court may issue declaratory relief pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201, and Federal Rule of Civil Procedure 57.

**THE PARTIES**

18.    Plaintiff Dr. Ralph de la Torre, M.D., was the founder, chairman, and chief executive officer of Steward Health Care System, LLC, which he founded in 2010.  The Committee issued the Subpoena challenged herein to Dr. de la Torre on July 25, 2024.

19.    Defendant Bernard Sanders is a U.S. Senator for the State of Vermont and he currently serves as the Chairman of the Senate Committee on Health, Education, Labor, and Pensions.  The Subpoena challenged herein was issued pursuant to his authority and signed by him.  He voted affirmatively on the Committee's Contempt Resolutions on September 19, 2024.

20.    Defendant Bill Cassidy is a U.S. Senator for the State of Louisiana and he currently serves as the Ranking Member of the Senate Committee on Health, Education, Labor, and Pensions.  He voted affirmatively on the Committee's Contempt Resolutions on September 19, 2024.

21.    Defendant Patty Murray is a U.S. Senator for the State of Washington and currently

JA22

serves as a member of the Senate Committee on Health, Education, Labor, and Pensions.  She voted affirmatively on the Committee's Contempt Resolutions on September 19, 2024.

22.     Defendant Robert P. Casey, Jr. is a U.S. Senator for the State of Pennsylvania and currently serves as a member of the Senate Committee on Health, Education, Labor, and Pensions. He voted affirmatively on the Committee's Contempt Resolutions on September 19, 2024.

23.     Defendant Tammy Baldwin is a U.S. Senator for the State of Wisconsin and currently serves as a member of the Senate Committee on Health, Education, Labor, and Pensions. She voted affirmatively on the Committee's Contempt Resolutions on September 19, 2024.

24.     Defendant Christopher Murphy is a U.S. Senator for the State of Connecticut and currently serves as a member of the Senate Committee on Health, Education, Labor, and Pensions. He voted affirmatively on the Committee's Contempt Resolutions on September 19, 2024.

25.     Defendant Tim Kaine is a U.S. Senator for the State of Virginia and currently serves as a member of the Senate Committee on Health, Education, Labor, and Pensions.  He voted affirmatively on the Committee's Contempt Resolutions on September 19, 2024.

26.     Defendant Margaret Wood Hassan is a U.S. Senator for the State of New Hampshire and currently serves as a member of the Senate Committee on Health, Education, Labor, and Pensions.  She voted affirmatively on the Committee's Contempt Resolutions on September 19, 2024.

27.     Defendant Tina Smith is a U.S. Senator for the State of Minnesota and currently serves as a member of the Senate Committee on Health, Education, Labor, and Pensions.  She voted affirmatively on the Committee's Contempt Resolutions on September 19, 2024.

28.     Defendant Ben Ray Luján is a U.S. Senator for the State of New Mexico and currently serves as a member of the Senate Committee on Health, Education, Labor, and Pensions.

JA23

He voted affirmatively on the Committee's Contempt Resolutions on September 19, 2024.

29.     Defendant John W. Hickenlooper is a U.S. Senator for the State of Colorado and currently serves as a member of the Senate Committee on Health, Education, Labor, and Pensions. He voted affirmatively on the Committee's Contempt Resolutions on September 19, 2024.

30.     Defendant Edward J. Markey is a U.S. Senator for the State of Massachusetts and currently serves as a member of the Senate Committee on Health, Education, Labor, and Pensions. He voted affirmatively on the Committee's Contempt Resolutions on September 19, 2024.

31.     Defendant Susan M. Collins is a U.S. Senator for the State of Maine and currently serves as a member of the Senate Committee on Health, Education, Labor, and Pensions.  She voted affirmatively on the Committee's Contempt Resolutions on September 19, 2024.

32.     Defendant Lisa Murkoswki is a U.S. Senator for the State of Alaska and currently serves as a member of the Senate Committee on Health, Education, Labor, and Pensions.  She voted affirmatively on the Committee's Contempt Resolutions on September 19, 2024.

33.     Defendant Mike Braun is a U.S. Senator for the State of Indiana and currently serves as a member of the Senate Committee on Health, Education, Labor, and Pensions. He voted affirmatively on the Committee's Contempt Resolutions on September 19, 2024.

34.     Defendant Roger Marshall is a U.S. Senator for the State of Kansas and currently serves as a member of the Senate Committee on Health, Education, Labor, and Pensions. He voted affirmatively on the Committee's Contempt Resolutions on September 19, 2024.

35.     Defendant Mitt Romney is a U.S. Senator for the State of Utah and currently serves as a member of the Senate Committee on Health, Education, Labor, and Pensions.  He voted affirmatively on the Committee's Contempt Resolutions on September 19, 2024.

36.     Defendant Tommy Tuberville is a U.S. Senator for the State of Alabama and

currently serves as a member of the Senate Committee on Health, Education, Labor, and Pensions. He voted affirmatively on the Committee's Contempt Resolutions on September 19, 2024.

37.     Defendant Markwayne Mullin is a U.S. Senator for the State of Oklahoma and currently serves as a member of the Senate Committee on Health, Education, Labor, and Pensions. He voted affirmatively on the Committee's Contempt Resolutions on September 19, 2024.

38.     Defendant Ted Budd is a U.S. Senator for the State of North Carolina and currently serves as a member of the Senate Committee on Health, Education, Labor, and Pensions. He voted affirmatively on the Committee's Contempt Resolutions on September 19, 2024.

39.     The Senate Committee on Health, Education, Labor, and Pensions is a standing committee of the United States Senate. Pursuant to Rule XXV of the Standing Rules of the Senate, the Committee has jurisdiction over, among other things, "[m]easures relating to education, labor, health, and public welfare" and "[p]ublic health."

## FACTUAL ALLEGATIONS

### I.     Dr. de la Torre and Steward Health Care System LLC

40.     Dr. de la Torre founded Steward in Massachusetts in 2010, as an affiliate of Cerberus Capital Management, L.P. ("Cerberus"), which acquired the non-profit health care system Caritas Christi Health Care.

41.     At the time of the acquisition, Caritas Christi was in dire straits and at risk of serious loss. The Massachusetts state attorney general, in approving the Steward transaction in 2010, found it "impracticable, if not impossible, for Caritas to continue to operate as a public charity."[11] Without Steward and Cerberus, more than 13,000 employee pensions would have been at risk, and

---

[11]     *See* Office of Att'y Gen. Martha Coakley, Statement of the Att'y Gen. as to the Caritas Christi Transaction (Oct. 6, 2010), https://www.mass.gov/files/documents/2016/08/wo/statement-of-the-attorney-general-caritas-christi-transaction.pdf.

hospitals likely would have shuttered under Caritas Christi's leadership. Steward and Cerberus gave Caritas Christi—including its patients, employees, and communities—the cash infusion that it desperately needed.

42.     Steward acquired six hospitals with the Caritas Christi sale in 2010 and began to expand nationwide, determined to bring its value-based care model to patients around the nation. Steward Health Care has served millions of patients and employed thousands of physicians, nurses, and staff.

43.     But Steward, like many other businesses, faced significant financial headwinds as a result of the COVID-19 pandemic. Steward hospitals endured a sharp decline in elective patient visits in the face of significant cost increases—to say nothing of the physical, emotional, and mental toll on all Steward physicians and staff, including management. The pandemic had—and has continued to have—a debilitating effect on Steward's revenue.

44.     Steward has faced additional struggles in recent years as well, including a nationwide health care labor shortage and associated rising labor costs, rising fixed costs for equipment and supplies, in addition to severe inflationary pressures. And because most of Steward's patient service revenue is typically attributed to government-run health care programs, Steward is left with reimbursement rates far lower than that of non-government programs and those received by competing academic medical centers.

45.     On May 6, 2024, Steward filed for Chapter 11 protection under the U.S. Bankruptcy Code. *See In re Steward Health Care System LLC, et al.*, No. 24-90213-CML (S.D. Tex. May 6, 2024).

**II.     The Committee Issues The Subpoena To Dr. de la Torre As Part Of Its Coordinated Campaign To Villainize And Scapegoat Him**

46.     In response to Steward's bankruptcy announcement, members of the Committee

JA26

have continuously tried to frame Dr. de la Torre as a criminal mastermind who destroyed Steward through avarice and deceit. Indeed, members of the Committee and other members of Congress have engaged and continue to engage in a coordinated campaign of casting public aspersions and guilt to paint Dr. de la Torre as a villain and criminal, including calling for criminal investigations of him. For example:

- "What Dr. de la Torre, Cerberus Capital Management and Medical Properties Trust did to Steward-owned hospitals in Massachusetts and across the country is unforgiveable." (Statement of Sen. Edward Markey on June 11, 2024).[12]

- "Whether in Massachusetts or Malta, Dr. de la Torre used his credentials as a physician and CEO to sell Steward as a health care savior. Instead, he and his corporate enablers in private equity and real estate hollowed out a health system as they lined their pockets. Steward must be investigated, and I hope the company and the corporate executives who facilitated Steward's actions face consequences that reflect the lives, livelihoods, safety, and security that they stole from communities." (Statement of Sen. Edward Markey on July 11, 2024).[13]

- "Enough is enough. It is time for Dr. de la Torre to get off of his yacht and explain to Congress how much he has gained financially while bankrupting the hospitals he manages." (Statement of Sens. Bernard Sanders and Edward Markey on July 18, 2024).[14]

- "Under Dr. de la Torre's leadership, . . . Steward is the subject of a federal investigation over alleged fraud and violations of the Foreign Corrupt Practices Act. In 2022, Steward also settled False Claims Act violations with the U.S. Attorney's Office, alleging that Steward defrauded the U.S. government and the American taxpayer for medical services that they did not provide." (Committee

---

[12]   Press Release, Senator Elizabeth Warren, Senators Warren, Markey Introduce the Corporate Crimes Against Health Care Act of 2024 (June 11, 2024), https://www.warren.senate.gov/newsroom/press-releases/senators-warren-markey-introduce-the-corporate-crimes-against-health-care-act-of-2024.

[13]   Press Release, Senator Edward Markey, Senator Markey Statement on Federal Investigation into Steward Health Care on Charges of Fraud and Corruption (July 11, 2024), https://www.markey.senate.gov/news/press-releases/senator-markey-statement-on-federal-investigation-into-steward-health-care-on-charges-of-fraud-and-corruption.

[14]   Press Release, Senator Bernard Sanders, Sanders and Markey Joint Statement on Upcoming Vote to Investigate and Subpoena Steward Health Care on Bankruptcy (July 18, 2024), https://www.sanders.senate.gov/press-releases/news-sanders-and-markey-joint-statement-on-upcoming-vote-to-investigate-and-subpoena-steward-health-care-on-bankruptcy/.

JA27

Press Release on July 24, 2024).[15]

- "Dr. de la Torre and his corporate executive enablers at Steward, Cerberus, and Medical Properties Trust pocketed hundreds of millions of dollars and used it to engage in international schemes, spy on corporate rivals, and purchase luxury goods. His consistent refusals to offer basic answers has compounded Steward's actual bankruptcy with moral bankruptcy." (Statement of Sen. Edward Markey on July 25, 2024).[16]

47.    Then, on July 25, 2024, the Committee commenced an investigation ostensibly into "the bankruptcy of Steward Health Care" and issued the Subpoena to Dr. de la Torre, commanding him to appear before the Committee and testify at the Hearing.

48.    The Hearing, however, was neither designed nor intended to gather facts about Steward's bankruptcy proceedings.  Rather than serving any valid legislative purpose, the Subpoena and Hearing were merely vehicles concocted by the Committee to permit Members to vilify Dr. de la Torre in grandstanding speeches and solicit malicious testimony from hostile witnesses for the sole purpose of publicly humiliating and degrading Dr. de la Torre.

49.    Indeed, by the Committee's own admissions before issuance of the Subpoena, the Hearing was not designed to be a fact-gathering investigation, but was instead meant to be a forum where members of the Committee would seemingly "hold Dr. de la Torre accountable" for an alleged "elaborate Ponzi scheme" that "t[ook] over a massive hospital system and then loot[ed] it" for personal wealth, and the Subpoena would ensure that Dr. de la Torre's "day of reckoning [was]

---

[15]    Press Release, Senate HELP Committee, HELP Committee to Hold Bipartisan Vote to Launch Investigation into Bankruptcy of Steward Health Care and Subpoena CEO (July 24, 2024),    https://www.help.senate.gov/chair/newsroom/press/media-advisory-help-committee-to-hold-bipartisan-vote-to-launch-investigation-into-bankruptcy-of-steward-health-care-and-subpoena-ceo.

[16]    Press Release, Senator Edward Markey, Senator Markey Votes to Compel Steward CEO Dr. Ralph de la Torre Testimony before HELP Committee (July 25, 2024), https://www.markey.senate.gov/news/press-releases/icymi-senator-markey-votes-to-compel-steward-ceo-dr-ralph-de-la-torre-testimony-before-help-committee.

JA28

going to arrive here on September 12th in the HELP Committee" as the Committee saw fit.[17]

50.    In the face of the Committee's and others' relentless public attacks and predetermined claims of criminal misconduct, on September 4, 2024—more than a week before the Hearing—Dr. de la Torre informed the Committee that he could not provide testimony at the Hearing because he was invoking his Fifth Amendment rights.

51.    In its response letter, dated September 5, 2024, the Committee *explicitly recognized* that Dr. de la Torre had invoked "[t]he Fifth Amendment privilege against self-incrimination" as a reason why "it would be inappropriate to compel Dr. de la Torre to appear before the Committee," but nevertheless commanded Dr. de la Torre "to appear for testimony" or face "criminal penalties" for his "[f]ailure to comply with the Committee's subpoena." In so doing, the Committee laid bare its true motives: not to seek answers from Dr. de la Torre, who they understood would provide none, but rather to subject him to public, televised ridicule for exercising his constitutional right to remain silent. The Committee's naked threat to Dr. de la Torre was intended to intimidate him from asserting his Fifth Amendment rights at all, or stand on those rights but appear at the hearing and have his invocation ridiculed and used against him by the Committee and its witnesses. In either circumstance, the Committee violated Dr. de la Torre's constitutional rights by promising to bring civil and criminal contempt proceedings against Dr. de la Torre *unless* he provided sworn testimony at the Committee's Hearing or appeared in person to invoke those rights and have his silence used against him to paint him as a criminal.

52.    Moreover, the Committee's September 5 response made no inquiry into the scope or the basis for Dr. de la Torre's Fifth Amendment invocation, nor did it seek judicial intervention

---

[17]    *Executive Session of the S. Comm. on Health, Educ., Labor, and Pensions*, 118th Cong. (2024) (Statements of Sens. Bernard Sanders and Edward Markey on July 25, 2024).

to determine whether the invocation was valid.  The Committee also did not seek documents from Dr. de la Torre, nor did the Committee offer a closed hearing where Dr. de la Torre's confidentiality obligations could be honored.  It took no further action in pursuit of the facts or a resolution of Dr. de la Torre's Fifth Amendment invocation aside from threatening criminal punishment if Dr. de la Torre did not submit to the Committee's public shaming for exercising his Fifth Amendment rights.[18]

53.    The Committee's intent was not to hear the substance of Dr. de la Torre's testimony; indeed, requiring Dr. de la Torre to attend the hearing only to repeat his Fifth Amendment invocation serves no valid legislative purpose to the Committee.  Instead, the Committee hoped to lead the public to infer criminal misconduct—an inference from which Dr. de la Torre should be constitutionally protected—by coercing him to invoke his Fifth Amendment rights in a televised shaming spectacle and remain silent in the face of vitriolic abuse from Senators and witnesses lobbing spiteful and venomous *ad hominem* attacks against him, none of which Dr. de la Torre could refute without abandoning his constitutional rights.[19]

54.    It is well established that a witness need not take the witness stand at a trial for the sole purpose of creating a spectacle whereby the public may observe him invoke the Fifth Amendment.  The Committee's command that Dr. de la Torre be compelled to do so—under threat

---

[18]    *See* Press Conference, Senators Edward Markey and Elizabeth Warren (Sept. 5, 2024), https://www.markey.senate.gov/view/ralph-de-la-torre-is-saying-he-wont-comply-with-the-subpoena-to-testify-before-the-senate-help-c ("[I]f he continues to refuse to appear before the Committee, we will not stop until he answers for what he has done or is put behind bars.") (Statement of Sen. Edward Markey on Sept. 5, 2024).

[19]    This, indeed, was the stated goal for Senator Elizabeth Warren, who has been outwardly supportive of the Committee's efforts and said at a September 5, 2024 press conference that, "Congress has questions to ask and if Mr. de la Torre believes the answers will put him at risk for going to jail, he can take the Fifth Amendment ***right out in public for everyone to see***." *Id.*

of criminal prosecution for failure to comply—was another step in the Committee's unvarnished and unlawful crusade to deter, punish, and publicly humiliate Dr. de la Torre for continuing to invoke his Fifth Amendment rights, and it serves as a glaring example of the Committee's egregious and unlawful departure from the scope of its congressional investigative authority.

### III.   The Senate Continues To Punish Dr. de la Torre For Invoking His Fifth Amendment Rights In Response To The Subpoena

55.    In response to Dr. de la Torre's exercise of his Fifth Amendment rights, on September 12, 2024, the Committee notified Dr. de la Torre via a public announcement that it would pursue two Contempt Resolutions against him: one civil contempt resolution to enforce the Subpoena and compel Dr. de la Torre's sworn testimony despite his invocation, and one criminal contempt resolution seeking to punish Dr. de la Torre for invoking his rights in the first place.

56.    Before the Committee voted on the Contempt Resolutions, however, on September 18, 2024, Dr. de la Torre reiterated his objections to the Committee, reminding the Committee that "on the advice of counsel, Dr. de la Torre invokes his procedural and substantive rights under the Fifth Amendment of the U.S. Constitution, including the privilege to refrain from testifying at the Committee's Hearing."

57.    On September 19, 2024, the Committee passed both Contempt Resolutions.  The first directs the president of the Senate to "certify the report of the Committee on Health, Education, Labor, and Pensions of the Senate, detailing the refusal of Dr. Ralph de la Torre . . . to appear and testify before the Committee, to the United States Attorney for the District of Columbia, to the end that Dr. de la Torre be proceeded against in the manner and form provided by law." And the second directs the Senate legal counsel to bring "a civil action in the name of the Committee on Health, Education, Labor, and Pensions of the Senate to enforce the subpoena issued by the Committee to Dr. Ralph de la Torre, . . . [and] conduct all related civil contempt

JA31

proceedings."

58.     At the Committee meeting to vote on the Contempt Resolutions, there was not a single mention of Dr. de la Torre's invocation of the Fifth Amendment; nor in either Contempt Resolution was there any reference to Dr. de la Torre's invocation.  Indeed, both Contempt Resolutions characterize Dr. de la Torre's Fifth Amendment invocation as mere "objections to the compelled testimony" instead of fundamental constitutional protections that would unequivocally prohibit their actions.  Then, Defendants unanimously approved the Contempt Resolutions without any acknowledgement whatsoever of Dr. de la Torre's Fifth Amendment invocation.

59.     The Committee intends to compel Dr. de la Torre to appear and testify pursuant to the Subpoena, via the civil enforcement resolution, and to punish Dr. de la Torre *criminally* for asserting his Fifth Amendment rights, via the criminal resolution.  It is difficult to conceive of a more brazen assault on, and threat to, the rights enshrined in the Fifth Amendment.

60.     On September 23, 2024, Senator Sanders reported S. Res. 837 to the full Senate floor for a vote, which directs the Senate president to refer a criminal contempt proceeding against Dr. de la Torre for prosecution by the U.S. Attorney for the District of Columbia.

61.     On September 25, 2024, Senators Sanders, Cassidy, and Markey spoke on the Senate floor in favor of S. Res. 837.  Tellingly, none so much as acknowledged Dr. de la Torre's invocation of his Fifth Amendment rights.  The Senators' soliloquies before the full Senate omitted several critical facts from the record: that Dr. de la Torre invoked his Fifth Amendment rights on September 4, 2024; that the Committee acknowledged such an invocation on September 5, 2024; that the Hearing proceeded *despite*, and indeed *as punishment for,* the invocation; that Dr. de la Torre reminded the Committee of his Fifth Amendment invocation after the Hearing; and that, *despite* the invocation and subsequent reminder, the Committee nonetheless held Dr. de la Torre

21

**JA32**

in contempt on September 19, 2024.  Unanimous Senate approval of the resolution without these

critical facts is another act in a series of performances designed exclusively to expose, punish,

degrade, pillory, and humiliate Dr. de la Torre, and certainly not to legislate.

62.     S. Res. 837 passed unanimously in the Senate on September 25, 2024 without as

much as a passing reference to Dr. de la Torre's constitutional rights.  Attempting to punish Dr. de

la Torre with a criminal contempt citation for the mere assertion of his Fifth Amendment rights

and his unwillingness to bend to the Committee's threats is an abuse of power and a flagrant

constitutional violation.

63.     The Committee now seeks the "criminal penalties" that it promised Dr. de la Torre

it would.  Notably, the Committee has taken no further action in pursuit of the facts regarding

"[t]he bankruptcy of Steward Health Care."  The Committee's ultimate goal was never to gather

the facts, but to publicly shame and punish Dr. de la Torre for exercising his rights.  The

Constitution prohibits the Committee's assault on Dr. de la Torre's rights under the Fifth

Amendment, and this Court must hold Defendants accountable and quash the Subpoena.

### COUNT I
### (Declaratory Relief)
### Subpoena Does Not Advance a Valid Legislative Purpose

64.     Dr. de la Torre realleges and incorporates by reference paragraphs 1 to 63 as if fully

set forth herein.

65.     While Congress's investigatory powers are broad, a "congressional subpoena is

valid only if it is 'related to, and in furtherance of, a legitimate task of the Congress.'"  *Trump v.

Mazars USA, LLP*, 591 U.S. 848, 862-63 (2020) (quoting *Watkins v. United States*, 354 U.S. 178,

187 (1957)).  "The subpoena must serve a 'valid legislative purpose'; it must 'concern a subject

on which legislation could be had.'"  *Id.* (alteration adopted).

66.     Congress has "no general authority to expose the private affairs of individuals

JA33

without justification in terms of the functions of the Congress." *Watkins*, 354 U.S. at 187. Moreover, "Congress may not issue a subpoena for the purpose of 'law enforcement,' because those powers are assigned under our Constitution to the Executive and the Judiciary." *Mazars*, 591 U.S. at 862-63 (quoting *Quinn v. United States*, 349 U.S. 155, 161 (1955)).

67.     Moreover, a valid congressional subpoena will "adequately identif[y] its aims and explain[] why the [subject's] information will advance its consideration of the possible legislation," otherwise it will be "impossible to conclude that a subpoena is designed to advance a valid legislative purpose[.]" *Mazars*, 591 U.S. at 870-71 (2020) (citing *Watkins*, 354 U.S. at 201, 205).

68.     The Subpoena issued to Dr. de la Torre on July 25, 2024, lacks a valid legislative purpose because it is not related to a legitimate act of Congress.

69.     As alleged herein, Dr. de la Torre informed the Committee on September 4, 2024 that, among other things, Dr. de la Torre's constitutional rights, including his rights under the Fifth Amendment of the U.S. Constitution, protect him from being compelled to provide information that the Committee sought at the Hearing.

70.     The Committee's insistence that Dr. de la Torre "appear and assert the privilege" in public removed any semblance of a valid legislative purpose that the Subpoena may have had in the first place.  Because the Committee understood that Dr. de la Torre would not testify on Fifth Amendment grounds, the Subpoena no longer concerned a subject on which legislation could be had absent resolution of Dr. de la Torre's Fifth Amendment invocation.

71.     The Subpoena also lacks a valid legislative purpose because it was designed and used by the Committee only as a vehicle to punish and expose Dr. de la Torre for the personal aggrandizement of Defendants.  As alleged herein, Defendants have made clear that the purpose

JA34

of the Subpoena was merely a mechanism to compel his attendance at the Hearing to "hold Dr. de la Torre accountable" and subject him to "a day of reckoning" as the Committee saw fit, both of which are unlawfully punitive law enforcement actions that are beyond the Committee's congressional remit and investigative authority.

72.    Continued attempts to enforce the Subpoena also lack a valid legislative purpose due to Dr. de la Torre's invocation of his Fifth Amendment rights and privileges.  As alleged herein, in his September 4, 2024 letter to the Committee, Dr. de la Torre objected to and invoked constitutional concerns, including under the Fifth Amendment of the U.S. Constitution, with the Committee's Subpoena.  The Committee acknowledged Dr. de la Torre's invocation of his Fifth Amendment rights in a letter dated September 5, 2024, but insisted that Dr. de la Torre would face "criminal penalties" unless he appeared at the Hearing and invoked his constitutional rights on a question by question basis, despite understanding that he would answer no substantive questions concerning the subject matter of the Hearing.  Having him appear merely to assert his Fifth Amendment protections against compelled testimony served no legislative purpose nor any public-informing function.

73.    For the avoidance of doubt, on September 18, 2024, before the Committee voted on the Contempt Resolutions, Dr. de la Torre again objected to the Committee's Subpoena and reminded the Committee that he "cannot be permitted to provide sworn testimony at this time, . . . [because] on the advice of counsel, Dr. de la Torre invokes his procedural and substantive rights under the Fifth Amendment of the U.S. Constitution, including the privilege to refrain from testifying at the Committee's Hearing."

74.    The Committee voted on the Contempt Resolutions the next day without adequate recognition or acknowledgement of Dr. de la Torre's Fifth Amendment invocation.  At the time of

the Committee's vote on the Contempt Resolutions, the Committee was aware that the Subpoena could not compel Dr. de la Torre to provide any sworn testimony at the Hearing because of, among other things, his Fifth Amendment invocation.  Accordingly, Defendants' continued attempts to compel Dr. de la Torre's testimony and punish him for declining to attend the Hearing have no purpose beyond punishing Dr. de la Torre for standing on his rights, which are not valid legislative purposes.

75.     Moreover, the Committee's Subpoena does not "adequately identif[y] its aims and explain[] why [Dr. de la Torre's] information will advance its consideration of the possible legislation."  *Mazars*, 591 U.S. at 870-71.  Without such information, it is "'impossible' to conclude that a subpoena is designed to advance a valid legislative purpose."  *Id.*  The Committee's only written justification of the Subpoena and the Hearing—*i.e.*, to discuss "the bankruptcy of Steward Health Care"—is belied by the facts alleged herein that show the Subpoena and Hearing were designed to lead the public to infer criminal misconduct by coercing Dr. de la Torre to publicly invoke his Fifth Amendment rights in a televised shaming spectacle and remain silent in the face of vitriolic abuse from Senators and witnesses lobbing spiteful and venomous *ad hominem* attacks against him, none of which Dr. de la Torre could refute without abandoning his constitutional rights. The Subpoena lacked a valid legislative purpose, and as such, all of Defendants' actions to enforce the Subpoena—including purporting to "overrule" Dr. de la Torre's Fifth Amendment invocation, holding the September 12 Hearing, holding the September 19 Executive Session, and ultimately approving the Contempt Resolutions—are invalid *ultra vires* actions that lacked proper congressional authority.

76.     The Subpoena and Contempt Resolutions are also invalid as *ultra vires* actions for the same reason.

JA36

77.     Because Defendants' actions were not within a legitimate legislative sphere, the Speech or Debate Clause is no bar to this Court's jurisdiction.  *See Eastland v. U. S. Servicemen's Fund*, 421 U.S. 491, 503 (1975).

## COUNT II
### (Declaratory and Injunctive Relief)
### The Committee's Actions Violated Dr. de la Torre's Fifth Amendment Rights

78.     Dr. de la Torre realleges and incorporates by reference paragraphs 1 to 77 as if fully set forth herein.

79.     The Fifth Amendment's protection that the Government may not compel a witness to give evidence against themselves applies to the Congressional setting.  *Watkins*, 354 U.S. at 188.  The Bill of Rights is applicable to a Congressional investigation as it is any other government investigation.

80.     Dr. de la Torre invoked the Fifth Amendment's constitutional protections in his September 4, 2024 letter to the Committee.[20]

81.     Despite such invocation, the Committee held a hearing on September 12, 2024, where Senator Sanders stated on the record that the Committee had "overruled [Dr. de la Torre's Subpoena] objections in their entirety and informed his attorneys that we expected to see Dr. de la Torre today."[21]  Senator Cassidy further stated that "today the chair and I will be asking the committee to report a resolution to authorize civil enforcement and criminal contempt proceedings against Dr. de la Torre requiring compliance with the subpoena."[22]  To date, however, the

---

[20]  *See* S. Rep. No. 118-230, at 2 (2024) ("On September 4, 2024 . . . Mr. Merton stated that Dr. de la Torre would not testify as commanded by the subpoena. Mr. Merton cited Dr. de la Torre's constitutional rights . . . .").

[21]  *See Examining the Bankruptcy of Steward Health Care: How Management Decisions Have Impacted Patient Care: Hearing before the S. Comm. on Health, Educ., Labor, and Pensions*, 118th Cong. (2024).

[22]  *Id.*

JA37

Committee has not requested information on the basis or scope of Dr. de la Torre's invocation, nor has it challenged the merits of his invocation.

82.     The Committee's leadership publicly made clear that it expected Dr. de la Torre to testify at the hearing despite the Committee's knowledge that Dr. de la Torre *would not* testify at the hearing in reliance on his rights under the Fifth Amendment.  In holding the September 12 Hearing despite this knowledge, Defendants attempted to compel Dr. de la Torre "to be a witness against himself," in direct violation of the Fifth Amendment to the U.S. Constitution.

83.     Defendants failed to acknowledge Dr. de la Torre's valid invocation at its September 19 Executive Session, but continued to vote unanimously to direct the president of the Senate to report S. Res. 837 and its accompanying Report (S. Rep. No. 118-230) to the United States Attorney for the District of Columbia for further proceedings holding Dr. de la Torre in criminal contempt of Congress.

84.     Because Dr. de la Torre has already invoked his Fifth Amendment privilege, all further attempts at compelling him to testify are merely continued violations of the Fifth Amendment that must be enjoined.

85.     Likewise, Defendants' attempt to compel Dr. de la Torre's sworn testimony through the Subpoena as well as attempt to punish Dr. de la Torre for invoking his Fifth Amendment privileges are both unconstitutional, prohibited by law, and must be enjoined.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Ralph de la Torre respectfully requests that the Court enter judgment in his favor and against Defendants as follows:

a)  Declaring that the Senate Committee on Health, Education, Labor, and Pensions' Subpoena to Dr. de la Torre issued July 25, 2024 and all

JA38

subsequent actions related to enforcement of the Subpoena are invalid as *ultra vires* and unconstitutional, and therefore unenforceable.

b) Declaring that Dr. de la Torre properly invoked his Fifth Amendment rights in response to the Senate Committee on Health, Education, Labor, and Pensions' Subpoena to Dr. de la Torre issued July 25, 2024.

c) Declaring that the vote of the Committee on September 19, 2024 approving the Contempt Resolutions as well as subsequently presenting S. Res. 837 for a full Senate vote were violations of Dr. de la Torre's Fifth Amendment rights.

d) Entering an Order quashing the Subpoena.

e) Enjoining the Senate Committee on Health, Education, Labor, and Pensions and any of its Members or agents—to include the Senate legal counsel—from attempting to civilly enforce the July 25, 2024 Subpoena to Dr. de la Torre.

f) Enjoining the Senate Committee on Health, Education, Labor, and Pensions and any of its Members or agents from causing Dr. de la Torre to suffer from criminal punishment for invoking his Fifth Amendment rights in response to the Senate Committee on Health, Education, Labor, and Pensions' Subpoena to Dr. de la Torre issued July 25, 2024.

g) With any such other and further relief as the Court deems proper.

JA39

Dated: September 30, 2024

Respectfully submitted,

By: */s/ William A. Burck*

William A. Burck (D.C. Bar No. 979677)
Alexander J. Merton (D.C. Bar No. 1029439)
   (*pro hac vice* forthcoming)
Kaylee A. Otterbacher (D.C. Bar No. 90018061)
   (*pro hac vice* forthcoming)
QUINN EMANUEL URQUHART & SULLIVAN, LLP
1300 I Street NW, Suite 900
Washington, District of Columbia 20005-3314
(202) 538-8000
williamburck@quinnemanuel.com
ajmerton@quinnemanuel.com
kayleeotterbacher@quinnemanuel.com

*Counsel to Plaintiff Dr. Ralph de la Torre*

JA40

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

**DR. RALPH DE LA TORRE, M.D.,**
4939 Brookview Drive
Dallas, TX 75220

               Plaintiff,

v.

**BERNARD SANDERS, in his capacity as**
**Chairman of the Committee on Health,**
**Education, Labor, and Pensions of the**
**United States Senate**;
332 Dirksen Senate Office Building
Washington, D.C. 20510

**BILL CASSIDY, M.D.**, **in his capacity as**
**Ranking Member of the Committee on**
**Health, Education, Labor, and Pensions of**
**the United States Senate**;
455 Dirksen Senate Office Building
Washington, D.C. 20510

**PATTY MURRAY, in her capacity as a**
**member of the Committee on Health,**
**Education, Labor, and Pensions of the**
**United States Senate**;
154 Russell Senate Office Building
Washington, D.C. 20510

**ROBERT P. CASEY, JR., in his capacity**
**as a member of the Committee on Health,**
**Education, Labor, and Pensions of the**
**United States Senate**;
393 Russell Senate Office Building
Washington, D.C. 20510

**TAMMY BALDWIN, in her capacity as a**
**member of the Committee on Health,**
**Education, Labor, and Pensions of the**
**United States Senate**;
141 Hart Senate Office Building
Washington, D.C. 20510

Case No. 1:24-cv-02776-TNM

JA41

**CHRISTOPHER MURPHY, in his capacity as a member of the Committee on Health, Education, Labor, and Pensions of the United States Senate**;
136 Hart Senate Office Building
Washington, D.C. 20510

**TIM KAINE, in his capacity as a member of the Committee on Health, Education, Labor, and Pensions of the United States Senate**;
231 Russell Senate Office Building
Washington, D.C. 20510

**MARGARET WOOD HASSAN, in her capacity as a member of the Committee on Health, Education, Labor, and Pensions of the United States Senate**;
324 Hart Senate Office Building
Washington, D.C. 20510

**TINA SMITH, in her capacity as a member of the Committee on Health, Education, Labor, and Pensions of the United States Senate**;
720 Hart Senate Office Building
Washington, D.C. 20510

**BEN RAY LUJÁN, in his capacity as a member of the Committee on Health, Education, Labor, and Pensions of the United States Senate**;
498 Russell Senate Office Building
Washington, D.C. 20510

**JOHN W. HICKENLOOPER, in his capacity as a member of the Committee on Health, Education, Labor, and Pensions of the United States Senate**;
374 Russell Senate Office Building
Washington, D.C. 20510

**EDWARD J. MARKEY, in his capacity as a member of the Committee on Health, Education, Labor, and Pensions of the United States Senate**;

JA42

255 Dirksen Senate Office Building
Washington, D.C. 20510

**SUSAN M. COLLINS, in her capacity as a member of the Committee on Health, Education, Labor, and Pensions of the United States Senate**;
413 Dirksen Senate Office Building
Washington, D.C. 20510

**LISA MURKOWSKI, in her capacity as a member of the Committee on Health, Education, Labor, and Pensions of the United States Senate**;
522 Hart Senate Office Building
Washington, D.C. 20510

**MIKE BRAUN**, **in his capacity as a member of the Committee on Health, Education, Labor, and Pensions of the United States Senate;**
404 Russell Senate Office Building
Washington, DC 20510

**ROGER MARSHALL, M.D., in his capacity as a member of the Committee on Health, Education, Labor, and Pensions of the United States Senate**;
479A Russell Senate Office Building
Washington, DC 20510

**MITT ROMNEY, in his capacity as a member of the Committee on Health, Education, Labor, and Pensions of the United States Senate**;
354 Russell Senate Office Building
Washington, D.C. 20510

**TOMMY TUBERVILLE, in his capacity as a member of the Committee on Health, Education, Labor, and Pensions of the United States Senate**;
455 Russell Senate Office Building
Washington, D.C. 20510

**MARKWAYNE MULLIN, in his capacity**

JA43

**as a member of the Committee on Health, Education, Labor, and Pensions of the United States Senate**;
330 Hart Senate Office Building
Washington, D.C. 20510

**TED BUDD, in his capacity as a member of the Committee on Health, Education, Labor, and Pensions of the United States Senate**; and
304 Russell Senate Office Building
Washington, D.C. 20510

**COMMITTEE ON HEALTH, EDUCATION, LABOR, AND PENSIONS OF THE UNITED STATES SENATE,**
428 Dirksen Senate Office Building
Washington, D.C. 20510

Defendants.

## AMENDED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

Plaintiff Dr. Ralph de la Torre, M.D., ("Dr. de la Torre") hereby respectfully seeks judicial redress for continuing violations of his constitutional rights, particularly under the Fifth Amendment to the U.S. Constitution, by these Defendants:  Senators Bernard Sanders, Bill Cassidy, M.D., Patty Murray, Robert P. Casey, Jr., Tammy Baldwin, Christopher Murphy, Tim Kaine, Margaret Wood Hassan, Tina Smith, Ben Ray Luján, John W. Hickenlooper, Edward J. Markey, Susan M. Collins, Lisa Murkowski, Mike Braun, Roger Marshall, M.D., Mitt Romney, Tommy Tuberville, Markwayne Mullin, and Ted Budd, as well as the U.S. Senate Committee on Health, Education, Labor, and Pensions (the "Committee," and collectively with each individual Defendant Senator, "Defendants").  As alleged herein, Defendants are collectively undertaking a concerted effort to punish Dr. de la Torre for invoking his Fifth Amendment right not to "be compelled . . . to be a witness against himself," and continue to command his sworn testimony by compulsion without regard for the validity of his invocation.  Because such punishment is patently

4

JA44

unconstitutional, this Court should grant the declaratory and injunctive relief necessary to stop it.

1.    Dr. Ralph de la Torre has had a distinguished career, bedecked by numerous accomplishments.  He was the founder, chairman, and CEO of Steward Health Care System, LLC ("Steward"), the largest physician-led, minority-owned, integrated health care system in the United States.  After earning a Bachelor of Science degree in Engineering from Duke University, Dr. de la Torre attended a joint program administered by Harvard Medical School and the Massachusetts Institute of Technology, earning a doctorate in medicine as well as a master's degree in science.  After a renowned career as a cardiac surgeon, Dr. de la Torre became a leader in the healthcare industry.  He ultimately founded Steward in 2010, where he pioneered a physician-led health care model that emphasizes value-based care, patient outcomes, and cost-effective services, thus expanding access to quality medical care for the many communities served by Steward.

2.    On May 6, 2024, however, Steward filed for Chapter 11 protection under the U.S. Bankruptcy Code.  Since Steward's bankruptcy announcement, members of the Committee have painted Dr. de la Torre as a villain and scapegoated him for the company's problems, even those caused by systemic deficiencies in Massachusetts' health care system.

3.    On July 25, 2024, the Committee served Dr. de la Torre with a subpoena (the "Subpoena") commanding his testimony in a hearing the Committee set for September 12, 2024 titled "Examining the Bankruptcy of Steward Health Care:  How Management Decisions Have Impacted Patient Care" (the "Hearing").  That Hearing, as it would turn out, was simply a device for the Committee to attack Dr. de la Torre and try to publicly humiliate and condemn him.

4.    More than a week before the Hearing, on September 4, 2024, Dr. de la Torre

5

JA45

conveyed to the Committee in writing, *e.g.*,[1] that he would not be able to provide testimony at the Hearing—where the entire subject matter concerned precisely the events that could potentially expose Dr. de la Torre to criminal liability—because he was invoking his Fifth Amendment rights in the face of a ferocious campaign, by members of the United States Congress and others, to pillory and crucify him as a loathsome criminal.[2]

5.      In response, the Committee wrote back on September 5, 2024 recognizing that Dr. de la Torre had invoked "[t]he Fifth Amendment privilege against self-incrimination" as a reason why "it would be inappropriate to compel Dr. de la Torre to appear before the Committee." But the Committee then "reject[ed] any suggestion that Dr. de la Torre can refuse to appear for testimony before the Committee on this ground," and sought to intimidate and dissuade Dr. de la Torre from standing on his Fifth Amendment rights by threatening him with "criminal penalties" for "[f]ailure to comply with the Committee's subpoena" *unless* he submitted to the Committee's televised spectacle of public degradation and pillorying where he would be forced to refuse repeatedly to answer questions on constitutional grounds, all while the Committee members

---

[1]      Dr. de la Torre also explained that he would be prohibited from providing sworn testimony at the Hearing because Steward has denied authorization for Dr. de la Torre to testify on Steward's behalf; Dr. de la Torre is prohibited by a federal court's order from revealing certain information obtained in Steward's bankruptcy proceeding; and testifying at the Hearing could jeopardize an agreement in principle with Steward's creditors that could help keep the majority of Steward hospitals open, thereby preserving nearly 30,000 jobs while enabling recovery for general unsecured creditors.

[2]      Senator Markey, for instance, promised that Dr. de la Torre's "day of reckoning is going to arrive here on September 12th in the HELP Committee." *See Executive Session of the S. Comm. on Health, Educ., Labor, and Pensions*, 118th Cong. (2024). Senator Sanders, for his part, has vowed to "hold Dr. de la Torre accountable for his financial mismanagement and his greed." *See Examining the Bankruptcy of Steward Health Care: How Management Decisions Have Impacted Patient Care: Hearing before the S. Comm. on Health, Educ., Labor, and Pensions*, 118th Cong. (2024).

JA46

attacked him (including for remaining silent) and solicited vitriolic testimony[3] from other witnesses calling Dr. de la Torre a "health care terrorist[]," advocating for his imprisonment, and labeling him as a "coward." Indeed, the Committee made it abundantly clear that they would put Dr. de la Torre's invocation itself at the heart of their televised circus and paint him as guilty for the sin of remaining silent in the face of these assaults on his character and integrity.

6.     By weaponizing Congress's civil and criminal contempt procedures in response to Dr. de la Torre's invocation of his Fifth Amendment rights under the U.S. Constitution, the Committee has bulldozed over Dr. de la Torre's constitutional rights and has sought to make him pay a steep price for invoking them—and in so doing, the Committee's actions exemplify its blatant and unconstitutional attempts to chill and deter Dr. de la Torre from continuing to stand on his rights.

7.     Although the D.C. Bar Legal Ethics Committee has repeatedly recognized that when a Fifth Amendment privilege is asserted before a congressional committee, "there is no need to test that claim of privilege in public,"[4] the Committee nevertheless held a promise of criminal retribution over Dr. de la Torre's head unless he subjected himself to the Committee's public humiliation in order for him to continue to stand on his constitutional rights, an intimidation tactic that the Senate and its counsel themselves have previously recognized "could serve only an

---

[3]   Other senators and witnesses at the Committee's Hearing have said that they want to make him "answer for the [alleged] harm he's inflicted on our communities[,]" that he is a "health care terrorist[,]" that he should be "put [] in jail because that's where he deserves to be," and that "Dr. de la Torre is a coward." *See id.* (Statements of Edward Markey and witness Michael Charles Echols); Press Release, Senator Edward Markey, Senator Markey Slams Steward CEO, Demands de la Torre Take Accountability for Steward's Failures (Sept. 5, 2024), https://www.markey.senate.gov/news/press-releases/senator-markey-slams-steward-ceo-demands-de-la-torre-take-accountability-for-stewards-failures.
[4]   D.C. Bar Legal Ethics Comm., Op. 358 (2011) (affirming D.C. Bar Legal Ethics Comm., Op. 31 (1977)).

improper purpose of showmanship and d[oes] not perform any legislative or public-informing function."[5]

8.    After Dr. de la Torre, consistent with his invocation of his constitutional rights, did not appear and testify at the Hearing, members of the Committee responded with outrage and spelled out their resolve to sanction Dr. de la Torre for any refusal to testify based on the Fifth Amendment.  For example:

- "It's unfortunate we've got to this point. But if someone shows contempt for the American people by . . . refusing to provide answers, that is contemptible." (Statement of Sen. Bill Cassidy on Sept. 19, 2024).[6]

- "It is essential for our Committee to receive [Dr. de la Torre's] testimony in order to understand the financial downfall of the company . . ." (Statement of Sens. Bernard Sanders and Bill Cassidy on Sept. 19, 2024).[7]

- "We were hopeful that Dr. de la Torre would comply with our bipartisan subpoena . . . to testify to the harm Steward has caused to patients, health care workers, and the communities in which they live." (Statement of Sens. Bernard Sanders and Bill Cassidy on Sept. 12, 2024).[8]

- "The American people deserve to hear directly from Dr. de la Torre about how this disaster unfolded." (Statement of Sen. Ed Markey on Sept. 19, 2024).[9]

---

[5]    *See* SAMUEL DASH, CHIEF COUNSEL: INSIDE THE ERVIN COMMITTEE -- THE UNTOLD STORY OF WATERGATE, 191 (1976).

[6]    *Contempt Resolutions: Executive Session of the S. Comm. on Health, Educ., Labor, and Pensions*, 118th Cong. (2024).

[7]    Press Release, Senator Bernard Sanders, In Historic First, HELP Committee Holds Steward CEO Ralph de la Torre in Civil and Criminal Contempt with Bipartisan Vote (Sept. 19, 2024), https://www.sanders.senate.gov/press-releases/news-in-historic-first-help-committee-holds-steward-ceo-ralph-de-la-torre-in-civil-and-criminal-contempt-with-bipartisan-vote/.

[8]    Press Release, Senator Bernard Sanders, Ranking Member Cassidy, Chair Sanders Announce Committee Vote to Hold Steward Health CEO in Contempt Following Failure to Comply with Congressional Subpoena (Sept. 12, 2024), https://www.help.senate.gov/ranking/newsroom/press/video-ranking-member-cassidy-announces-committee-vote-to-hold-steward-health-ceo-in-contempt-following-failure-to-comply-with-congressional-subpoena.

[9]    Press Release, Senator Edward Markey, Senator Markey Statement on HELP Committee's Unanimous Vote to Hold Steward CEO Dr. Ralph de la Torre in Contempt of Congress (Sept. 19, 2024), https://www.markey.senate.gov/news/press-releases/senator-markey-

9.      Before the Committee proceeded on September 19, 2024 to pass civil and criminal contempt resolutions (collectively referred to herein as the "Contempt Resolutions") against him, Dr. de la Torre, on September 18, 2024, reminded the Committee that "on the advice of counsel, Dr. de la Torre invokes his procedural and substantive rights under the Fifth Amendment of the U.S. Constitution, including the privilege to refrain from testifying at the Committee's Hearing."

10.      Still, the Committee barreled forward to punish Dr. de la Torre for having had the temerity to invoke his inalienable constitutional rights.  After passing the Contempt Resolutions on September 19, 2024, the Committee issued a Contempt Report on September 23, 2024.[10] Therein, the Committee again recognized that "Dr. de la Torre would not testify as commanded by the Subpoena" because he was invoking his "constitutional rights and the on-going bankruptcy proceedings as reasons it would be inappropriate for Dr. de la Torre to appear before the Committee."  But it also stated that the Committee had "overruled the objections raised by Dr. de la Torre's counsel and ordered Dr. de la Torre to appear at the hearing as commanded by the subpoena" because, according to the Committee, "the Fifth Amendment privilege against self-incrimination does not permit witnesses to refuse to appear when summoned to testify before a congressional committee."  Not only is the Committee wrong as a matter of law, the Committee's bottom line was explicit: it was weaponizing Congress's civil and criminal contempt proceedings to punish Dr. de la Torre, not because his invocation of the Fifth Amendment "depriv[ed] the Committee of his testimony on questions pertinent to its inquiry and subject matters under consideration," but because his invocation deprived the Committee of a televised opportunity to ridicule him in front of the American public for standing on his constitutional rights.

---

statement-on-help-committees-unanimous-vote-to-hold-steward-ceo-dr-ralph-de-la-torre-in-contempt-of-congress.

      [10]   S. Rep. No. 118-230 (2024).

11.     All too predictably, the Committee's unconstitutional actions have caused damages and harms calculated to coerce Dr. de la Torre into abandoning his rights under the Fifth Amendment.  Indeed, by virtue of the Committee's unlawful conduct, Dr. de la Torre is now under threat of criminal prosecution merely for asserting his Fifth Amendment rights in response to the Subpoena, and he is no longer able to serve as chairman and CEO of Steward Health Care System, a company that he founded and led for over a decade.  Moreover, based at least in part on the Committee's unlawful conduct, upon information and belief, the Federal Bureau of Investigation recently detained Dr. de la Torre to seize his mobile device and federal prosecutors have reportedly begun compelling Steward board members to appear before a federal grand jury in Boston to obtain testimony that the Committee did not obtain at the Hearing, all to manufacture ostensible support for the Committee's crusade to paint Dr. de la Torre as a criminal.

12.     All told, the Committee has undertaken, and continues to undertake, a fearsome effort to compel Dr. de la Torre to do what he cannot be compelled to do consistent with the Fifth Amendment—namely, to provide testimony that could self-incriminate him for purposes of possible criminal proceedings.  While recognizing Dr. de la Torre's invocation of his Fifth Amendment rights, the Committee is blowing past that invocation and levying devastating punishments because Dr. de la Torre would not answer the Committee's questions in light of his constitutional objections.  Of course, anyone familiar with the Fifth Amendment right against self-incrimination, and certainly members of Congress, should recognize that Dr. de la Torre cannot be so compelled to testify.  Nor can Dr. de la Torre be punished—whether by being tarred and feathered live at a public hearing, by being held in contempt, by being prosecuted by the United States, or by any other means—on the basis that he is continuing to invoke his Fifth Amendment rights.  As matters presently stand, however, Dr. de la Torre is being punished for invoking his

10

Fifth Amendment rights in response to the Subpoena, and is also under continued threat to either surrender his Fifth Amendment rights or else face punishment at the hands of the Committee.

13.     These circumstances are chilling, they are unconstitutional, and they warrant judicial redress.  Accordingly, Dr. de la Torre now respectfully requests a declaratory judgment that he cannot be compelled to comply with the Subpoena, a declaratory judgment that he cannot be punished for asserting his Fifth Amendment rights in response to the Subpoena, an injunction prohibiting the Committee and its legal counsel from enforcing the Subpoena against him, as well as an injunction prohibiting Dr. de la Torre from being further punished for asserting his Fifth Amendment rights in response to the Subpoena.

**JURISDICTION AND VENUE**

14.     This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1331 because this action arises under the Constitution and the laws of the United States.

15.     This Court has personal jurisdiction over the Senate Committee on Health, Education, Labor, and Pensions because it is located in and operates from Washington, D.C. and the Subpoena to Dr. de la Torre issued from the Committee.

16.     This Court has personal jurisdiction over all Defendant Senators because all have Washington, D.C.-based offices and are members of the Committee, which operates from Washington, D.C.

17.     Venue is proper pursuant to 28 U.S.C. § 1391(b)(2) because the District Court for the District of Columbia is the judicial district in which a "substantial part of the events" leading to this action took place.  The District of Columbia is where the Subpoena to Dr. de la Torre was issued and was the place of compliance listed in the Subpoena.

18.     This Court may issue declaratory relief pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201, and Federal Rule of Civil Procedure 57.

JA51

**THE PARTIES**

19.     Plaintiff Dr. Ralph de la Torre, M.D., was the founder, chairman, and chief executive officer of Steward Health Care System, LLC, which he founded in 2010. The Committee issued the Subpoena challenged herein to Dr. de la Torre on July 25, 2024.

20.     Defendant Bernard Sanders is a U.S. Senator for the State of Vermont and he currently serves as the Chairman of the Senate Committee on Health, Education, Labor, and Pensions. The Subpoena challenged herein was issued pursuant to his authority and signed by him. He voted affirmatively on the Committee's Contempt Resolutions on September 19 and September 25, 2024.

21.     Defendant Bill Cassidy is a U.S. Senator for the State of Louisiana and he currently serves as the Ranking Member of the Senate Committee on Health, Education, Labor, and Pensions. He voted affirmatively on the Committee's Contempt Resolutions on September 19 and September 25, 2024.

22.     Defendant Patty Murray is a U.S. Senator for the State of Washington and currently serves as a member of the Senate Committee on Health, Education, Labor, and Pensions. She voted affirmatively on the Committee's Contempt Resolutions on September 19 and September 25, 2024.

23.     Defendant Robert P. Casey, Jr. is a U.S. Senator for the State of Pennsylvania and currently serves as a member of the Senate Committee on Health, Education, Labor, and Pensions. He voted affirmatively on the Committee's Contempt Resolutions on September 19 and September 25, 2024.

24.     Defendant Tammy Baldwin is a U.S. Senator for the State of Wisconsin and currently serves as a member of the Senate Committee on Health, Education, Labor, and Pensions. She voted affirmatively on the Committee's Contempt Resolutions on September 19 and

JA52

September 25, 2024.

25.    Defendant Christopher Murphy is a U.S. Senator for the State of Connecticut and currently serves as a member of the Senate Committee on Health, Education, Labor, and Pensions. He voted affirmatively on the Committee's Contempt Resolutions on September 19 and September 25, 2024.

26.    Defendant Tim Kaine is a U.S. Senator for the State of Virginia and currently serves as a member of the Senate Committee on Health, Education, Labor, and Pensions.  He voted affirmatively on the Committee's Contempt Resolutions on September 19 and September 25, 2024.

27.    Defendant Margaret Wood Hassan is a U.S. Senator for the State of New Hampshire and currently serves as a member of the Senate Committee on Health, Education, Labor, and Pensions.  She voted affirmatively on the Committee's Contempt Resolutions on September 19 and September 25, 2024.

28.    Defendant Tina Smith is a U.S. Senator for the State of Minnesota and currently serves as a member of the Senate Committee on Health, Education, Labor, and Pensions.  She voted affirmatively on the Committee's Contempt Resolutions on September 19 and September 25, 2024.

29.    Defendant Ben Ray Luján is a U.S. Senator for the State of New Mexico and currently serves as a member of the Senate Committee on Health, Education, Labor, and Pensions. He voted affirmatively on the Committee's Contempt Resolutions on September 19 and September 25, 2024.

30.    Defendant John W. Hickenlooper is a U.S. Senator for the State of Colorado and currently serves as a member of the Senate Committee on Health, Education, Labor, and Pensions.

JA53

He voted affirmatively on the Committee's Contempt Resolutions on September 19 and September 25, 2024.

31.    Defendant Edward J. Markey is a U.S. Senator for the State of Massachusetts and currently serves as a member of the Senate Committee on Health, Education, Labor, and Pensions. He voted affirmatively on the Committee's Contempt Resolutions on September 19 and September 25, 2024.

32.    Defendant Susan M. Collins is a U.S. Senator for the State of Maine and currently serves as a member of the Senate Committee on Health, Education, Labor, and Pensions.  She voted affirmatively on the Committee's Contempt Resolutions on September 19 and September 25, 2024.

33.    Defendant Lisa Murkoswki is a U.S. Senator for the State of Alaska and currently serves as a member of the Senate Committee on Health, Education, Labor, and Pensions.  She voted affirmatively on the Committee's Contempt Resolutions on September 19 and September 25, 2024.

34.    Defendant Mike Braun is a U.S. Senator for the State of Indiana and currently serves as a member of the Senate Committee on Health, Education, Labor, and Pensions.  He voted affirmatively on the Committee's Contempt Resolutions on September 19 and September 25, 2024.

35.    Defendant Roger Marshall is a U.S. Senator for the State of Kansas and currently serves as a member of the Senate Committee on Health, Education, Labor, and Pensions.  He voted affirmatively on the Committee's Contempt Resolutions on September 19 and September 25, 2024.

36.    Defendant Mitt Romney is a U.S. Senator for the State of Utah and currently serves

JA54

as a member of the Senate Committee on Health, Education, Labor, and Pensions.  He voted affirmatively on the Committee's Contempt Resolutions on September 19 and September 25, 2024.

37.     Defendant Tommy Tuberville is a U.S. Senator for the State of Alabama and currently serves as a member of the Senate Committee on Health, Education, Labor, and Pensions. He voted affirmatively on the Committee's Contempt Resolutions on September 19 and September 25, 2024.

38.     Defendant Markwayne Mullin is a U.S. Senator for the State of Oklahoma and currently serves as a member of the Senate Committee on Health, Education, Labor, and Pensions. He voted affirmatively on the Committee's Contempt Resolutions on September 19 and September 25, 2024.

39.     Defendant Ted Budd is a U.S. Senator for the State of North Carolina and currently serves as a member of the Senate Committee on Health, Education, Labor, and Pensions.  He voted affirmatively on the Committee's Contempt Resolutions on September 19 and September 25, 2024.

40.     The Senate Committee on Health, Education, Labor, and Pensions is a standing committee of the United States Senate.  Pursuant to Rule XXV of the Standing Rules of the Senate, the Committee has jurisdiction over, among other things, "[m]easures relating to education, labor, health, and public welfare" and "[p]ublic health."

**FACTUAL ALLEGATIONS**

I.   <u>**Dr. de la Torre and Steward Health Care System LLC**</u>

41.     Dr. de la Torre founded Steward in Massachusetts in 2010, as an affiliate of Cerberus Capital Management, L.P. ("Cerberus"), which acquired the non-profit health care system Caritas Christi Health Care.

JA55

42.     At the time of the acquisition, Caritas Christi was in dire straits and at risk of serious loss.  The Massachusetts state attorney general, in approving the Steward transaction in 2010, found it "impracticable, if not impossible, for Caritas to continue to operate as a public charity."[11] Without Steward and Cerberus, more than 13,000 employee pensions would have been at risk, and hospitals likely would have shuttered under Caritas Christi's leadership.  Steward and Cerberus gave Caritas Christi—including its patients, employees, and communities—the cash infusion that it desperately needed.

43.     Steward acquired six hospitals with the Caritas Christi sale in 2010 and began to expand nationwide, determined to bring its value-based care model to patients around the nation. Steward Health Care has served millions of patients and employed thousands of physicians, nurses, and staff.

44.     But Steward, like many other businesses, faced significant financial headwinds as a result of the COVID-19 pandemic.  Steward hospitals endured a sharp decline in elective patient visits in the face of significant cost increases—to say nothing of the physical, emotional, and mental toll on all Steward physicians and staff, including management.  The pandemic had—and has continued to have—a debilitating effect on Steward's revenue.

45.     Steward has faced additional struggles in recent years as well, including a nationwide health care labor shortage and associated rising labor costs, rising fixed costs for equipment and supplies, in addition to severe inflationary pressures.  And because most of Steward's patient service revenue is typically attributed to government-run health care programs, Steward is left with reimbursement rates far lower than that of non-government programs and those

---

[11]  *See* Office of Att'y Gen. Martha Coakley, Statement of the Att'y Gen. as to the Caritas Christi Transaction (Oct. 6, 2010), https://www.mass.gov/files/documents/2016/08/wo/statement-of-the-attorney-general-caritas-christi-transaction.pdf.

received by competing academic medical centers.

46.    On May 6, 2024, Steward filed for Chapter 11 protection under the U.S. Bankruptcy Code. *See In re Steward Health Care System LLC, et al.*, No. 24-90213-CML (S.D. Tex. May 6, 2024).

**II.    The Committee Issues The Subpoena To Dr. de la Torre As Part Of Its Coordinated Campaign To Villainize And Scapegoat Him**

47.    In response to Steward's bankruptcy announcement, members of the Committee have continuously tried to frame Dr. de la Torre as a criminal mastermind who destroyed Steward through avarice and deceit.  Indeed, members of the Committee and other members of Congress have engaged and continue to engage in a coordinated campaign of casting public aspersions and guilt to paint Dr. de la Torre as a villain and criminal, including calling for criminal investigations of him.  For example:

- "What Dr. de la Torre, Cerberus Capital Management and Medical Properties Trust did to Steward-owned hospitals in Massachusetts and across the country is unforgiveable."  (Statement of Sen. Edward Markey on June 11, 2024).[12]

- "Whether in Massachusetts or Malta, Dr. de la Torre used his credentials as a physician and CEO to sell Steward as a health care savior. Instead, he and his corporate enablers in private equity and real estate hollowed out a health system as they lined their pockets. Steward must be investigated, and I hope the company and the corporate executives who facilitated Steward's actions face consequences that reflect the lives, livelihoods, safety, and security that they stole from communities."  (Statement of Sen. Edward Markey on July 11, 2024).[13]

- "Enough is enough. It is time for Dr. de la Torre to get off of his yacht and explain to Congress how much he has gained financially while bankrupting the

---

[12]    Press Release, Senator Elizabeth Warren, Senators Warren, Markey Introduce the Corporate Crimes Against Health Care Act of 2024 (June 11, 2024), https://www.warren.senate.gov/newsroom/press-releases/senators-warren-markey-introduce-the-corporate-crimes-against-health-care-act-of-2024.

[13]    Press Release, Senator Edward Markey, Senator Markey Statement on Federal Investigation into Steward Health Care on Charges of Fraud and Corruption (July 11, 2024), https://www.markey.senate.gov/news/press-releases/senator-markey-statement-on-federal-investigation-into-steward-health-care-on-charges-of-fraud-and-corruption.

JA57

hospitals he manages." (Statement of Sens. Bernard Sanders and Edward Markey on July 18, 2024).[14]

- "Under Dr. de la Torre's leadership, . . . Steward is the subject of a federal investigation over alleged fraud and violations of the Foreign Corrupt Practices Act. In 2022, Steward also settled False Claims Act violations with the U.S. Attorney's Office, alleging that Steward defrauded the U.S. government and the American taxpayer for medical services that they did not provide." (Committee Press Release on July 24, 2024).[15]

- "Dr. de la Torre and his corporate executive enablers at Steward, Cerberus, and Medical Properties Trust pocketed hundreds of millions of dollars and used it to engage in international schemes, spy on corporate rivals, and purchase luxury goods. His consistent refusals to offer basic answers has compounded Steward's actual bankruptcy with moral bankruptcy." (Statement of Sen. Edward Markey on July 25, 2024).[16]

48.    Then, on July 25, 2024, the Committee commenced an investigation ostensibly into "the bankruptcy of Steward Health Care" and issued the Subpoena to Dr. de la Torre, commanding him to appear before the Committee and testify at the Hearing.

49.    By the Committee's own admissions, the Hearing was meant to be a forum where members of the Committee would seemingly "hold Dr. de la Torre accountable" for an alleged "elaborate Ponzi scheme" that "t[ook] over a massive hospital system and then loot[ed] it" for personal wealth, and the Subpoena would ensure that Dr. de la Torre's "day of reckoning [was]

---

[14]    Press Release, Senator Bernard Sanders, Sanders and Markey Joint Statement on Upcoming Vote to Investigate and Subpoena Steward Health Care on Bankruptcy (July 18, 2024), https://www.sanders.senate.gov/press-releases/news-sanders-and-markey-joint-statement-on-upcoming-vote-to-investigate-and-subpoena-steward-health-care-on-bankruptcy/.

[15]    Press Release, Senate HELP Committee, HELP Committee to Hold Bipartisan Vote to Launch Investigation into Bankruptcy of Steward Health Care and Subpoena CEO (July 24, 2024), https://www.help.senate.gov/chair/newsroom/press/media-advisory-help-committee-to-hold-bipartisan-vote-to-launch-investigation-into-bankruptcy-of-steward-health-care-and-subpoena-ceo.

[16]    Press Release, Senator Edward Markey, Senator Markey Votes to Compel Steward CEO Dr. Ralph de la Torre Testimony before HELP Committee (July 25, 2024), https://www.markey.senate.gov/news/press-releases/icymi-senator-markey-votes-to-compel-steward-ceo-dr-ralph-de-la-torre-testimony-before-help-committee.

going to arrive here on September 12th in the HELP Committee" as the Committee saw fit.[17]

50.    In the face of the Committee's and others' relentless public attacks and predetermined claims of criminal misconduct, on September 4, 2024—more than a week before the Hearing—Dr. de la Torre informed the Committee that he could not provide testimony at the Hearing because he was invoking his Fifth Amendment rights.

51.    In its response letter, dated September 5, 2024, the Committee *explicitly recognized* that Dr. de la Torre had invoked "[t]he Fifth Amendment privilege against self-incrimination" as a reason why "it would be inappropriate to compel Dr. de la Torre to appear before the Committee," but nevertheless commanded Dr. de la Torre "to appear for testimony" or face "criminal penalties" for his "[f]ailure to comply with the Committee's subpoena." In so doing, the Committee laid bare its true motives: not to seek answers from Dr. de la Torre, who they understood would provide none, but rather to subject him to public, televised ridicule for exercising his constitutional right to remain silent. The Committee's naked threat to Dr. de la Torre was intended to intimidate him from asserting his Fifth Amendment rights at all, or stand on those rights but appear at the hearing and have his invocation ridiculed and used against him by the Committee and its witnesses. In either circumstance, the Committee violated Dr. de la Torre's constitutional rights by promising to bring civil and criminal contempt proceedings against Dr. de la Torre *unless* he provided sworn testimony at the Committee's Hearing or appeared in person to invoke those rights and have his silence used against him to paint him as a criminal.

52.    Moreover, the Committee's September 5 response made no inquiry into the scope or the basis for Dr. de la Torre's Fifth Amendment invocation, nor did it seek judicial intervention

---

[17]  *Executive Session of the S. Comm. on Health, Educ., Labor, and Pensions*, 118th Cong. (2024)  (Statements of Sens. Bernard Sanders and Edward Markey on July 25, 2024).

to determine whether the invocation was valid.  The Committee also did not seek documents from Dr. de la Torre, nor did the Committee offer a closed hearing where Dr. de la Torre's confidentiality obligations could be honored.  It took no further action in pursuit of the facts or a resolution of Dr. de la Torre's Fifth Amendment invocation aside from threatening criminal punishment if Dr. de la Torre did not submit to the Committee's public shaming for exercising his Fifth Amendment rights.[18]

53.    It then became clear that the Committee never intended to hear the substance of Dr. de la Torre's testimony; indeed, requiring Dr. de la Torre to attend the hearing only to repeat his Fifth Amendment invocation serves no valid legislative purpose to the Committee.  Instead, the Committee hoped to lead the public to infer criminal misconduct—an inference from which Dr. de la Torre should be constitutionally protected—by coercing him to invoke his Fifth Amendment rights in a televised shaming spectacle and remain silent in the face of vitriolic abuse from Senators and witnesses lobbing spiteful and venomous *ad hominem* attacks against him, none of which Dr. de la Torre could refute without abandoning his constitutional rights.[19]

54.    Threatening criminal prosecution unless Dr. de la Torre appeared in person to assert his Fifth Amendment rights was merely a vehicle by which the Committee could publicly humiliate and degrade Dr. de la Torre while he stood silently on his Fifth Amendment privilege.

---

[18]    *See* Press Conference, Senators Edward Markey and Elizabeth Warren (Sept. 5, 2024), https://www.markey.senate.gov/view/ralph-de-la-torre-is-saying-he-wont-comply-with-the-subpoena-to-testify-before-the-senate-help-c ("[I]f he continues to refuse to appear before the Committee, we will not stop until he answers for what he has done or is put behind bars.") (Statement of Sen. Edward Markey on Sept. 5, 2024).

[19]    This, indeed, was the stated goal for Senator Elizabeth Warren, who has been outwardly supportive of the Committee's efforts and said at a September 5, 2024 press conference that, "Congress has questions to ask and if Mr. de la Torre believes the answers will put him at risk for going to jail, he can take the Fifth Amendment **right out in public for everyone to see**." *Id.*

JA60

The Committee sought to vilify Dr. de la Torre in a televised spectacle by grandstanding and soliciting malicious testimony from hostile witnesses, all while Dr. de la Torre would have sat beside them and repeated his Fifth Amendment invocation. Such a spectacle serves no legislative purpose.

55.     It is well established that a witness need not take the witness stand at a trial for the sole purpose of creating a spectacle whereby the public may observe him invoke the Fifth Amendment. The Committee's command that Dr. de la Torre be compelled to do so—under threat of criminal prosecution for failure to comply—was another step in the Committee's unvarnished and unlawful crusade to deter, punish, and publicly humiliate Dr. de la Torre for continuing to invoke his Fifth Amendment rights, and it serves as a glaring example of the Committee's egregious and unlawful departure from the scope of its congressional investigative authority.

### III.    The Senate Continues To Punish Dr. de la Torre For Invoking His Fifth Amendment Rights In Response To The Subpoena

56.     In response to Dr. de la Torre's exercise of his Fifth Amendment rights, on September 12, 2024, the Committee notified Dr. de la Torre via a public announcement that it would pursue two Contempt Resolutions against him: one civil contempt resolution to enforce the Subpoena and compel Dr. de la Torre's sworn testimony despite his invocation, and one criminal contempt resolution seeking to punish Dr. de la Torre for invoking his rights in the first place.

57.     Before the Committee voted on the Contempt Resolutions, however, on September 18, 2024, Dr. de la Torre reiterated his objections to the Committee, reminding the Committee that "on the advice of counsel, Dr. de la Torre invokes his procedural and substantive rights under the Fifth Amendment of the U.S. Constitution, including the privilege to refrain from testifying at the Committee's Hearing."

58.     On September 19, 2024, the Committee passed both Contempt Resolutions. The

JA61

first directs the president of the Senate to "certify the report of the Committee on Health, Education, Labor, and Pensions of the Senate, detailing the refusal of Dr. Ralph de la Torre . . . to appear and testify before the Committee, to the United States Attorney for the District of Columbia, to the end that Dr. de la Torre be proceeded against in the manner and form provided by law." And the second directs the Senate legal counsel to bring "a civil action in the name of the Committee on Health, Education, Labor, and Pensions of the Senate to enforce the subpoena issued by the Committee to Dr. Ralph de la Torre, . . . [and] conduct all related civil contempt proceedings." The Committee ultimately sought praise for holding Dr. de la Torre in contempt of Congress, publicly lauding itself for the "***HELP Committee's*** unanimous vote to hold Steward CEO Dr. Ralph de la Torre in contempt of Congress."[20]

59.     At the Committee meeting to vote on the Contempt Resolutions, there was not a single mention of Dr. de la Torre's invocation of the Fifth Amendment; nor in either Contempt Resolution was there any reference to Dr. de la Torre's invocation. Indeed, both Contempt Resolutions characterize Dr. de la Torre's Fifth Amendment invocation as mere "objections to the compelled testimony" instead of fundamental constitutional protections that would unequivocally prohibit their actions. Then, Defendants unanimously approved the Contempt Resolutions without

---

[20] *See, e.g.*, Press Release, Senator Edward Markey, Senator Markey Statement on HELP Committee's Unanimous Vote to Hold Steward CEO Dr. Ralph de la Torre in Contempt of Congress (Sept. 19, 2024), https://www.markey.senate.gov/news/press-releases/senator-markey-statement-on-help-committees-unanimous-vote-to-hold-steward-ceo-dr-ralph-de-la-torre-in-contempt-of-congress; Susan Morse, *Senate HELP Committee Votes To Hold Steward CEO In Contempt*, HEALTHCARE FINANCE (Sept. 19, 2024), https://www.healthcarefinancenews.com/news/help-committee-votes-hold-steward-ceo-contempt; Susanna Vogel, *Senate Committee Unanimously Votes To Hold Steward CEO In Contempt*, HEALTHCARE DIVE (Sept. 19, 2024), https://www.healthcaredive.com/news/senate-committee-unanimously-votes-to-hold-steward-ceo-in-contempt/727509/; Mark Hagland, *Senate HELP Committee Votes Steward CEO in Criminal Contempt*, HEALTHCARE INNOVATION (Sept. 26, 2024), https://www.hcinnovationgroup.com/policy-value-based-care/article/55142968/senate-help-committee-votes-steward-ceo-in-criminal-contempt.

JA62

any acknowledgement whatsoever of Dr. de la Torre's Fifth Amendment invocation.

60.    The Committee intends to compel Dr. de la Torre to appear and testify pursuant to the Subpoena, via the civil enforcement resolution, and to punish Dr. de la Torre *criminally* for asserting his Fifth Amendment rights, via the criminal resolution.  It is difficult to conceive of a more brazen assault on, and threat to, the rights enshrined in the Fifth Amendment.

61.    On September 23, 2024, Senator Sanders reported S. Res. 837 to the full Senate floor for a vote, which directs the Senate president to refer a criminal contempt proceeding against Dr. de la Torre for prosecution by the U.S. Attorney for the District of Columbia.  Senator Sanders, however, has not yet taken steps to bring the civil enforcement resolution to the Senate floor for consideration, seemingly in violation of HELP Committee Rule 12, which requires the chair "to take or cause to be taken, necessary steps to bring the matter to a vote in the Senate."[21]  Members of the Committee have also made clear that they believe Dr. de la Torre "***remains in violation*** of [the Committee's] subpoena" even after the date of the Hearing had come and gone.[22]

62.    Instead, on September 25, 2024, Senators Sanders, Cassidy, and Markey spoke on the Senate floor in favor of S. Res. 837 only.  Tellingly, none so much as acknowledged Dr. de la Torre's invocation of his Fifth Amendment rights.  The Senators' soliloquies before the full Senate omitted several critical facts from the record: that Dr. de la Torre invoked his Fifth Amendment rights on September 4, 2024; that the Committee acknowledged such an invocation on September 5, 2024; that the Hearing proceeded *despite*, and indeed *as punishment for,* the invocation; that Dr. de la Torre reminded the Committee of his Fifth Amendment invocation after the Hearing; and

---

[21]    *See* Senate Committee on Health, Education, Labor, and Pensions Rules of Procedure, 169 CONG. REC. S295 (DAILY ED. FEB. 9, 2023) (HELP Committee Rule 12).

[22]    @SenMarkey, X (Sept. 18, 2024, 12:13 PM), https://x.com/SenMarkey/status/1836438435848245339 (emphasis added).

JA63

that, *despite* the invocation and subsequent reminder, the Committee nonetheless held Dr. de la Torre in contempt on September 19, 2024. Unanimous Senate approval of the resolution without these critical facts is another act in a series of performances designed exclusively to expose, punish, degrade, pillory, and humiliate Dr. de la Torre, and certainly not to legislate.

63.    S. Res. 837 passed unanimously in the Senate on September 25, 2024 without as much as a passing reference to Dr. de la Torre's constitutional rights. Attempting to punish Dr. de la Torre with a criminal contempt citation for the mere assertion of his Fifth Amendment rights and his unwillingness to bend to the Committee's threats is an abuse of power and a flagrant constitutional violation.

64.    The Committee now seeks the "criminal penalties" that it promised Dr. de la Torre it would. Notably, the Committee has taken no further action in pursuit of the facts regarding "[t]he bankruptcy of Steward Health Care." The Committee's ultimate goal was never to gather the facts, but to publicly shame and punish Dr. de la Torre for exercising his rights. The Constitution prohibits the Committee's assault on Dr. de la Torre's rights under the Fifth Amendment, and this Court must hold Defendants accountable and quash the Subpoena.

## IV.    The Lasting Effects of The Committee's Unlawful Conduct

65.    Dr. de la Torre has suffered immense harm and damage, including reputational damage, as a result of the Committee's unlawful conduct. Because of the Committee's conduct, Dr. de la Torre has been referred to as the "infamous CEO of 'health care terrorists'" (a line elicited directly from the Committee's September 12 Hearing),[23] "a symbol of greed in for-profit health

---

[23]    Beth Mole, *Things Aren't Looking Good For Infamous CEO Of "Health Care Terrorists,"* Ars Technica (Nov. 26, 2024), https://arstechnica.com/health/2024/11/things-arent-looking-good-for-infamous-ceo-of-health-care-terrorists/.

JA64

care,"[24] and is under threat of criminal prosecution merely for asserting his Fifth Amendment rights in response to the Subpoena. Moreover, Dr. de la Torre is no longer able to serve as CEO of the health care company that he had invested tremendously in and led for more than a decade.

66. Resignation was not enough for members of the Committee, however, who have called for additional punishment for Dr. de la Torre's invocation of his constitutional rights. Of his resignation, Defendant Ed Markey stated, "Ralph de la Torre's resignation is not enough, and must be held accountable in the court of law."[25] Similarly, Senator Elizabeth Warren stated, "Ralph is not off the hook yet — the authorities still need to prosecute Ralph's contempt charges and investigate him for other possible crimes he may have committed as Steward's CEO[.]"[26] Citing the Committee's conduct, other members of the public called for Dr. de la Torre to be fired from his position at Steward, proclaiming that "the board should start looking for a new CEO."[27] Using identical verbiage to that of the Committee when it summoned Dr. de la Torre to testify, based on the Committee's conduct, the Boston Globe continues to publicly and baselessly attack Dr. de la Torre, reporting that the Steward board of directors "failed in dramatic fashion when it

---

[24] Mark Arsenault and Jessica Bartlett, *Steward Health Care CEO Ralph de la Torre Will Resign*, THE BOSTON GLOBE (Sept. 28, 2024), https://www.bostonglobe.com/2024/09/28/ business/ralph-de-la-torre-steward-health-care-ceo-resigns/.

[25] Press Release, Senator Edward Markey, Senator Markey Statement on Resignation of Disgraced Steward Health CEO Ralph de la Torre (Sept. 28, 2024), https://www.markey.senate. gov/news/press-releases/senator-markey-statement-on-resignation-of-disgraced-steward-health-ceo-ralph-de-la-torre; *see also* @SenSanders, X (Sept. 29, 2024, 12:29 PM), https://twitter. com/SenSanders/status/1840428759981178904 ("If Dr. de la Torre believes that by resigning as CEO of Steward Health Care he can evade responsibility for looting hospitals from Massachusetts to Arizona, he is sorely mistaken. It's time for him to be held accountable for his outrageous and unacceptable corporate greed.").

[26] *See supra*, note 24.

[27] Chris Serres, Elizabeth Koh, and Brendan McCarthy, *Ralph de la Torre Oversaw Steward's Collapse. Meet The Corporate Board That OK'd Many Of His Decisions.*, THE BOSTON GLOBE (Oct. 5, 2024), https://apps.bostonglobe.com/metro/investigations/spotlight/2024/09/ steward-hospitals/steward-board/.

came to fulfilling its most fundamental duty: ***holding its chief executive accountable***."[28]

## COUNT I
### (Declaratory Relief)
### Subpoena Does Not Advance a Valid Legislative Purpose

67.     Dr. de la Torre realleges and incorporates by reference paragraphs 1 to 66 as if fully set forth herein.

68.     While Congress's investigatory powers are broad, a "congressional subpoena is valid only if it is 'related to, and in furtherance of, a legitimate task of the Congress.'" *Trump v. Mazars USA, LLP*, 591 U.S. 848, 862-63 (2020) (quoting *Watkins v. United States*, 354 U.S. 178, 187 (1957)). "The subpoena must serve a 'valid legislative purpose'; it must 'concern a subject on which legislation could be had.'" *Id.* (alteration adopted).

69.     Congress has "no general authority to expose the private affairs of individuals without justification in terms of the functions of the Congress." *Watkins*, 354 U.S. at 187. Moreover, "Congress may not issue a subpoena for the purpose of 'law enforcement,' because those powers are assigned under our Constitution to the Executive and the Judiciary." *Mazars*, 591 U.S. at 862-63 (quoting *Quinn v. United States*, 349 U.S. 155, 161 (1955)).

70.     Moreover, a valid congressional subpoena will "adequately identif[y] its aims and explain[] why the [subject's] information will advance its consideration of the possible legislation," otherwise it will be "impossible to conclude that a subpoena is designed to advance a valid legislative purpose[.]" *Mazars*, 591 U.S. at 870-71 (2020) (citing *Watkins*, 354 U.S. at 201, 205).

71.     As alleged herein, Dr. de la Torre informed the Committee on September 4, 2024 that, among other things, Dr. de la Torre's constitutional rights, including his rights under the Fifth

---

[28]  *Id.*

26

JA66

Amendment of the U.S. Constitution, protect him from being compelled to provide information that the Committee sought at the Hearing.

72.    The Committee's insistence that Dr. de la Torre "appear and assert the privilege" in public removed any semblance of a valid legislative purpose that the Subpoena may have had in the first place.  Because the Committee understood that Dr. de la Torre would not testify on Fifth Amendment grounds, the Subpoena no longer concerned a subject on which legislation could be had absent resolution of Dr. de la Torre's Fifth Amendment invocation.

73.    The Subpoena ultimately lacks a valid legislative purpose because it was designed and used by the Committee only as a vehicle to punish and expose Dr. de la Torre for the personal aggrandizement of Defendants.  As alleged herein, Defendants have made clear that the purpose of the Subpoena was merely a mechanism to compel his attendance at the Hearing to "hold Dr. de la Torre accountable" and subject him to "a day of reckoning" as the Committee saw fit, both of which are unlawfully punitive law enforcement actions that are beyond the Committee's congressional remit and investigative authority.

74.    Continued attempts to enforce the Subpoena also lack a valid legislative purpose due to Dr. de la Torre's invocation of his Fifth Amendment rights and privileges.  As alleged herein, in his September 4, 2024 letter to the Committee, Dr. de la Torre objected to and invoked constitutional concerns, including under the Fifth Amendment of the U.S. Constitution, with the Committee's Subpoena.  The Committee acknowledged Dr. de la Torre's invocation of his Fifth Amendment rights in a letter dated September 5, 2024, but insisted that Dr. de la Torre would face "criminal penalties" unless he appeared at the Hearing and invoked his constitutional rights on a question by question basis, despite understanding that he would answer no substantive questions concerning the subject matter of the Hearing.  Having him appear merely to assert his Fifth

JA67

Amendment protections against compelled testimony served no legislative purpose nor any public-informing function.

75.     For the avoidance of doubt, on September 18, 2024, before the Committee voted on the Contempt Resolutions, Dr. de la Torre again objected to the Committee's Subpoena and reminded the Committee that he "cannot be permitted to provide sworn testimony at this time, . . . [because] on the advice of counsel, Dr. de la Torre invokes his procedural and substantive rights under the Fifth Amendment of the U.S. Constitution, including the privilege to refrain from testifying at the Committee's Hearing."

76.     The Committee voted on the Contempt Resolutions the next day without adequate recognition or acknowledgement of Dr. de la Torre's Fifth Amendment invocation.  At the time of the Committee's vote on the Contempt Resolutions, the Committee was aware that the Subpoena could not compel Dr. de la Torre to provide any sworn testimony at the Hearing because of, among other things, his Fifth Amendment invocation.  Accordingly, Defendants' continued attempts to compel Dr. de la Torre's testimony and punish him for declining to attend the Hearing have no purpose beyond punishing Dr. de la Torre for standing on his rights, which are not valid legislative purposes.

77.     Moreover, the Committee's Subpoena does not "adequately identif[y] its aims and explain[] why [Dr. de la Torre's] information will advance its consideration of the possible legislation."  *Mazars*, 591 U.S. at 870-71.  Without such information, it is "'impossible' to conclude that a subpoena is designed to advance a valid legislative purpose."  *Id.*  The Committee's only written justification of the Subpoena and the Hearing—*i.e.*, to discuss "the bankruptcy of Steward Health Care"—is belied by the facts alleged herein that show the Subpoena and Hearing were designed to lead the public to infer criminal misconduct by coercing Dr. de la Torre to

JA68

publicly invoke his Fifth Amendment rights in a televised shaming spectacle and remain silent in the face of vitriolic abuse from Senators and witnesses lobbing spiteful and venomous *ad hominem* attacks against him, none of which Dr. de la Torre could refute without abandoning his constitutional rights. As such, all of Defendants' actions to enforce the Subpoena—including purporting to "overrule" Dr. de la Torre's Fifth Amendment invocation, holding the September 12 Hearing, holding the September 19 Executive Session, and ultimately approving the Contempt Resolutions—are invalid *ultra vires* actions that lacked proper congressional authority.

78.     Because Defendants' actions were not within a legitimate legislative sphere, the Speech or Debate Clause is no bar to this Court's jurisdiction. *See Eastland v. U. S. Servicemen's Fund*, 421 U.S. 491, 503 (1975).

**COUNT II**
**(Declaratory and Injunctive Relief)**
**<u>The Committee's Actions Violated Dr. de la Torre's Fifth Amendment Rights</u>**

79.     Dr. de la Torre realleges and incorporates by reference paragraphs 1 to 78 as if fully set forth herein.

80.     The Fifth Amendment's protection that the Government may not compel a witness to give evidence against themselves applies to the Congressional setting. *Watkins*, 354 U.S. at 188. The Bill of Rights is applicable to a Congressional investigation as it is any other government investigation.

81.     In response to the Committee's Hearing on "Examining the Bankruptcy of Steward Health Care" in which Dr. de la Torre would be asked questions regarding his involvement with, connection to, and knowledge of precisely the events that could potentially expose him to criminal liability, Dr. de la Torre invoked these Fifth Amendment constitutional protections in his

JA69

September 4, 2024 letter to the Committee.[29]

82.    Despite such invocation, the Committee held a hearing on September 12, 2024, where Senator Sanders stated on the record that the Committee had "overruled [Dr. de la Torre's Subpoena] objections in their entirety and informed his attorneys that we expected to see Dr. de la Torre today."[30]  Senator Cassidy further stated that "today the chair and I will be asking the committee to report a resolution to authorize civil enforcement and criminal contempt proceedings against Dr. de la Torre requiring compliance with the subpoena."[31]  To date, however, the Committee has not requested information on the basis or scope of Dr. de la Torre's invocation, nor has it challenged the merits of his invocation.

83.    The Committee's leadership publicly made clear that it expected Dr. de la Torre to testify at the hearing despite the Committee's knowledge that Dr. de la Torre *would not* testify at the hearing in reliance on his rights under the Fifth Amendment.  In holding the September 12 Hearing despite this knowledge, Defendants attempted to compel Dr. de la Torre "to be a witness against himself," in direct violation of the Fifth Amendment to the U.S. Constitution.

84.    Defendants failed to acknowledge Dr. de la Torre's valid invocation at its September 19 Executive Session, but continued to vote unanimously to direct the president of the Senate to report S. Res. 837 and its accompanying Report (S. Rep. No. 118-230) to the United States Attorney for the District of Columbia for further proceedings holding Dr. de la Torre in criminal contempt of Congress.

---

[29]  *See* S. Rep. No. 118-230, at 2 (2024) ("On September 4, 2024 . . . Mr. Merton stated that Dr. de la Torre would not testify as commanded by the subpoena. Mr. Merton cited Dr. de la Torre's constitutional rights . . . .").

[30]  *See Examining the Bankruptcy of Steward Health Care: How Management Decisions Have Impacted Patient Care: Hearing before the S. Comm. on Health, Educ., Labor, and Pensions*, 118th Cong. (2024).

[31]  *Id.*

JA70

85.     Because Dr. de la Torre has already invoked his Fifth Amendment privilege, all further attempts at compelling him to testify are merely continued violations of the Fifth Amendment that must be enjoined.

86.     Likewise, Defendants' attempt to compel Dr. de la Torre's sworn testimony through the Subpoena as well as attempt to punish Dr. de la Torre for invoking his Fifth Amendment privileges are both unconstitutional, prohibited by law, and must be enjoined.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Ralph de la Torre respectfully requests that the Court enter judgment in his favor and against Defendants as follows:

a)   Declaring that the Senate Committee on Health, Education, Labor, and Pensions' Subpoena to Dr. de la Torre issued July 25, 2024 and all subsequent actions related to enforcement of the Subpoena are invalid as *ultra vires* and unconstitutional, and therefore unenforceable.

b)   Declaring that Dr. de la Torre properly invoked his Fifth Amendment rights in response to the Senate Committee on Health, Education, Labor, and Pensions' Subpoena to Dr. de la Torre issued July 25, 2024.

c)   Declaring that the vote of the Committee on September 19, 2024 approving the Contempt Resolutions as well as subsequently presenting S. Res. 837 for a full Senate vote were violations of Dr. de la Torre's Fifth Amendment rights.

d)   Entering an Order quashing the Subpoena.

e)   Enjoining the Senate Committee on Health, Education, Labor, and Pensions and any of its Members or agents—to include the Senate legal counsel—

JA71

from attempting to civilly enforce the July 25, 2024 Subpoena to Dr. de la Torre.

f)  Enjoining the Senate Committee on Health, Education, Labor, and Pensions and any of its Members or agents from causing Dr. de la Torre to suffer from additional punishment for invoking his Fifth Amendment rights in response to the Senate Committee on Health, Education, Labor, and Pensions' Subpoena to Dr. de la Torre issued July 25, 2024.

g)  With any such other and further relief as the Court deems proper.

Dated: December 10, 2024

Respectfully submitted,

By: */s/ William A. Burck*
William A. Burck (D.C. Bar No. 979677)
Alexander J. Merton (D.C. Bar No. 1029439)
    (*pro hac vice*)
Kaylee A. Otterbacher (D.C. Bar No. 90018061)
    (*pro hac vice*)
QUINN EMANUEL URQUHART & SULLIVAN, LLP
1300 I Street NW, Suite 900
Washington, District of Columbia 20005-3314
(202) 538-8000
williamburck@quinnemanuel.com
ajmerton@quinnemanuel.com
kayleeotterbacher@quinnemanuel.com

*Counsel to Plaintiff Dr. Ralph de la Torre*

32

JA72

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

_____

DR. RALPH DE LA TORRE, M.D.,⁣ )
)
Plaintiff,⁣ )
)
v.⁣ )⁣ Civil Action No. 1:24-cv-02776-TNM
)
BERNARD SANDERS, in his capacity as )
Chairman of the Committee on Health, Education, )
Labor, and Pensions of the United States Senate, )
*et al.*,⁣ )
)
Defendants.⁣ )
_____ )

**DEFENDANTS' MOTION TO DISMISS AMENDED COMPLAINT**

Defendants U.S. Senate Committee on Health, Education, Labor, and Pensions, Chairman

Bernard Sanders, Ranking Member Bill Cassidy, and 18 other Members of the Committee –

Senators Patty Murray, Robert P. Casey, Jr., Tammy Baldwin, Christopher Murphy, Tim Kaine,

Margaret Wood Hassan, Tina Smith, Ben Ray Lujan, John W. Hickenlooper, Edward J. Markey,

Susan M. Collins, Lisa Murkowski, Mike Braun, Roger Marshall, Mitt Romney, Tommy

Tuberville, Markwayne Mullin, and Ted Budd – through undersigned counsel, hereby

respectfully move the Court, pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6),

to dismiss plaintiff's amended complaint for lack of jurisdiction and failure to state a claim upon

which relief can be granted.  In support of the motion, defendants respectfully refer the Court to

the accompanying Memorandum of Points and Authorities.

Respectfully submitted,

/s/ Morgan J. Frankel
Morgan J. Frankel, Bar #342022
Senate Legal Counsel

JA73

Patricia Mack Bryan, Bar #335463
Deputy Senate Legal Counsel

Thomas E. Caballero
Senior Assistant Senate Legal Counsel

Vivian M. Rivera
Assistant Senate Legal Counsel

Office of Senate Legal Counsel
642 Hart Senate Office Building
Washington, D.C. 20510-7250
(202) 224-4435 (tel), (202) 224-3391 (fax)

Dated: December 23, 2024            Attorneys for Defendants

# Exhibit A

Memorandum of Points and Authorities in Support of
Defendant's Motion to Dismiss Amended Complaint

*Dr. de la Torre v. Sanders*, *et al.*, No. 1:24-cv-02776-TNM

# Calendar No. 522

| 118TH CONGRESS<br>*2d Session* | SENATE | REPORT<br>118–230 |
|---|---|---|

## PROCEEDING AGAINST DR. RALPH DE LA TORRE FOR CONTEMPT OF THE SENATE

―――――

SEPTEMBER 23, 2024.—Ordered to be printed

―――――

Mr. SANDERS, from the Committee on Health, Education, Labor, and Pensions, submitted the following

## R E P O R T

[To accompany S. Res. 837]

The Committee on Health, Education, Labor, and Pensions reports favorably an original resolution (S. Res. 837) authorizing the President of the Senate to certify the report of the Senate regarding the refusal of Dr. Ralph de la Torre to appear and testify before the committee, and recommends that the resolution do pass.

The Committee on Health, Education, Labor, and Pensions (Committee), as authorized by the U.S. Senate by Senate Rule XXVI(1), caused to be issued a subpoena *ad testificandum* to Dr. Ralph de la Torre. The said subpoena directed Dr. de la Torre to be and appear before the Committee Thursday, September 12, 2024, at 10 a.m. at their committee room, room 562, Dirksen Senate Office Building, Washington, D.C., then and there to testify relative to the subject matters under consideration by said Committee.

The said subpoena was issued July 25, 2024, in words and figures as follows:

UNITED STATES OF AMERICA
CONGRESS OF THE UNITED STATES
TO DR. RALPH DE LA TORRE, CHAIRMAN AND CHIEF EXECUTIVE OFFICER C/O STEWARD HEALTH CARE SYSTEM,
*1900 N Pearl St Suite 2400, Dallas, TX 75201,*
Greeting:
Pursuant to lawful authority, YOU ARE HEREBY COMMANDED to appear before the Committee on Health, Education, Labor, and Pensions of the Senate of the United States, on September 12, 2024, at 10:00 o'clock a.m., at their committee room 562 Dirksen Senate Office Building, then and there to testify what you

49–008

2

may know relative to the subject matters under consideration by said committee.

The bankruptcy of Steward Health Care.

Hereof fail not, as you will answer your default under the pains and penalties in such cases made and provided.

To Committee staff or the U.S. Marshals Service to serve and return.

Given under my hand, by the order of the committee, this 25th day of July, 2024.

BERNARD SANDERS,
*Chairman, Committee on Health, Education, Labor, and Pensions*

After Dr. de la Torre declined the Committee's request to testify voluntarily at a hearing before the Committee, the Committee authorized the Chairman to issue the above subpoena to Dr. de la Torre. This subpoena was duly served on July 25, 2024 by the Oversight Director for the Majority staff of the Committee, Greg Carter, via electronic mail to Dr. de la Torre, through his counsel. The email to Dr. de la Torre's counsel and the attached subpoena are annexed hereto as Appendix I and are expressly made a part of this report.

On the same day, July 25, 2024, counsel for Dr. de la Torre, William Burck, acknowledged service of the subpoena by electronic mail. The proof of receipt from Mr. Burck is annexed hereto as Appendix II and is expressly made a part of this report.

On September 4, 2024, counsel for Dr. de la Torre, Alexander J. Merton, submitted a letter by electronic mail to Chairman Bernard Sanders. In his letter, Mr. Merton stated that Dr. de la Torre would not testify as commanded by the subpoena. Mr. Merton cited Dr. de la Torre's constitutional rights and the on-going bankruptcy proceedings as reasons it would be inappropriate for Dr. de la Torre to appear before the Committee. The September 4, 2024 letter from Mr. Merton is annexed hereto as Appendix III and is expressly made a part of this report.

On September 5, 2024, Chairman Sanders and Ranking Member Bill Cassidy overruled the objections raised by Dr. de la Torre's counsel and ordered Dr. de la Torre to appear at the hearing as commanded by the subpoena. The Chairman and the Ranking Member explained that the Fifth Amendment privilege against self-incrimination does not permit witnesses to refuse to appear when summoned to testify before a congressional committee. Rather, witnesses must appear and assert that constitutional privilege in declining to answer specific questions put to them. The Chairman and the Ranking Member also explained that the other objections Dr. de la Torre raised are not cognizable legal grounds for refusing to appear at the Committee's hearing and answer pertinent questions based on personal, first-hand knowledge. The September 5, 2024 letter to Mr. Merton is annexed hereto as Appendix IV and is expressly made a part of this report.

Thereafter, Dr. de la Torre failed and refused to comply with the said subpoena and failed and refused to appear before the Committee at the designated time and place as a witness on Thursday, September 12, 2024, thereby depriving the Committee of his testimony on questions pertinent to its inquiry and subject matters under consideration.

JA77

3

A record of the hearing on September 12, 2024, at which Dr. de la Torre failed and refused to appear, entitled "Examining the Bankruptcy of Steward Health Care: How Management Decisions Have Impacted Patient Care," is annexed hereto as Appendix V and is expressly made a part of this report.

The Committee considered the original resolution, S. Res. 837, Authorizing the President of the Senate to certify the report of the Committee on Health, Education, Labor, and Pensions of the Senate regarding the refusal of Dr. Ralph de la Torre to appear and testify before the Committee, at a business meeting on September 19, 2024. With a majority of the Members of the Committee present, constituting a quorum under Committee Rules for the purpose of reporting a measure or matter, the Committee ordered the original resolution favorably reported by a roll call vote of 20 in favor and none opposed. Members voting in the affirmative were: Bernard Sanders (I–VT), Patty Murray (D–WA), Christopher Murphy (D–CT), Tim Kaine (D–VA), Maggie Hassan (D–NH), Tina Smith (D–MN), Ben Ray Luján (D–NM), John Hickenlooper (D–CO), Edward J. Markey (D–MA), Bill Cassidy (R–LA), and Markwayne Mullin (R–OK). For the record only, Senators Robert P. Casey, Jr. (D–PA), Tammy Baldwin (D–WI), Susan Collins (R–ME), Lisa Murkowski (R–AK), Mike Braun (R–IN), Roger Marshall (R–KS), Mitt Romney (R–UT), Tommy Tuberville (R–AL), and Ted Budd (R–NC) voted "aye" by proxy, and Senator Rand Paul (R–KY) did not vote by proxy. There were no votes cast in the negative.

JA79

**APPENDIX I**

(5)

6

| | |
|---|---|
| **From:** | Carter, Greg (HELP Committee) |
| **To:** | "William Burck"; Anthony Bongiorno; AJ Merton |
| **Cc:** | Gunnels, Warren (HELP Committee); Lincoln, Amanda (HELP Committee); Soto, Caitlin (HELP Committee); Shek, Chung (HELP Committee) |
| **Subject:** | Senate HELP Committee Subpoena for Dr. de la Torre |
| **Date:** | Thursday, July 25, 2024 11:30:00 AM |
| **Attachments:** | HELP Committee Subpoena for Ralph de la Torre, Steward Health Care SIGNED.pdf |
| **Importance:** | High |

Good morning:

The Senate Committee on Health, Education, Labor, and Pensions has authorized Chairman Sanders to issue a subpoena to Dr. Ralph de la Torre for his testimony at a hearing on September 12, 2024 at 10:00 AM. That subpoena is attached here.

Please acknowledge acceptance of service on Dr. de la Torre's behalf by close of business today.

Thank you,
Greg

**Greg Carter**
Oversight Director
U.S. Senate Health, Education, Labor, and Pensions Committee
Bernie Sanders, Chair

7

# UNITED STATES OF AMERICA

## Congress of the United States

---

*To* Dr. Ralph de la Torre, Chairman and Chief Executive Officer

c/o Steward Health Care System, 1900 N Pearl St Suite 2400

Dallas, TX 75201 _____, *Greeting:*

**Pursuant** *to lawful authority,* YOU ARE HEREBY COMMANDED *to appear*

*before the* _____ *Committee on* Health, Education, Labor, and Pensions

*of the Senate of the United States, on* September 12 _____, 20 24 ,

*at* 10:00 _____ *o'clock* a. *m., at their committee room* 562 Dirksen

Senate Office Building _____ , *then and there to*

*testify what you may know relative to the subject matters under consideration by*

*said committee.*

The bankruptcy of Steward Health Care

_____

_____

_____

_____

**Hereof fail not,** *as you will answer your default under the pains and penalties*

*in such cases made and provided.*

*To* Committee staff or the U.S. Marshals Service _____

*to serve and return.*

**Given** *under my hand, by order of the committee, this*

25th *day of* July _____ , 20 24 .

*Chairman, Committee on* Health, Education, Labor, and Pensions

GPO: 1999  61-016 (mac)

JA82

**APPENDIX II**

(9)

10

| | |
|---|---|
| **From:** | William Burck |
| **To:** | Carter, Greg (HELP Committee) |
| **Cc:** | Anthony Bongiorno; AJ Merton; Gunnels, Warren (HELP Committee); Lincoln, Amanda (HELP Committee); Soto, Caitlin (HELP Committee); Shek, Chung (HELP Committee) |
| **Subject:** | Re: Senate HELP Committee Subpoena for Dr. de la Torre |
| **Date:** | Thursday, July 25, 2024 12:43:36 PM |

We acknowledge acceptance of service.
Sent from my iPhone

> On Jul 25, 2024, at 11:32 AM, Carter, Greg (HELP Committee)
> <Greg_Carter@help.senate.gov> wrote:

> **[EXTERNAL EMAIL from greg_carter@help.senate.gov]**

> Good morning:
> The Senate Committee on Health, Education, Labor, and Pensions has authorized
> Chairman Sanders to issue a subpoena to Dr. Ralph de la Torre for his testimony at a
> hearing on September 12, 2024 at 10:00 AM. That subpoena is attached here.

> Please acknowledge acceptance of service on Dr. de la Torre's behalf by close of
> business today.

> Thank you,
> Greg

> **Greg Carter**
> Oversight Director
> U.S. Senate Health, Education, Labor, and Pensions Committee
> Bernie Sanders, Chair

> <HELP Committee Subpoena for Ralph de la Torre, Steward Health Care
> SIGNED.pdf>

**APPENDIX III**

(11)

12

**quinn emanuel** trial lawyers | washington, dc

1300 I Street NW, Suite 900, Washington, District of Columbia 20005-3314 | TEL (202) 538-8000 FAX (202) 538-8100

WRITER'S EMAIL ADDRESS
ajmerton@quinnemanuel.com

September 4, 2024

<u>VIA E-MAIL</u>

The Honorable Bernie Sanders, *Chairman*
Committee on Health, Education, Labor, and Pensions
United States Senate
428 Dirksen Senate Office Building
Washington, DC 20510

Re:    <u>Senate HELP Committee Subpoena to Dr. Ralph de la Torre</u>

Dear Senator Sanders,

       This firm represents Dr. Ralph de la Torre, and we write regarding the Senate Health, Education, Labor, and Pensions Committee's (the "Committee") July 25, 2024 subpoena seeking testimony from our client, in his capacity as Chairman and CEO of Steward Health Care System LLC ("Steward"), on matters related to the "bankruptcy of Steward Health Care" at a hearing the Committee has set for September 12, 2024 (the "Subpoena").[1]  As explained in detail below, recent developments will necessitate that Dr. de la Torre's testimony be postponed.

       As you know, the Committee originally sought testimony from Dr. de la Torre, in his capacity as Chairman and Chief Executive Officer of Steward, at a July 30, 2024 hearing entitled: *Examining the Bankruptcy of Steward Health Care: How Management Decisions Have Impacted Patient Care*.[2]  Dr. de la Torre declined the Committee's invitation to participate at this hearing because it would be inappropriate for him to testify on matters related to Steward's bankruptcy while those proceedings remain live and ongoing in U.S. Bankruptcy Court.  Rather than afford the time necessary to administer Steward's reorganization case, however, on July 24, 2024, the Committee issued the Subpoena now seeking to compel Dr. de la Torre's testimony.

_____

[1]   *See* Attachment A, *HELP Committee's Subpoena to Dr. de la Torre*, dated July 25, 2024.
[2]   *See* Attachment B, Letter from Sen. Bernie Sanders and Sen. Bill Cassidy to Dr. Ralph de la Torre, dated June 25, 2024 ("We are writing to formally invite you to testify at the hearing *in your capacity as Chairman and Chief Executive Officer* . . . ." (emphasis added)).  The Committee's Subpoena was also issued to Dr. de la Torre in his official capacity.  *See* Attachment A.

**quinn emanuel urquhart & sullivan, llp**
ABU DHABI | ATLANTA | AUSTIN | BEIJING | BERLIN | BOSTON | BRUSSELS | CHICAGO | DALLAS | DOHA | HAMBURG | HONG KONG | HOUSTON | LONDON |
LOS ANGELES | MANNHEIM | MIAMI | MUNICH | NEUILLY-LA DÉFENSE | NEW YORK | PARIS | PERTH | RIYADH | SALT LAKE CITY | SAN FRANCISCO |
SEATTLE | SHANGHAI | SILICON VALLEY | SINGAPORE | STUTTGART | SYDNEY | TOKYO | WASHINGTON, DC | WILMINGTON | ZURICH

13

On August 28, 2024, Steward prohibited Dr. de la Torre from speaking on its behalf regarding any "bankruptcy-related issues" because those matters had already been delegated exclusively to an independent sub-committee of Steward's board of managers established on December 19, 2023.[3]  As Steward's missive explains, Dr. de la Torre is prohibited from testifying about anything within the sub-committee's purview, including "topics related to the Company's debt obligations, potential claims or causes of action, chapter 11 sale transactions, chapter 11 financing transactions, and/or similar transactions and related matters."[4]  All of Dr. de la Torre's personal knowledge regarding the Committee's inquiry into Steward's bankruptcy is derived from his role as Steward's CEO, but as Steward's admonishment makes clear: Dr. de la Torre "is not involved in directing or overseeing any part of the [i]nvestigation [of potential claims the Company might have], the Company's strategic transaction process, or the administration of the Company's chapter 11 cases," and thus it would be "inappropriate for him to testify on behalf of the Company on the matters set forth above on which he lacks authority, involvement, or personal knowledge"[5] outside of his role as Steward's CEO.

Separately, consistent with our prior objections, allowing for the unfettered administration of Steward's bankruptcy proceedings is the best way to achieve the Committee's stated goal of ensuring continuous care for the communities that Steward serves.  Indeed, on August 30, 2024, Steward announced an agreement in principle with creditors that "establish[es] a path for keeping the majority of Steward hospitals open, provides stability for its valued workforce by retaining nearly 30,000 jobs and a potential recovery for general unsecured creditors."[6]  While Dr. de la Torre is pleased that existing stakeholders recognize (as he always has) the importance and value of Steward, Steward's agreement with its creditors is not final until all documentation can be completed and approved by the U.S. Bankruptcy Court.  Given the shared goals of the Committee and Dr. de la Torre of supporting continuity of patient care, saving jobs for Steward's hospital staff, and providing an avenue for recovery for general unsecured creditors, Dr. de la Torre needs to respect the ongoing reorganization and settlement effort by remaining silent regarding the reasons for Steward's bankruptcy, particularly because a federal court order prohibits him from discussing anything exchanged in a mediation effort that led to the recently announced agreement in principle.[7]

Dr. de la Torre's wish has always been to create a hospital system that would serve communities in need, and for the reasons set forth above, a successful financial reorganization of Steward is currently the most promising avenue to achieve this goal.  Unfortunately, while Dr. de la Torre has continued to fight for Steward hospitals and the patients and communities they serve, members of this Committee continue to cast aspersions on Dr. de la Torre and appear determined

---

[3]  *See* Attachment C, Letter from Counsel for Steward Health Care System LLC to Counsel for Dr. de la Torre, dated August 28, 2024.

[4]  *See id.*

[5]  *See id.*

[6]  Press Release, Steward Health Care, *Steward Health Care and Medical Properties Trust Reach Settlement Agreement in Principle, Allowing for Steward-Operated Hospitals to Be Transitioned to New Ownership* (August 30, 2024), available at https://www.steward.org/newsroom/2024-08-30/steward-health-care-and-medical-properties-trust-reach-settlement-agreement.

[7]  *See* Attachment D, Order Regarding Mediation, *In re Steward Health Care System LLC, et al.*, No. 24-90213 (S.D. Tex. June 11, 2024), ECF No. 829 at ¶ 12.

2

JA88

14

to turn the hearing into a pseudo-criminal proceeding in which they use the time, not to gather facts, but to convict Dr. de la Torre in the eyes of public opinion. Indeed, there have been calls for criminal investigations of Dr. de la Torre by members of this Committee, ascribing guilt to him without a factual basis for doing so.[8] It is not within this Committee's purview to make predeterminations of alleged criminal misconduct under the auspices of an examination into Steward's bankruptcy proceedings, and the fact that its Members have already done so smacks of a veiled attempt to sidestep Dr. de la Torre's constitutional rights by seeking sworn testimony on matters for which the Committee has pre-determined his guilt. Dr. de la Torre's testimony before the Committee under these circumstances would be wholly inappropriate.

Consequently, for the various reasons set forth above, Dr. de la Torre will not participate in the Committee's September 12, 2024 hearing, as doing otherwise may run afoul of the federal court order prohibiting him from discussing the above-referenced mediation efforts, and would be inconsistent with the bankruptcy court proceedings, the best interests of Steward itself as reflected in its admonishment, and Dr. de la Torre's core constitutional rights.

Dr. de la Torre has consistently fought for Steward hospitals and the communities that they serve, and he continues to do so. If the Committee shares this aim of ensuring continuity of care for patients, hospital employees, and communities, it would reschedule its hearing for a more appropriate date after the conclusion of Steward's bankruptcy proceedings.

Sincerely,

Alexander J. Merton

cc:    Warren Gunnels (Staff Director, Senate HELP Committee)
       Amanda Lincoln (Republican Staff Director, Senate HELP Committee)
       Greg Carter (Oversight Director, Senate HELP Committee)
       Caitlin Soto (Chief Counsel, Senate HELP Committee)
       Chung Shek (Chief Clerk, Senate HELP Committee)

---

[8]  *See, e.g., Executive Session of the Senate Health, Education, Labor, and Pensions Committee,* 118th Cong. (July 25, 2024) ("As a result of Dr. de la Torre's elaborate Ponzi scheme, Steward Health Care . . . [was] forced to declare bankruptcy . . . ." (statement of Sen. Bernie Sanders)); *id.* ("And not satisfied with going from just the six catholic hospitals in Massachusetts . . . [Dr. de la Torre] then went international to Malta to take over their system as well, where he is now being investigated for the very same irresponsible conduct that our committee is investigating here in the United States." (statement of Sen. Ed Markey)); *id.* ("In 2018, Steward entered into a public-private partnership with the country of Malta to run a number of hospitals in Malta. The deal is now under investigation by the Department of Justice over allegations of fraud and corruption." (statement of Sen. Bill Cassidy)); *see also* Press Release, Sen. Ed Markey, *Senator Markey Statement on Federal Investigation into Steward Health Care on Charges of Fraud and Corruption* (July 11, 2024) ("Steward must be investigated, and I hope the company and the corporate executives who facilitated Steward's actions face consequences that reflect the lives, livelihoods, safety, and security that they stole from communities."); Ross Cristantiello, *Healey Supports Federal Investigation into Steward Health Care's de la Torre,* BOSTON.COM (August 9, 2024), available at https://www.boston.com/news/local-news/2024/08/09/healey-supports-federal-investigation-into-steward-health-cares-de-la-torre/.

3

15

ATTACHMENT A

# UNITED STATES OF AMERICA

### Congress of the United States

---

*To* Dr. Ralph de la Torre, Chairman and Chief Executive Officer

c/o Steward Health Care System, 1900 N Pearl St Suite 2400

Dallas, TX 75201 _____, *Greeting:*

**Pursuant** *to lawful authority,* YOU ARE HEREBY COMMANDED *to appear*

*before the* _____ *Committee on* Health, Education, Labor, and Pensions

*of the Senate of the United States, on* September 12 _____ , 20 24 ,

*at* 10:00 _____ *o'clock* a. *m., at their committee room* 562 Dirksen

Senate Office Building _____ , *then and there to*

*testify what you may know relative to the subject matters under consideration by*

*said committee.*

The bankruptcy of Steward Health Care

_____

_____

_____

**Hereof fail not,** *as you will answer your default under the pains and penalties*

*in such cases made and provided.*

*To* Committee staff or the U.S. Marshals Service

*to serve and return.*

**Given** *under my hand, by order of the committee, this*

25th *day of* July _____ , 20 24 .

_____

*Chairman, Committee on* Health, Education, Labor, and Pensions

GPO 1979  16-018 (rev)

16

**ATTACHMENT B**

BERNARD SANDERS, VERMONT, CHAIR

PATTY MURRAY, WASHINGTON
ROBERT P. CASEY, JR., PENNSYLVANIA
TAMMY BALDWIN, WISCONSIN
CHRISTOPHER S. MURPHY, CONNECTICUT
TIM KAINE, VIRGINIA
MARGARET WOOD HASSAN, NEW HAMPSHIRE
TINA SMITH, MINNESOTA
BEN RAY LUJÁN, NEW MEXICO
JOHN HICKENLOOPER, COLORADO
EDWARD MARKEY, MASSACHUSETTS

BILL CASSIDY, LOUISIANA
RAND PAUL, KENTUCKY
SUSAN M. COLLINS, MAINE
LISA MURKOWSKI, ALASKA
MIKE BRAUN, INDIANA
ROGER MARSHALL, KANSAS
BRITT ROMNEY, UTAH
TOMMY TUBERVILLE, ALABAMA
MARKWAYNE MULLIN, OKLAHOMA
TED BUDD, NORTH CAROLINA

WARREN DANIELS, MAJORITY STAFF DIRECTOR
AMANDA LINCOLN, REPUBLICAN STAFF DIRECTOR

www.help.senate.gov

## United States Senate

COMMITTEE ON HEALTH, EDUCATION, LABOR,
AND PENSIONS

WASHINGTON, DC 20510–6300

June 25, 2024

Ralph de la Torre, MD
Chairman and Chief Executive Officer
Steward Health Care System LLC
1900 N Pearl Street
Suite 2400
Dallas, TX 75201

Dr. de la Torre:

We write to invite you to testify on July 30, 2024, before the U.S. Senate Committee on Health, Education, Labor, and Pensions at a hearing entitled, Examining the Bankruptcy of Steward Health Care: How Management Decisions Have Impacted Patient Care. The hearing will begin at 10:00AM EDT in room 562 of the Dirksen Senate Office Building.

As you know, Steward operates 30 hospitals across eight states. The communities surrounding each of these hospitals now face unacceptable uncertainty regarding their access to health care in light of Steward's bankruptcy filing on May 6. The hearing will examine the management decisions of Steward Health Care (Steward), how those decisions led the hospital system to file for bankruptcy, and the impact those decisions have had on patient care, health care workers, and the hospitals it operates.

You have been involved in Steward since Cerberus Capital Management, a private equity firm, acquired the hospitals in 2010. We are writing to formally invite you to testify at the hearing in your capacity as Chairman and Chief Executive Officer so that the Committee can better understand the investment and financial decisions that led to the bankruptcy of Steward, and its plan to ensure continuity of care in the communities in which it operates.

The HELP Committee has jurisdiction over issues related to health care delivery. Please submit a written statement of any length prior to the hearing for inclusion in the hearing record. Committee rules require witnesses to submit testimony at least 48 hours in advance of the hearing. At the hearing, you will be given five minutes to summarize your written testimony. Each Senator will then have five minutes to ask questions of witnesses.

In order to accommodate Committee members and the press, please arrange to submit a one paragraph biographical profile, your written testimony, and a one-page summary of your testimony by electronic mail to Chung Shek (Chung_Shek@help.senate.gov) at least 48 hours

17

prior to the hearing.

We look forward to seeing you on Tuesday, July 30. Your assistance is greatly appreciated.

Sincerely,


Bernard Sanders
Chairman
Senate Committee on Health,
Education, Labor, and Pensions

Bill Cassidy, M.D.
Ranking Member
Senate Committee on Health,
Education, Labor, and Pensions

JA92

18

ATTACHMENT C

## Weil, Gotshal & Manges LLP

BY E-MAIL

767 Fifth Avenue
New York, NY 10153-0119
+1 212 310 8000 tel
+1 212 310 8007 fax

David J. Lender
+1 (212) 310-8153
david.lender@weil.com

August 28, 2024

William Burck
1300 I Street NW, Suite 900
Washington, D.C. 20005
Quinn Emanuel Urquhart & Sullivan, LLP
williamburck@quinnemanuel.com

Alexander Merton
1300 I Street NW, Suite 900
Washington, D.C. 20005
Quinn Emanuel Urquhart & Sullivan, LLP
ajmerton@quinnemanuel.com

Re:  In re: Steward Health Care System LLC, et al. (24-90213)

Mr. Burck and Mr. Merton:

We understand that your client, Dr. Ralph de la Torre, will testify before Congress on September 12, 2024, in connection with the management of Steward-affiliated hospital system facilities. As you know, the board of managers of Steward Health Care Holdings LLC established the transformation committee (the "**Transformation Committee**") on December 19, 2023. The Transformation Committee has been delegated exclusive authority with respect to all bankruptcy-related issues and all strategic and financial transactions available to Steward Health Care System LLC and its debtor affiliates in the above-captioned chapter 11 cases (collectively, the "**Company**"). Further, an independent sub-committee of the Transformation Committee comprised of independent managers, William Transier and Alan Carr, (the "**Investigation Sub-Committee**") has been delegated with the sole authority to conduct an independent investigation focused on identifying and assessing claims available to the Company (the "**Investigation**"). This Investigation commenced three months ago and is ongoing. As you also know, Dr. Ralph de la Torre is not involved in directing or overseeing any part of the Investigation, the Company's strategic transaction process, or the administration of the Company's chapter 11 cases. He is not a member of the Transformation Committee or the Investigation Sub-Committee, and he is not privy to the findings of the Investigation or its status.

Because Dr. Ralph de la Torre is not involved with the Transformation Committee and Investigation Sub-Committee, nor privy to the findings of the Investigation, he has no authority to speak

19

August 28, 2024                                           **Weil, Gotshal & Manges LLP**
Page 2

on behalf of the Company about the Investigation or any other areas under the purview of the Transformation Committee or the Investigation Sub-Committee. This prohibition includes, without limitation, topics related to the Company's debt obligations, potential claims or causes of action, chapter 11 sale transactions, chapter 11 financing transactions, and/or similar transactions and related matters.

We ask that you advise your client that it is inappropriate for him to testify on behalf of the Company on the matters set forth above on which he lacks authority, involvement, or personal knowledge, including specifically about the Investigation or any other areas under the purview of the Transformation Committee or Investigation Sub-Committee.

To the extent Dr. Ralph de la Torre is asked about any of the above-referenced matters, he should make clear that he has no authority, involvement, or personal knowledge on those matters and is not authorized to speak for or represent the views of the Company.

For the avoidance of doubt, nothing in this letter constitutes a waiver of any of the Company's rights or remedies, all of which are expressly reserved, including using Dr. Ralph de la Torre's testimony for purposes of the Investigation to identify any additional claims the Company may have.

Sincerely,

David J. Lender

cc: Anthony Bongiorno
    Ray Schrock

20

ATTACHMENT D

United States Bankruptcy Court
Southern District of Texas
**ENTERED**
June 13, 2024
Nathan Ochsner, Clerk

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | § | |
|---|---|---|
| In re: | § | **Chapter 11** |
| | § | |
| **STEWARD HEALTH CARE SYSTEM** | § | **Case No. 24-90213 (CML)** |
| **LLC,** *et al.,* | § | |
| | § | **(Jointly Administered)** |
| Debtors.[1] | § | |
| | § | |
| | § | |

**ORDER REGARDING MEDIATION OF DISPUTES
RELATING TO ALLOCATION OF SALE PROCEEDS
AND RELATED ISSUES WITH MEDICAL PROPERTIES TRUST**

Upon the motion, dated June 11, 2024 (the "**Motion**")[2] of Steward Health Care

System LLC and its debtor affiliates, as debtors and debtors in possession in the above-captioned

chapter 11 cases (collectively, the "**Debtors**"), for entry of an order directing mediation of disputes

relating to allocation of sale proceeds and related consent rights pursuant section 105(a) of title 11

of the United States Code (the "**Bankruptcy Code**") and paragraph S.48 of the Procedures for

Complex Chapter 11 Cases in the Southern District of Texas (the "**Complex Procedures**"), as

more fully set forth in the Motion; and the Court having jurisdiction to consider the Motion and

the relief requested therein pursuant to 28 U.S.C. § 1334; and consideration of the Motion and the

requested relief being a core proceeding pursuant to 28 U.S.C. § 157(b); and it appearing that

venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper

notice of the Motion having been provided, and it appearing that no other or further notice need

be provided; and the Court having reviewed the Motion; and the Court having held a hearing on

---

[1]    A complete list of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' claims and noticing agent at https://restructuring.ra.kroll.com/Steward.  The Debtors' service address for these chapter 11 cases is 1900 N. Pearl Street, Suite 2400, Dallas, Texas 75201.

[2]    Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Motion.

JA95

21

Case 24-90213   Document 829   Filed in TXSB on 06/13/24   Page 2 of 6

the Motion; and the Court having held a hearing on the Motion; and upon the record of the hearing

and upon all of the proceedings had before the Court; and all objections, if any, to the Motion

having been withdrawn, resolved, or overruled; and this Court having determined that the legal

and factual bases set forth in the Motion establish just cause for the relief granted herein; and it

appearing that the relief requested in the Motion is in the best interests of the Debtors and their

respective estates and creditors; and upon all of the proceedings had before this Court and after

due deliberation and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED THAT:**

1.      The Debtors, MPT, ABL Lenders, FILO Lenders, the Committee, and

MIP V Hopkins, LLC may participate in non-binding mediation to attempt to resolve all

disputes among the parties relating to the following, among other things:

- A framework for allocating proceeds from hospital and other assets sales or leases of MPT-owned real estate between MPT and the Debtors;

- A framework for allocating estate proceeds to the Debtors' various asset collateral pools;

- A process for facilitating the consents of relevant parties with regards to the sales;

- Resolution to any potential challenges the Committee has to the Master Leases, including any challenges relating to recharacterization or divisibility;

- A framework for determining the amount of MPT's lease deficiency claims against the Debtors in connection with the sales, as well as the amount of any cure in connection with assumptions or assignments; and

- A framework for agreeing with MPT on steps to preserve value in the event one or more hospitals or other assets do not receive a bid.

2.      Judge Marvin Isgur of the United States Bankruptcy Court for the Southern

District of Texas (the "**Mediator**") is authorized to mediate such issues between the Parties as he

determines appropriate in this case.

2

22

Case 24-90213   Document 829   Filed in TXSB on 06/13/24   Page 3 of 6

3.     The Parties shall participate before the Mediator in (i) non-binding mediation beginning with a pre-mediation conference on a date and time scheduled by the Mediator in consultation with the Parties; and (ii) at such other conferences as deemed appropriate by the Mediator to attempt to resolve all disputes among the Parties relating to the allocation of hospital and other assets sale proceeds (including their hospital operations and the underlying real property owned by MPT) and related issues (together, the "**Mediation**").  The Mediation shall terminate on the date on which the Mediator determines that the Mediation has terminated (and advises the Parties of such determination).

4.     The Court adopts Section S of the Procedures for Complex Cases in the Southern District of Texas (Effective October 18, 2023); *provided,* that nothing herein shall alter, modify, or otherwise prejudice or impair any of the Parties' rights or obligations under any pre-existing confidentiality agreements or protective orders, all of which shall remain in full force and effect.

5.     One or more principals for each Party, as well as lead counsel for each Party, shall attend the Mediation and such other conferences as the Mediator deems appropriate. Co-counsel and financial advisors may also participate in the Mediation.  Other parties-in-interest may participate in relevant portions of the Mediation at the discretion of the Mediator to the extent issues arise in the Mediation that require their input.

6.     The Mediation shall be non-binding.

7.     The Mediator will mediate this case in his capacity as a United States Bankruptcy Judge.  He will have full, unqualified judicial immunity in his role as a mediator.

8.     The Mediator may not be compelled to disclose to the Court or to any person any of the records, reports, summaries, notes, communications, or other documents received or

3

JA97

23

Case 24-90213   Document 829   Filed in TXSB on 06/13/24   Page 4 of 6

made by the Mediator while serving in such capacity. The Mediator may not testify or be compelled to testify regarding the Mediation in connection with any arbitration, judicial, or other proceeding. The Mediator will not be a necessary party in any proceedings relating to the Mediation. Nothing contained in this paragraph prevents the Mediator from reporting (a) the status, but not the substance, of the mediation effort to the Court or (b) whether a Party failed to participate in good faith in the Mediation, subject in each respect to decretal paragraph 12 hereof.

9.    Each Party shall bear its own costs and expenses incurred in connection with the Mediation; *provided, however*, nothing herein shall prejudice any Party's right to seek payment or reimbursement from the Debtors' estates of such costs and expenses, including attorney fees, in accordance with any Court orders or otherwise.

10.    The Parties and their respective counsel shall participate in the Mediation in good faith and comply with all directions issued by the Mediator regarding the mediation process.

11.    Each Party may directly submit to the Mediator any materials (the "**Submissions**") in form and content as the Mediator directs. Prior to the Mediation, the Mediator may confer with one or more of the Parties to determine what materials would be helpful to the Mediator or the Mediation. The Submissions shall not be filed with the Court.

12.    The Mediation will be considered confidential settlement discussions pursuant to Rule 408 of the Federal Rules of Evidence, made applicable by Federal Rules of Bankruptcy Procedure 9017. Any (a) discussions among the Parties, including discussions with or in the presence of the Mediator; (b) mediation statements or any other documents or information provided to the Mediator or the Parties in the course of the Mediation; (c) correspondence, draft resolutions produced in connection with, or as a result of, the Mediation; and (d) offers, and

4

JA98

24

Case 24-90213   Document 829   Filed in TXSB on 06/13/24   Page 5 of 6

counteroffers ((a) through (d), collectively, the "**Mediation Information**"), shall be (i) strictly confidential; (ii) subject to disclosure only to the Mediator and the Parties to which the Mediation Information is provided; (iii) not constitute a waiver of any existing privileges or immunities (even if such privileged information is produced during the Mediation); and (iv) not be admissible, discoverable or otherwise used for any purpose in any proceeding outside of the Mediation, including any judicial or administrative proceeding.  No person, including counsel, shall in any way disclose to any person not expressly permitted to see Mediation Information under this Order or to any court, including, without limitation, in any pleading or other submission to any court, any such Mediation Information, unless all Parties to the Mediation consent to disclosure.  The confidentiality provisions in this paragraph 12 shall not prevent a Party from using or disclosing materials and information it has created (with its own information) in any way it sees fit (subject to other applicable law), and does not prevent the use or disclosure of materials and information that is a matter of public knowledge, provided that the material and information did not become public knowledge through an act or omission of a Party other than the Party who created it.

13.     The Parties, the Mediator, and all participants in the Mediation shall protect proprietary information.

14.     The disclosure by a Party of privileged information to the Mediator does not waive or otherwise adversely affect the privileged nature of such information.

15.     No Party may be served with a summons, subpoena, notice, or other pleading during the Mediation or at the location where the Mediation is occurring.

16.     Unless otherwise ordered by the Court, the assignment to Mediation does not delay or stay discovery, any hearings scheduled, or any deadlines set by the Court.

5

JA99

25

Case 24-90213   Document 829   Filed in TXSB on 06/13/24   Page 6 of 6

17.    The Court retains jurisdiction in connection with this Order and all matters
related thereto.

Signed:  June 13, 2024

_____
Christopher Lopez
United States Bankruptcy Judge

6

**APPENDIX IV**

(27)

28

BERNARD SANDERS, VERMONT, CHAIR

PATTY MURRAY, WASHINGTON
ROBERT P. CASEY, JR., PENNSYLVANIA
TAMMY BALDWIN, WISCONSIN
CHRISTOPHER MURPHY, CONNECTICUT
TIM KAINE, VIRGINIA
MARGARET WOOD HASSAN, NEW HAMPSHIRE
TINA SMITH, MINNESOTA
BEN RAY LUJÁN, NEW MEXICO
JOHN W. HICKENLOOPER, COLORADO
EDWARD J. MARKEY, MASSACHUSETTS

BILL CASSIDY, LOUISIANA
RAND PAUL, KENTUCKY
SUSAN M. COLLINS, MAINE
LISA MURKOWSKI, ALASKA
MIKE BRAUN, INDIANA
ROGER MARSHALL, KANSAS
MITT ROMNEY, UTAH
TOMMY TUBERVILLE, ALABAMA
MARKWAYNE MULLIN, OKLAHOMA
TED BUDD, NORTH CAROLINA

WARREN GUNNELS, MAJORITY STAFF DIRECTOR
AMANDA LINCOLN, REPUBLICAN STAFF DIRECTOR
www.help.senate.gov

**United States Senate**

COMMITTEE ON HEALTH, EDUCATION,
LABOR, AND PENSIONS
WASHINGTON, DC 20510-6300

September 5, 2024

**VIA ELECTRONIC TRANSMISSION**

Alexander J. Merton
Partner
Quinn Emanuel
1300 I Street NW
Suite 900
Washington, DC 20005

Dear Mr. Merton:

We write to respond to your September 4, 2024 letter informing the U.S. Senate Committee on Health, Education, Labor, and Pensions that your client, Dr. Ralph de la Torre, will not participate in the Committee's upcoming September 12, 2024 hearing to which Dr. de la Torre has been subpoenaed to testify. To the extent your letter is either a request for Dr. de la Torre to be excused or an objection to appearing before the Committee, that request is denied and any objection to attending the hearing overruled.

After Dr. de la Torre declined the Committee's invitation to appear voluntarily at a hearing to examine the management decisions of Steward Health Care, how those decisions led the hospital system to file for bankruptcy, and the impact those decisions have had on patient care, health care workers, and the hospitals Steward Health Care operates, the Committee issued a subpoena compelling Dr. de la Torre to appear for testimony at the Committee's September 12, 2024 hearing on these subjects. The Committee seeks testimony from Dr. de la Torre because the Committee believes that he can provide useful information relevant to the matter being reviewed by the Committee, and that directing appropriate questions to Dr. de la Torre may yield important information for the Committee's legislative functions.

Your letter suggests that it would be inappropriate to compel Dr. de la Torre to appear before the Committee because of his constitutional rights. The Fifth Amendment privilege against self-incrimination, however, does not permit witnesses to refuse to appear when summoned to testify before a congressional committee, but, rather, that constitutional privilege must be asserted by witnesses in declining to answer specific questions put to them. A valid assertion of the privilege against self-incrimination is predicated on a witness' good-faith determination that the provision of a truthful answer to a particular question creates a reasonable apprehension of incriminating him or her, and a witness cannot ultimately make the particular judgment necessary for invocation of the privilege except in consideration of a specific question. Accordingly, the Committee rejects

Page **1** of **2**

JA103

29

any suggestion that Dr. de la Torre can refuse to appear for testimony before the Committee on this ground.  While the Committee respects the constitutional rights of witnesses, including your client, it requires that the witness appear and assert the privilege in response to specific questions.

The other matters raised in your letter are not cognizable legal grounds for your client's refusing to appear at the Committee's hearing as summoned and to answer pertinent questions based on his personal, first-hand knowledge.

Accordingly, as required by the subpoena issued to him, Dr. de la Torre is expected to appear for testimony at the Committee's hearing on September 12, 2024, at 10:00 a.m., in 562 Dirksen Senate Office Building. Failure to comply with the Committee's subpoena could subject your client to criminal penalties. As a reminder, pursuant to Committee Rule 9, should Dr. de la Torre wish to submit a written statement of testimony prior to the hearing, he must do so at least 48 hours in advance thereof.

Sincerely,

Bernard Sanders
Chairman
Senate Committee on Health,
Education, Labor, and Pensions

Bill Cassidy, M.D.
Ranking Member
Senate Committee on Health,
Education, Labor, and Pensions

**APPENDIX V**

(31)

32

2

```
1    Examining the Bankruptcy of Steward Health Care: How
2       Management Decisions Have Impacted Patient Care
3
4               Thursday, September 12, 2024
5
6                                        U.S. Senate
7       Committee on Health, Education, Labor, and Pensions
8                                     Washington, D.C.
9
10    The committee met, pursuant to notice, at 10:01 a.m.,
11    in Room 562, Dirksen Senate Office Building, Hon. Bernard
12    Sanders, chairman of the committee, presiding.
13       Present:  Senators Sanders [presiding], Casey, Baldwin,
14    Murphy, Kaine, Hassan, Hickenlooper, Markey, Cassidy,
15    Collins, Braun, Romney, and Budd.
16
17
18
19
20
21
22
23
24
25
```

JA107

33

3

| | |
|---|---|
| 1 | OPENING STATEMENT OF SENATOR SANDERS |
| 2 | The Chairman.  The Committee on Health, Education, |
| 3 | Labor, and Pensions will come to order.  It's very |
| 4 | significant here in America today, we have a healthcare |
| 5 | system, which in my view going to say the healthcare system |
| 6 | is broken, but it's currently not the only thing that's |
| 7 | broken.  We have a healthcare system that is broken, |
| 8 | dysfunctional, and cruel.  Too often it is a system that is |
| 9 | designed not to make patients well, but to make healthcare |
| 10 | executives and stockholders extraordinarily wealthy. |
| 11 | There cannot be a clearer example of that than private |
| 12 | equity billionaires on Wall Street who are making billions |
| 13 | by purchasing hospitals throughout our country, stripping |
| 14 | all of their assets, and loading them up with debt that |
| 15 | these hospitals could never pay back.  Perhaps more than |
| 16 | anyone else in America, Ralph de la Torre, the CEO of |
| 17 | Steward Healthcare, is the poster child for this outrageous |
| 18 | type of corporate greed that is permeating our for-profit |
| 19 | healthcare system. |
| 20 | Working in partnership with a private equity firm, |
| 21 | Cerberus, Dr. de la Torre became obscenely wealthy by |
| 22 | loading up hospitals from Massachusetts to Arizona with |
| 23 | billions of dollars in debt and selling the land underneath |
| 24 | these hospitals to real estate executives at Medical |
| 25 | Properties Trust who charged unsustainably high rents.  As a |

▼ **TP** One        Scheduling@TP.One        800.FOR.DEPO
www.TP.One        (800.367.3376)

JA108

34

4

1    result of Dr. de la Torre's elaborate financial scheme,
2    Steward Healthcare and the more than 30 hospitals it owns in
3    eight states, declared bankruptcy with some $9 billion in
4    debt.
5        But let's be clear, Steward's severe financial problems
6    did not happen overnight.  They have been going on for more
7    than a decade.  It has been estimated that at least 15
8    patients at hospitals owned by Steward died as a result of a
9    lack of medical equipment or staffing shortages, and that at
10   least 2000 other patients were put in serious risk according
11   to federal regulators.  Since 2019, federal inspectors have
12   cited Steward-owned hospitals over 30 times for putting
13   patients in "immediate jeopardy" meaning the patients died,
14   were put at grave risk, or were injured.
15       In 2014, Steward shut down the Quincy Medical Center,
16   Massachusetts, with the exception of its emergency room,
17   which it shut down six years later.  Today, Quincy is the
18   largest city in Massachusetts without an emergency room.  In
19   2018, Steward shut down the Northside Regional Medical
20   Center in Youngstown, Ohio, closing the only labor and
21   delivery unit in that city for pregnant women and their
22   babies, and laying off 468 healthcare workers in the
23   process.
24       Last year, Steward shut down the Texas Vista Medical
25   Center, the main healthcare option for San Antonio's south



JA109

35

5

```
 1   side after it missed over $650,000 in payments to medical
 2   suppliers leaving the hospital with a severe shortage of
 3   respiratory masks among many other things.  Last month,
 4   state regulators required Steward to shut down St. Luke's
 5   Behavioral Center in Phoenix, Arizona after they found that
 6   it had been without air conditioning in Phoenix, as
 7   temperatures soared past 100 degrees, putting more than 70
 8   patients at risk of heat exposure.
 9        Steward has also shut down pediatric wards in
10   Massachusetts, Louisiana, closed neonatal units in Florida
11   and Texas, and eliminated maternity services at a hospital
12   in Florida.  We know that Steward has gone bankrupt.  We
13   know that several of its hospitals have already been forced
14   to close their doors because they ran out of money.
15        But the question that is interesting to me is, in the
16   midst of all of that, how is the main person behind all of
17   these efforts, Dr. de la Torre, how's he doing financially?
18   While hospitals shut down, while patients go without care,
19   while healthcare workers lose their jobs, how has Dr. de la
20   Torre been doing in terms of his own financial wellbeing?
21   And the answer is that he has been doing phenomenally well.
22        While Steward was busy shutting down hospitals, the
23   companies he owned received $250 million in compensation
24   over a four-year period.  Let me repeat.  He personally
25   received hundreds of millions of dollars, some of which,
```

JA110

36

6

1   remember, hospitals shut down, patients without care,

2   workers being laid off, and some of that money he used to

3   purchase this $40 million yacht.

4        While Steward Hospitals were severely understaffed,

5   patients were not getting the care they desperately needed,

6   Dr. de la Torre was able to afford this $15 million custom

7   made luxury fishing boat.  $15 million fishing boat while

8   patients were dying.  While Steward-owned hospitals cannot

9   afford to pay for life saving medical supplies, it had

10  enough money to purchase a $62 million private jet, and

11  incredibly, a $33 million backup jet that Dr. de la Torre

12  and his family used for non-business trips throughout the

13  world.

14        While Steward's hospitals were laying off hundreds of

15  workers, de la Torre made a $10 million charitable

16  contribution to an exclusive prep school in Dallas that was

17  fully paid for by Steward Healthcare, not his own personal

18  funds.  How many of Steward's hospitals could have been

19  prevented from closing down?  How many lives could have been

20  saved?  How many healthcare workers would still have their

21  jobs today if Dr. de la Torre spent 160 million on high

22  quality healthcare at the hospitals he managed, instead of a

23  yacht, two private jets, a luxury fishing boat, and a huge

24  contribution to a wealthy prep school.

25        Today, we will be hearing from nurses in Massachusetts

 **TP** One          Scheduling@TP.One          800.FOR.DEPO
                                          www.TP.One               (800.367.3376)

37

7

1   and from public officials in Louisiana who have firsthand
2   knowledge of the harm Steward has caused the patients, the
3   healthcare workers, and the communities in which they live.
4   I look forward to hearing from these panelists very soon.
5   As the Chairman of this Committee, I look forward to working
6   with Ranking Member Cassidy, and I want to thank him and his
7   staff for their cooperation on this effort.
8       I want to thank Senator Markey for his leadership.  He
9   is from Massachusetts.  They have been very hard hit by
10  Steward.  And I hope that we will be working together every
11  Senator, Democrat and Republican, to hold Dr. de la Torre
12  accountable for his financial mismanagement and his greed.
13      But let me conclude by saying this.  Dr. de la Torre
14  did not act alone.  Who else besides de la Torre benefited
15  financially as a result of Steward's bankruptcy?  Cerberus,
16  the private equity firm he partnered with, made an estimated
17  $800 million profit from its investments in Steward
18  Healthcare.  From 2017 through 2021, the CEO of Medical
19  Properties Trust received about 70 million in bonuses,
20  stock, awards, and salary.  How much of that compensation
21  came as a result of its financial arrangements with Steward?
22      The collapse of Steward Healthcare is just one extreme
23  example of the damaging role in my view, that private equity
24  is having on our healthcare system.  Private equity firms
25  have bought, bought up hundreds of hospitals, thousands of



**TP** One          Scheduling@TP.One          800.FOR.DEPO
www.TP.One          (800.367.3376)

38

1    nursing homes, and tens of thousands of medical practices,
2    saddling them up with unsustainable debt and stripping their
3    assets to make huge profits for their executives and their
4    investors.
5        Study after study has shown that on average, when a
6    private equity firm takes over a hospital, a nursing home,
7    or another medical provider, the price of healthcare goes
8    up, the quality goes down, and healthcare workers are asked
9    to do much more with fewer and fewer staff.  The issue of
10   private equity and healthcare is an issue this committee
11   must look into.  We cannot allow wealthy private equity
12   executives to treat our healthcare system as their own
13   personal piggy bank.
14       Healthcare in America, in my view, must be a human
15   right for every man, woman, and child in this country, and
16   not simply an opportunity for billionaire investors to make
17   huge profits.
18       Senator Cassidy, I want to thank you for your hard work
19   on this, and you are recognized for an opening statement.
20
21
22
23
24
25

JA113

39

9

```
1                  STATEMENT OF SENATOR CASSIDY
2        Senator Cassidy.  Thank you, Senator Sanders.
3        For months this committee has engaged in a bipartisan
4   investigation into the bankruptcy of the Steward Healthcare
5   and the impact on the delivery of its care at its hospitals.
6   And I would add therefore, on the impact of the healthcare
7   of the patients those hospitals served.  It was quickly
8   evident that breaking down the management decisions of Chief
9   Executive Officer Dr. Ralph de la Torre is essential to
10  understand Steward's financial problems.
11       Steward's bankruptcy has nationwide implications
12  impacting more than 30 hospitals across eight states,
13  including Glenwood Regional Medical Center in West Monroe,
14  Louisiana.  According to a report from the Centers for
15  Medicare and Medicaid Services, a physician at Glenwood told
16  a Louisiana State Inspector, "the hospital was performing
17  third world medicine."
18       Because of management decisions resulting in limited
19  resources at Glenwood, the state had to force the hospital
20  to operate at one-third capacity.  One patient died waiting
21  for a transfer to another hospital, because Glenwood lacked
22  resources to treat.  Glenwood is also the largest employer
23  in West Monroe and West Ouachita Parish, at one point
24  employing 9 percent of the community.
25       Now, hospitals like Glenwood are essential to the both
```

JA114

40

10

1   physical and financial health of the communities they serve.

2   We need to keep this from happening again.  That means we

3   need answers, and it seems the principle to give that answer

4   is Dr. Ralph de la Torre, and this is what our bipartisan

5   work has been about; answers for our constituents, answers

6   to inform legislative solutions.

7        Unfortunately, Dr. de la Torre has refused to testify

8   voluntarily.  As a result, the committee issued a subpoena

9   in July.  Up until September the 4th, Dr. de la Torre's

10  lawyers indicated he intended to comply with the subpoena

11  and to testify.  However, eight days before the hearing, Dr.

12  de la Torre informed the committee that he would not comply

13  with the subpoena.  We responded to Dr. de la Torre

14  explaining why his objections to the Committee's subpoena

15  have no merit and directed him to comply.

16       Now a witness cannot disregard and evade a duly

17  authorized subpoena.  Therefore, today the Chair and I will

18  be asking the committee to report a resolution to authorize

19  civil enforcement and criminal contempt proceedings against

20  Dr. de la Torre, requiring compliance with the subpoena.  I

21  thank the chair for working with me on this critically

22  important issue.  I believe our actions today are a

23  testament to what bipartisanship can accomplish on behalf of

24  Americans, on behalf of patients.  Thank you.

25       The Chairman.  Thank you, Senator Cassidy.  And again,

 **TP** One

JA115

41

```
 1   I want to thank you and your staff for their bipartisan
 2   efforts.  As Senator Cassidy mentioned, our first witness is
 3   Dr. de la Torre, but as I think everybody can see, Dr. de la
 4   Torre is not here.  He was subpoenaed to testify at 10:00
 5   a.m. this morning.  On September 4th, 2024, counsel for Dr.
 6   de la Torre sent a letter to the committee, objecting to the
 7   compelled testimony and declining to comply with the
 8   subpoena.  The next day, the committee overruled these
 9   objections in their entirety and informed his attorneys that
10   we expected to see Dr. de la Torre today.
11        Dr. de la Torre is not present in the room at this
12   time, so I now call up our second panel of witnesses.
13   Panel, if you would come to the dais, we would appreciate
14   it.
15        [Pause.]
16        The Chairman.  All right.  Let me thank all of our
17   witnesses.  We have four excellent witnesses from
18   Massachusetts, Louisiana, and we thank them all for being
19   here.  Senator Markey has played a very important role in
20   driving this investigation and has had a huge impact on
21   communities throughout Massachusetts.  So Senator Markey,
22   I'd appreciate it very much if you can introduce our first
23   two witnesses.
24        Senator Markey.  Thank you, Mr. Chairman, very much,
25   and thanks to you and Ranking Member Cassidy for your
```

**TP** One      Scheduling@TP.One      $00.FOR.DEPO
              www.TP.One            (800.367.3376)

JA116

# Exhibit B

Memorandum of Points and Authorities in Support of
Defendant's Motion to Dismiss Amended Complaint

*Dr. de la Torre v. Sanders*, *et al.*, No. 1:24-cv-02776-TNM

III

118TH CONGRESS
2D SESSION
# S. RES. 837

Authorizing the President of the Senate to certify the report of the Committee on Health, Education, Labor, and Pensions of the Senate regarding the refusal of Dr. Ralph de la Torre to appear and testify before the Committee.

———————————

## IN THE SENATE OF THE UNITED STATES

SEPTEMBER 23, 2024

Mr. SANDERS, from the Committee on Health, Education, Labor, and Pensions, reported the following original resolution; which was placed on the calendar

SEPTEMBER 25, 2024

Considered and agreed to

———————————

# RESOLUTION

Authorizing the President of the Senate to certify the report of the Committee on Health, Education, Labor, and Pensions of the Senate regarding the refusal of Dr. Ralph de la Torre to appear and testify before the Committee.

Whereas the Committee on Health, Education, Labor, and Pensions of the Senate (referred to in this preamble as the "Committee") is currently conducting a duly authorized investigation into the bankruptcy of Steward Health Care Systems LLC;

Whereas, on July 25, 2024, the Committee issued a duly authorized subpoena to Dr. Ralph de la Torre, Chairman

JA118

2

and Chief Executive Officer of Steward Health Care Sys-
tems LLC, directing him to testify before the Committee
on September 12, 2024, at 10:00 a.m.;

Whereas, on September 4, 2024, counsel for Dr. de la Torre
submitted to the Committee objections to the compelled
testimony under the subpoena issued by the Committee
and indicated Dr. de la Torre's intent to decline to com-
ply with the subpoena;

Whereas, having considered the legal objections that had been
submitted by counsel for Dr. de la Torre, the Committee
overruled those objections in their entirety on September
5, 2024, and ordered and directed that Dr. de la Torre
comply with the subpoena issued by the Committee to
testify at 10:00 a.m. on September 12, 2024; and

Whereas Dr. de la Torre has refused to comply with the sub-
poena by the Committee as ordered and directed by the
Committee: Now, therefore, be it

1    *Resolved,* That pursuant to sections 102 and 104 of
2    the Revised Statutes (2 U.S.C. 192, 194), the President
3    of the Senate shall certify the report of the Committee
4    on Health, Education, Labor, and Pensions of the Senate,
5    detailing the refusal of Dr. Ralph de la Torre, Chairman
6    and Chief Executive Officer of Steward Health Care Sys-
7    tems LLC, to appear and testify before the Committee,
8    to the United States Attorney for the District of Colum-
9    bia, to the end that Dr. de la Torre be proceeded against
10   in the manner and form provided by law.

○

**SRES 837 ATS**

JA119

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

DR. RALPH DE LA TORRE, M.D.,

              Plaintiff,

v.

BERNARD SANDERS, in his capacity as
Chairman of the Committee on Health,
Education, Labor, and Pensions of the
United States Senate, *et al.*,

              Defendants.

Civil Action No. 1:24-cv-02776-TNM

**PLAINTIFF'S MOTION FOR LEAVE TO CONDUCT**
**LIMITED JURISDICTIONAL DISCOVERY**

Plaintiff Dr. Ralph de la Torre ("Dr. de la Torre"), by and through undersigned counsel, hereby respectfully moves the Court for leave to conduct jurisdictional discovery for the limited purpose of ascertaining additional facts to support this Court's jurisdiction and Dr. de la Torre's standing to bring his claims. In support of this Motion, Plaintiff submits the accompanying Memorandum of Points and Authorities.

Pursuant to Local Rule 7(m) and this Court's Standing Order (ECF 5), undersigned counsel has conferred with counsel for Defendants to determine whether there is any opposition to the relief sought and to narrow the areas of disagreement. Defendants have indicated that they intend to oppose the Motion.

JA120

Dated: January 2, 2025

Respectfully submitted,


By:  */s/ Alexander J. Merton*
William A. Burck (D.C. Bar No. 979677)
Alexander J. Merton (D.C. Bar No. 1029439)
  (*pro hac vice*)
Kaylee A. Otterbacher (D.C. Bar No. 90018061)
  (*pro hac vice*)
QUINN EMANUEL URQUHART & SULLIVAN,
LLP
1300 I Street NW, Suite 900
Washington, District of Columbia 20005-3314
(202) 538-8000
williamburck@quinnemanuel.com
ajmerton@quinnemanuel.com
kayleeotterbacher@quinnemanuel.com

*Counsel to Plaintiff Dr. Ralph de la Torre*

2

JA121

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| **DR. RALPH DE LA TORRE, M.D.**, <br><br> Plaintiff, <br><br> v. <br><br> **BILL CASSIDY, M.D.**, in his capacity as Chairman of the Committee on Health, Education, Labor and Pensions of the United States Senate, *et al.*, <br><br> Defendants. | Case No. 1:24-cv-02776 (TNM) |

## <u>MEMORANDUM OPINION</u>

Dr. Ralph de la Torre sues 20 U.S. Senators on the Health, Education, Labor and

Pensions (HELP) Committee.[1]  The doctor challenges the Committee's subpoena compelling his

testimony at a hearing because, he alleges, it violated his Fifth Amendment rights.  But the Court

need not reach these claims because the Constitution's Speech and Debate Clause grants

Congress absolute immunity from suits based on legislative actions.  This is one of those suits.

Because all named Defendants' challenged actions are immune, the Court must dismiss the case

for lack of subject-matter jurisdiction.

**I.**

For nearly 15 years, Dr. Ralph de la Torre was the "founder, chairman, and CEO of

Steward Health Care System," "the largest physician-led, minority owned, integrated health care

system in the United States."  Am. Compl., ECF No. 17 ¶¶ 1, 41.  He attended Harvard Medical

---

[1] Under Federal Rule of Civil Procedure 25(d), these Senators sued in their official capacity are automatically substituted with the current members of the HELP Committee, insofar as the membership has changed.  Notice Def. Sens. No Longer Serving on Comm., ECF No. 24.

JA122

School and holds a Masters' degree from the Massachusetts Institute of Technology. Am. Compl. ¶ 1. After many years of business, Steward Health Care suffered "significant financial headwinds" during the COVID-19 pandemic. Am. Compl. ¶ 44. The company filed for bankruptcy in spring 2024. Am. Compl. ¶ 2.

A few months later, the HELP Committee asked Dr. de la Torre to testify at a hearing entitled, "Examining the Bankruptcy of Steward Health Care: How Management Decisions Have Impacted Patient Care." S. Rep. No. 118-230, at 3 (2024). The hearing began the Committee's investigation into the cause and effects of the Steward Health Care bankruptcy. *See* U.S. Gov't Accountability Office, Cong. Rec. Daily Digest–July 25, 2024, at D776. The HELP Committee has jurisdiction over "[m]easures relating to education, labor, health, and public welfare." Senate Rule XXV(*l*)(1), Senate Manual, S. Doc. No. 118-1, at 33 (2024). The Senate also has directed the Committee to "study and review, on a comprehensive basis, matters relating to health, education and training, and public welfare, and report thereon from time to time." Senate Rule XXV(*l*)(2), Senate Manual, S. Doc. No. 118-1, at 34 (2024).

Sen. Bernie Sanders, Chairman of the HELP Committee, said publicly that he would "hold Dr. de la Torre accountable for his greed," calling Steward Health Care an "elaborate Ponzi scheme." Am. Compl. ¶ 49; *see Sanders Leads HELP Committee Investigation into Bankruptcy of Steward Health Care and Subpoenas its CEO*, Sanders.Senate.gov (July 25, 2024) (press release).[2] Dr. de la Torre declined to testify voluntarily. Am. Compl. ¶ 50. The Committee responded with a subpoena. S. Rep. No. 118-230, at 2 (2024); Am. Compl. ¶¶ 3, 50– 52. The doctor replied in writing that he was invoking his Fifth Amendment rights to avoid

---

[2] https://perma.cc/X8E2-ZGFR.

JA123

attending the hearing.  S. Rep. No. 118-230, App. III at 12–15; Am. Compl. ¶ 4.[3]  He also

explained that Steward Health Care had "denied authorization" for him to testify on the

hospital's behalf and that a "federal court's order" "prohibited" him from "revealing certain

information obtained in Steward's [ongoing] bankruptcy proceeding."  S. Rep. No. 118-230,

App. III at 12–14; Am. Compl. ¶ 4 n.1.

        The next day, the Committee rejected his explanations.  S. Rep. No. 118-230, at 2; Am.

Compl. ¶¶ 5, 51.  It maintained that the Fifth Amendment may not be invoked to evade a

congressional subpoena but rather that individuals must appear, then invoke the Fifth

Amendment to specific questions.  S. Rep. No. 118-230, at 2.  And, along those lines, the

Committee asserted that he also could not be relieved of his duty to appear for his other cited

reasons.  S. Rep. No. 118-230, App. IV at 29.  The HELP Committee promised "criminal

penalties" for his "failure to comply with the Committee's subpoena."  *Id.*; Am. Compl. ¶ 5.

        Senators on the Committee then criticized Dr. de la Torre in press releases, calling for his

firing and blaming him for the bankruptcy.  Am. Compl. ¶¶ 5 n.3, 8, 47 (collecting negative press

releases).  During the hearing held in Dr. de la Torre's absence, Sen. Sanders called him "the

poster child for this outrageous type of corporate greed that is permeating our for-profit

healthcare system."  S. Rep. No. 118-230, at App. V, 33.  The Committee publicly announced

that it would pursue contempt-of-Congress resolutions against him.  Am. Compl. ¶ 56.  The

doctor again wrote to the Senate emphasizing his reliance on the Fifth Amendment.  Am. Compl.

¶¶ 9, 57.

---

[3] The Committee suggests that Dr. de la Torre was unclear in his first invocation because he only referenced
"constitutional rights" that would be "sidestep[ped] . . . by seeking sworn testimony on matters for which the
Committee has pre-determined his guilt."  Mot. Dismiss, ECF No. 18-1, at 16; S. Rep. 118-230, App. III at 14.  But
the Court takes Dr. de la Torre's allegations as true at the motion-to-dismiss stage.  *Hurd v. District of Columbia*,
864 F.3d 671, 678 (D.C. Cir. 2017) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  So it adopts his
allegation that he was referencing his Fifth Amendment rights—which he explicitly invoked shortly after, as
explained above.

JA124

The Committee still unanimously passed both civil and criminal contempt resolutions against Dr. de la Torre.  Am. Compl. ¶¶ 10, 56–61; 170 Cong. Rec. S6405 (daily ed. Sept. 25, 2024).[4]  The criminal resolution directed the President of the Senate to certify the report to the United States Attorney for the District of Columbia for presentation to a grand jury.  Am. Compl. ¶ 58; S. Res. 837, 118th Cong. (Sept. 25, 2024).  The civil resolution directed the Senate Legal Counsel to bring a civil action to enforce the subpoena.  Am. Compl. ¶ 58; 170 Cong. Rec. S6405 (daily ed. Sept. 25, 2024).  Only the criminal contempt resolution has been passed on the Senate floor, by voice vote.  Am. Compl. ¶¶ 61–63; S. 837, 118th Cong. (2024); 170 Cong. Rec. S6407 (daily ed. Sept. 25, 2024).

Dr. de la Torre resigned as CEO of Steward Health.  Am. Compl. ¶¶ 65–66.  He alleges that the media has picked up the Committee members' pejorative "health care terrorist," publishing it in the Boston Globe and elsewhere.  Am. Compl. ¶¶ 65 & nn.23–24, 66 & nn.25–27 (citing media reports).  Dr. de la Torre now sues the HELP Committee and 20 of its members.  Am. Compl. ¶¶ 67–86.  The Committee moved to dismiss, attacking this Court's jurisdiction over the Complaint.  Mot. Dismiss Am. Compl., ECF No. 18.  In response, Dr. de la Torre requested jurisdictional discovery.  Juris. Disco. Mot., ECF No. 20.  Both motions are fully briefed and ripe for consideration.

## II.

The Committee seeks to dismiss this case for lack of subject-matter jurisdiction.  Fed. R. Civ. P. 12(b)(1); *Massie v. Pelosi*, 72 F.4th 319, 321 (D.C. Cir. 2023).  Because federal courts

---

[4] Dr. de la Torre alleges that Sen. Sanders concealed his Fifth Amendment invocation from the Senate because he did not mention the Fifth Amendment in his statements on the Senate floor.  Am. Compl. ¶¶ 59, 61–63.  But the Committee correctly points out that Sen. Sanders attached the HELP Committee Report when sending the resolution to the Senate, which contained Dr. de la Torre's letters invoking the Fifth Amendment.  Def. Reply Mot. Dismiss, ECF No. 23, at 12 n.1; S. Rep. No. 118-230, App. III at 12–14, 16–17, App. IV at 28–29.

have limited purview, they must presume that a "cause lies outside [their] limited jurisdiction." *Kokkonen v. Guardian Life Co. of Am.*, 511 U.S. 375, 377 (1994). The plaintiff bears the burden of overcoming that presumption. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992).

Dr. de la Torre contends that Congress bears the burden of proving Speech and Debate Clause immunity. Opp. Mot. Dismiss at 11–12. For that proposition, he cites two cases that do not persuade this Court. First, he cites an Eastern District of Virginia opinion whose Supreme Court citation supports only the substantive privilege standard, not the burden-shifting proposition. *Bethune-Hill v. Va. State Bd. of Elections*, 114 F. Supp. 3d 323, 331 (E.D. Va. 2015) (citing *Gravel v. United States*, 408 U.S. 606, 625 (1972)). Second, he cites *Watkins v. United States*, 354 U.S. 178, 201 (1957), which states that Congress should ensure that Committees are properly instructed "on what they are to do with the power delegated to them" to "insure that compulsory process is used only in furtherance of a legislative purpose." This does not place the burden to prove Speech and Debate privilege on Congress; it admonishes Congress to give its committees defined legislative tasks, which eases courts' review of, for example, an arrest for contempt of Congress. *See infra* Parts III–IV (explaining the proper scope of review for legislative purpose). So Dr. de la Torre still bears the burden of proving federal subject-matter jurisdiction under the usual rule.

The Court accepts factual allegations in the Complaint as true, but those allegations "will bear closer scrutiny in resolving a 12(b)(1) motion than in resolving a 12(b)(6) motion for failure to state a claim." *Schilling v. Speaker of U.S. House of Reps.*, 633 F. Supp. 3d 272, 274–75 (D.D.C. 2022), *aff'd sub nom. Schilling v. U.S. House of Reps.*, 102 F.4th 503 (D.C. Cir. 2024). The Court "may consider materials outside the pleadings in deciding whether to grant a motion

5

to dismiss for lack of jurisdiction." *Id.* (quoting *Jerome Stevens Pharms., Inc. v. FDA*, 402 F.3d 1249, 1253 (D.C. Cir. 2005)).

 The Court need not find jurisdiction over the merits of this case to rule on the motion for jurisdictional discovery. *Musgrave v. Warner*, 104 F.4th 355, 365 (D.C. Cir. 2024) (so holding in a Speech and Debate Clause case). When a "party demonstrates that it can supplement its jurisdictional allegations through discovery, then jurisdictional discovery is justified." *GTE New Media Servs., Inc. v. Bellsouth Corp.*, 199 F.3d 1343, 1351 (D.C. Cir. 2000). District courts should not deny a motion for jurisdictional discovery in a Speech and Debate Clause case unless they determine that either the "discovery [is] itself precluded by the Speech or Debate Clause" or that "no facts that additional discovery could produce would affect the Speech-or-Debate Clause analysis." *Musgrave*, 104 F.4th at 365.

### III.

 The Court turns first, as it must, to Speech and Debate Clause immunity. Dr. de la Torre must show that it is inapplicable to avoid dismissal. "Such is the nature of absolute immunity, which is—in a word—absolute." *Rangel v. Boehner*, 785 F.3d 19, 24 (D.C. Cir. 2015).[5]

 "The Speech and Debate Clause has been read broadly to effectuate its purposes." *Doe v. McMillan*, 412 U.S. 306, 311 (1973) (cleaned up). Its purpose is to "insure that the legislative function the Constitution allocates to Congress may be performed independently." *Eastland v. U.S. Servicemen's Fund*, 421 U.S. 491, 502 (1975). The Clause's history, which has been fully

---

[5] The Court may address Article III standing and immunity in any order because both are jurisdictional. *Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 431 (2007) ("[T]here is no mandatory sequencing of jurisdictional issues.") (cleaned up); *Rangel*, 785 F.3d at 22 (addressing Speech and Debate immunity before Article III standing based on *Sinochem*'s command). Because the Court will dismiss based on immunity, it need not address Article III standing. *Rangel*, 785 F.3d at 22.

JA127

documented elsewhere, confirms this separation-of-powers purpose. *Schilling*, 633 F. Supp. 3d at 275–79.

> The Court begins with the text:
>
> "The Senators and Representatives . . . shall in all Cases, except Treason, Felony and Breach of Peace, be privileged from Arrest during their Attendance at the Session of their respective Houses, and in going to and returning from the same; and for any Speech or Debate in either House, they shall not be questioned in any other Place."

U.S. Const. art. I, § 6, cl.1.

These words explain the central debate here. In short, "Senators and Representatives" "shall not be questioned in any other Place" for their "Speech or Debate in either House." *Id.* As caselaw has developed over the years, the principle has settled as follows: For any act that involves congressional speech or debate—or the broader precedential interpretation, any "legislative act"—absolute immunity applies. A legislator may not be "questioned in any other Place." *Id.* But for any other *non-legislative* act, and particularly those involving "Treason, Felony and Breach of Peace," immunity from both "question[ing]" and "Arrest" evaporates. *Id.* A court only may inquire into an act that is not "essential to legislating." *Eastland*, 421 U.S. at 507–08 (cleaned up). The parties pull at this distinction like taffy, but keeping the Constitution's text in mind clarifies the firm divide between immune acts and all others.

"In determining whether particular activities other than literal speech or debate fall within the legitimate legislative sphere we look to see whether the activities took place in a session of the House by one of its members in relation to the business before it." *Eastland*, 421 U.S. at 503 (cleaned up). "More specifically, we must determine whether the activities are an integral part of the deliberative and communicative processes by which Members participate in

JA128

committee and House proceedings," *id.* at 504, "with respect to either (1) the consideration and

passage or rejection of proposed legislation or (2) other matters which the Constitution places

within the jurisdiction of either House," *Massie*, 72 F.4th at 322; *accord McCarthy v. Pelosi*, 5

F.4th 34, 39 (D.C. Cir. 2021).  When immunity applies, it does so equally to committees of

Congress and their members.  *See, e.g.*, *Musgrave*, 104 F.4th at 358 (holding that Speech and

Debate immunity applied to a Senate Committee and its chair).  It also covers civil and criminal,

private and government actions.  *Eastland*, 421 U.S. at 502–03.

The Amended Complaint targets several actions with varying degrees of precision.  Dr.

de la Torre seeks (1) declaratory relief that the subpoena did not advance a valid legislative

purpose, and (2) declaratory and injunctive relief that the Committee's "[a]ctions" violated his

Fifth Amendment rights.  Am. Compl. ¶¶ 67–86.  Dr. de la Torre's prayer for relief clarifies

which "[a]ctions" he targets besides the subpoena: "all subsequent actions related to enforcement

of the Subpoena"; "the vote of the Committee on September 19, 2024 approving the Contempt

Resolutions as well as subsequently presenting S. Res. 837 for a full Senate vote"; "[e]njoining

the [Committee] from attempting to civilly enforce the July 25, 2024 Subpoena"; and

"[e]njoining the [Committee] from causing Dr. de la Torre to suffer from additional punishment

for invoking his Fifth Amendment rights."  Am. Compl. at 31–32.

Each of these acts is immune.  "Issuance of subpoenas . . . has long been held to be a

legitimate use by Congress of its power to investigate."  *Eastland*, 421 U.S. at 504; *McSurely v.*

*McClellan*, 521 F.2d 1024, 1036–37 (D.C. Cir. 1975).  This holds true for committee subpoenas

acting "on behalf of one of the Houses."  *Eastland*, 421 U.S. at 505.

Equally immune are the vote, the Committee's report, the resolutions, referring those

resolutions to the House or Senate, and "Member[s'] conduct at legislative committee hearings."

8

JA129

*McMillan*, 412 U.S. at 311–12 ("Thus voting by Members and committee reports are protected and a Member's conduct at legislative committee hearings . . . may not be made the basis for a civil or criminal judgment against a Member because that conduct is within the sphere of legitimate legislative activity.") (cleaned up); *id.* at 312 (holding the same for referring a Committee report to the Speaker of the House); *Gravel*, 408 U.S. at 617 ("Committee reports, resolutions, and the act of voting are equally covered[.]"). These actions "fall comfortably within the scope of the Speech or Debate Clause." *Rangel*, 785 F.3d at 24. This immunity covers claims for both injunctive and declaratory relief against such legislative actions. For example, the *Eastland* Court reversed a declaratory relief judgment against Members of Congress, which the appellate court had concluded was "preferable to any coercive order." *Eastland*, 421 U.S. at 499–503.

Dr. de la Torre also vaguely challenges "all subsequent actions related to enforcement of the Subpoena." Am. Compl. at 31–32. He has not mentioned any pending criminal prosecution or arrest, and there has been no civil enforcement, so the only actions remaining for him to challenge are the criminal and civil resolutions' passage and referral to the Senate. *See also* Mot. Dismiss at 19 n.1 ("The Senate has taken no action on the resolution to direct the Senate Legal Counsel to initiate a civil action against Dr. de la Torre to enforce the subpoena."). And those actions, as discussed, are immune. *See also McCarthy*, 5 F.4th at 41 ("The salient distinction under the Speech or Debate clause is not between enacting legislation and executing it. The pivotal distinction instead is between legislative acts and non-legislative acts."); *Massie*, 72 F.4th at 323 ("The Speech or Debate Clause protects the execution of legislation when the executing actions themselves constitute legislative acts.") (cleaned up).

9

JA130

Finally, the doctor requests that the Court enjoin the Committee from any future actions that would "caus[e him] to suffer from additional punishment for invoking his Fifth Amendment rights." Am. Compl. at 31–32. He disclaims requesting an injunction or any "interfere[nce] with any forthcoming criminal proceedings"—which the parties agree "do not yet exist." Opp. Mot. Dismiss, ECF No. 21, at 40. Even when pressed by opposing counsel, he doubles down that he is only targeting the Committee and the Senate. *Id.* So the Court leaves to the side any potential unnamed actors that could enforce either contempt order.

His nebulous reference to other future actions is thus construed as challenging the actions that the *Senators themselves and the Committee* could take. Such an inquiry necessarily implicates the Speech and Debate Clause. Immunity applies based on the nature of Senators' actions, not their status as legislators. *See supra* at 6–7; U.S. Const. art. I, § 6, cl.1. So to demonstrate subject-matter jurisdiction, Dr. de la Torre must identify future non-immune actions to target. He has not. He does not allege, for example, that any Senator or the Committee has committed or plans to commit "Treason, Felony [or] Breach of Peace" to enforce the subpoena against him. U.S. Const. art. I, § 6, cl. 1. He only alleges that their conduct has violated his constitutional rights, an entirely different matter from alleging that they have committed any kind of qualifying non-immune, non-legislative action. *E.g.*, Opp. Mot. Dismiss at 18–20; *see infra* Part IV (discussing the scope of non-immune actions). His scattershot attempt to enjoin future actions does not rise beyond the "speculative" standard required to allege subject-matter jurisdiction. *See generally Rosenboro v. Kim*, 944 F.2d 13, 19 (D.C. Cir. 1993) (stating that more is required to substantiate subject-matter jurisdiction than "purely speculative or unsupported allegations of injury").

The doctor does not challenge the one action *preceding* the subpoena for which the Supreme Court has recognized very "narrow" review to determine whether it is an immune legislative act: "[t]he propriety of making [Dr. de la Torre] a subject of the investigation and subpoena." Am. Compl. at 31–32; *Eastland*, 421 U.S. at 506.[6] "[A]lthough the power to investigate is necessarily broad it is not unlimited." *McSurely*, 521 F.2d at 1038. Yet this Committee decision, too, would pass muster as proper "legislative" action that falls within Speech and Debate immunity.

"The courts should not go beyond the narrow confines of determining that a committee's inquiry may fairly be deemed within its province." *McSurely*, 521 F.2d at 1038. The Committee need only show that its investigation is "facially legislative." *Id.* "Even the most cursory look at the facts presented by the pleadings reveals the legitimacy of the [Committee's] subpoena." *Eastland*, 421 U.S. at 506. Sen. Sanders said during the committee hearing that investigating Steward Healthcare "is just one extreme example of the damaging role in [his] view, that private equity is having on our healthcare system." Def. Ex. A, ECF No. 18-2, at 38–39. He also wanted to examine Steward's management and how it impacted "patient care, health care workers, and the hospital it operates." *Id.* at 17–18 (Committee's letter to Dr. de la Torre discussing the topics for the hearing).

The HELP Committee is charged with "study[ing] and review[ing], on a comprehensive basis, matters relating to health, education and training, and public welfare . . . ." *See supra* Part I (citing Senate Rules XXVI.1(*l*)(1)–(2)). "[T]he inquiry was intended to inform Congress in an area where legislation may be had. . . . [I]t is clear that the subpoena to discover [Dr. de la

---

[6] The Court has an independent obligation to determine whether subject-matter jurisdiction exists even though Dr. de la Torre has forfeited such a challenge. *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514 (2006).

Torre's] testimony may fairly be deemed within the [ C]ommittee's province." *Eastland*, 421

U.S. at 506–07 (cleaned up).

Dr. de la Torre tries to distinguish *Eastland* because he says that the Committee "knew,

before the Hearing, that Dr. de la Torre would not have provided any information." Opp. Mot.

Dismiss, ECF No. 21, at 21–22 n.4; Am. Compl. ¶¶ 4, 51–53, 71–74. But the relevant question

is *not* whether the witness intended to invoke his Fifth Amendment rights. Indeed, the Supreme

Court has blessed contempt-of-Congress convictions even for Bill-of-Rights-wielding-witnesses.

*See Barenblatt v. United States*, 360 U.S. 109, 134 (1959) (First Amendment challenge to a

contempt conviction); *In re Chapman*, 166 U.S. 661, 673 (1897) (on habeas review of a

contempt conviction, rejecting a Fifth Amendment Double Jeopardy challenge against a

predecessor contempt-of-Congress statute).

The "narrow" inquiry is whether the Committee was inquiring into a matter on which

"legislation may be had." *Eastland*, 421 U.S. at 506. And the answer to that question is

incontrovertibly yes. Dr. de la Torre has only argued that the investigation served no legislative

purpose because of his Fifth Amendment invocation, not that it was unrelated to the Committee's

realm of legislation. Opp. Mot. Dismiss at 13–23. While the Senate previously has declined to

call witnesses invoking their Fifth Amendment rights, Opp. Mot. Dismiss at 18–19, that is a

matter of discretion, not requirement. *See, e.g.*, *Chapman*, 166 U.S. at 673. Dr. de la Torre is

right that the Fifth Amendment does not evaporate in the face of a Congressional investigation,

but its protection does not extend to allowing suit against the Committee or its Members for

immune legislative acts. *See infra* Part IV (explaining the Fifth Amendment's role in

congressional-contempt convictions).

12

JA133

The D.C. Circuit noticed tension "[a]t first blush" between (1) the Supreme Court's direction to consider whether an investigation is relevant to a Committee's legislative realm, and (2) the Supreme Court's "refus[al] to question whether any rational legislative purpose could be served" by an immune legislative activity. *McSurely*, 521 F.2d at 1038–39. The problem disappears upon further examination: All that a Committee must do is have a "facially legitimate purpose in directing its investigation toward the problems" it is charged with solving; beyond that, "[i]t would appear impossible for the courts to make detailed assessments of the propriety of each individual item of information obtained from a particular source . . . without engaging in exactly the kind of inquiry into motives that the Speech or Debate Clause was intended to foreclose." *Id.* In other words, determining whether an investigation is a legislative activity turns on the objective relationship with the Committee's assignment, not the Committee's purpose in seeking the particular witness. The former inquiry is necessary to ensure that the investigation is an immune legislative act; the latter is prohibited once an action is deemed immune.

Finally, Dr. de la Torre also neglected to address a factually similar bankruptcy case—one of the few in which the Supreme Court found that a committee had *exceeded* its proper investigatory scope. *Kilbourn v. Thompson*, 103 U.S. 168 (1880); *see supra* note 6 (noting the Court's sua sponte duty to consider arguments against subject-matter jurisdiction). In *Kilbourn*, the Supreme Court concluded that a committee had authorized an improper investigation unrelated to its charter when it investigated an ongoing bankruptcy case. *Id.* at 194–205. The United States was a creditor. *Id.* at 194. "Some of the creditors, including the United States, were dissatisfied with the settlement." *McGrain v. Daugherty*, 273 U.S. 135, 170–71 (1927) (glossing *Kilbourn*). "The court pointed out that the resolution contained no suggestion of

13

JA134

contemplated legislation; [and] that the matter was one in respect to which no valid legislation could be had." *Id.* at 171. So the *Kilbourn* Court concluded that Congress was exercising "judicial power," which was solely vested in the judiciary, by interfering in a bankruptcy matter unrelated to its legislative purview. *Kilbourn*, 103 U.S. at 192–93. The Court approved of a writ of habeas corpus against the sergeant-at-arms who had arrested a witness for contempt of Congress during the investigation. *Id.* at 196.

The Supreme Court has confirmed since *Kilbourn* that the only similarity between it and this case is tangentially factual. The opinion has been cabined by several subsequent cases and oft-criticized for its "loose language." *See, e.g.*, *United States v. Rumely*, 354 U.S. 41, 46 (1953). As Dr. de la Torre points out, *Watkins* suggests that *Kilbourn* "teaches that such an investigation into individual affairs is invalid if unrelated to any legislative purpose." *Watkins*, 354 U.S. at 198. But *Eastland*, 20 years *after Watkins*, showed how to answer whether an investigation relates to a Committee's purview: "narrow[ly]." 421 U.S. at 506. More, *Eastland* firmly clarified that *Kilbourn* stands for the proposition that the "Sergeant at Arms was held unprotected" because the arrest "was not essential to legislating." *Eastland*, 421 U.S. at 508 (cleaned up). In sum, *Kilbourn* merely presents a case that involved an arrest that was not essential to legislating and an investigation wholly unrelated to the committee's charter. Neither condition exists here.

This case challenges acts that are either integrally essential to legislating—thus, immune—or that satisfy this Court's "narrow" review under *Eastland*. The HELP Committee was charged with investigating healthcare matters; this bankruptcy involved a large healthcare system. Def. Ex. A at 40 (stating that the system involved "more than 30 hospitals across eight states") (statement of Sen. Cassidy). Sen. Sanders clarified that the purpose was to assess the

14

role of private equity in the broader healthcare system, so he never claimed a desire to interfere in the pending bankruptcy.  *Id.* at 38–39; *see supra* Part I.  The investigation was "facially legislative."  *McSurely*, 521 F.2d at 1038–39.  Even if Dr. de la Torre had made the argument, it would not succeed.

### IV.

Dr. de la Torre contends that the test for whether an action is an immune legislative action turns on whether the action served a proper legislative purpose.  Opp. Mot. Dismiss at 14–23.[7]  And the HELP Committee's purpose, he argues, was improper.  It merely wanted to "pillory and degrade" him with a "forced public re-invocation" of his Fifth Amendment rights, "interspersed with accusatorial questioning and grandstanding."  *Id.* at 17, 20.  While this "might have served Defendants' political purposes, it served no legislative one."  *Id.* at 17.  More, he says, this "tarring and feathering" punished him for exercising his Fifth Amendment rights.  *Id.* at 22.

Dr. de la Torre's "familiar argument—made in almost every Speech or Debate Clause case"—that the "defendants' conduct cannot be legislative because it was, in his view, illegal," "has been rejected time and time again."  *Rangel*, 785 F.3d at 24.  Immunity applies even to an action that "if performed in other than legislative contexts, would in itself be unconstitutional or otherwise contrary to criminal or civil statutes."  *McMillan*, 412 U.S. at 312–13.  "The claim of an unworthy purpose does not destroy the privilege."  *Tenney*, 341 U.S. at 377.  Recall that the only purpose argument that could succeed would be that the Committee's investigation was completely unrelated to its legislative purview—a question that does not consider the purpose of an individual witness or his refusals to answer.  *See supra* Part III.

---

[7] The parties agree that the legislators' individual motives are irrelevant.  Mot. Dismiss at 44–45; Opp. Mot. Dismiss at 16 n.2; *accord Watkins*, 354 U.S. at 200.

The Supreme Court and the D.C. Circuit have refuted identical arguments that legislators' purpose was merely to harass and humiliate.  In *Eastland*, the Court rejected the argument that a committee's "sole purpose" was to "force public disclosure of beliefs, opinions, expressions and associations of private citizens which may be unorthodox or unpopular," so that the investigation was really intended to "harass, chill, punish and deter [the witnesses] in their exercise of their rights and duties under the First Amendment."  421 U.S. at 495, 509–10; *accord McSurely*, 521 F.2d at 1038.  In short, "[t]hose distressed by [a congressional] investigation ha[ve] no judicial remedy so long as Congress acted in a procedurally regular manner."  *Brown & Williamson Tobacco Corp. v. Williams*, 62 F.3d 408, 416 (D.C. Cir. 1995).

The Framers certainly knew the Clause's immunity privilege could be abused.  *See Schilling*, 633 F. Supp. 3d at 275–80.  The "risk of such abuse was the conscious choice of the Framers' buttressed and justified by history."  *Eastland*, 421 U.S. at 510.  The legislature's independence remained paramount because of the "harm that judicial interference may cause."  *Id.* at 511.

Dr. de la Torre relies on cases that stand for an entirely different proposition:  Illegal, non-legislative actions *flowing from* immune legislative acts may be reviewed.  "That the House could with impunity order an unconstitutional arrest afforded no protection for those who made the arrest . . . .  The Speech or Debate Clause could not be construed to immunize an illegal arrest even though directed by an immune legislative act."  *Gravel*, 408 U.S. at 618–19; *see id.* at 621 (applying the same logic if the legislators themselves executed an illegal arrest); *see McMillan*, 412 U.S. at 306–24 (finding legislative immunity for creating a committee report, but no immunity for publicly disseminating the report that contained children's private information); *Fields v. Off. of Eddie Bernice Johnson*, 459 F.3d 1, 10 ("The Speech or Debate Clause therefore

JA137

does not prohibit inquiry into illegal conduct simply because it has *some nexus* to legislative

functions . . . .") (cleaned up) (emphasis original); *United States v. Brewster*, 408 U.S. 501, 524

(1971) (holding that taking a bribe is not a legislative act); *United States v. Rose*, 28 F.3d 181,

186–89 (D.C. Cir. 1994) (holding that no immunity protected a congressman's testimony about

his own ethics violations).  Recall that these conclusions flow from the Constitution's text:  For

non-legislative acts, particularly those involving "Treason, Felony and Breach of Peace,"

immunity from both "question[ing]" and "Arrest" evaporates.  U.S. Const., art. I, § 6, cl.1.

Dr. de la Torre's challenge fails because he targets only immune actions, not reviewable

non-legislative ones.  As he points out, contumacious witnesses have successfully challenged

their arrests and convictions—non-legislative acts—after refusing to appear or answer questions

at congressional hearings.  *See, e.g.*, *Quinn v. United States*, 349 U.S. 155, 163–65 (1955)

(dismissing a contempt indictment based on a Fifth Amendment challenge); *Rumely*, 345 U.S. at

41 (affirming vacatur of contempt conviction after witness's First Amendment challenge);

*McGrain*, 273 U.S. at 176–82 (approving a contempt conviction on habeas review against an

improper-legislative-purpose challenge).  Exercising the contempt power through arrest or

conviction is not a legislative act.  *See Watkins*, 354 U.S. at 192 ("Unlike the English practice,

from the very outset the use of contempt power by the legislature was deemed subject to judicial

review.").  Much of the dicta Dr. de la Torre cites about Congress avoiding unnecessary inquiry

into private affairs arises in these arrest and conviction contexts.  *See Gravel*, 408 U.S. at 618

(stating, glossing *Kilbourn*, that "the [congressional] resolution was subject to judicial review

insofar as its execution impinged on a citizen's rights"); *see also McGrain*, 273 U.S. at 173

("[N]either house is invested with general power to inquire into private affairs and compel

disclosure . . . ."). But Dr. de la Torre has not been arrested or convicted, so there is no non-legislative action of this type to target.

Dr. de la Torre also sometimes conflates these cases' constitutional reasoning with their statutory reasoning. Many of them assessed whether the questions asked were "pertinent" to the committee's purpose because that is a dispositive issue in the contempt-of-Congress statute. 2 U.S.C. § 192 ("Every person who having been summoned as a witness by the authority of either House of Congress . . . who, having appeared, refuses to answer any question *pertinent to the question under inquiry*, shall be deemed guilty of a misdemeanor . . . .") (emphasis added); *e.g.*, *Watkins*, 354 U.S. at 207; *Quinn*, 349 U.S. at 156; *United States v. Bannon*, 101 F.4th 16, 25 (D.C. Cir. 2024). So even for reviewable non-legislative actions, what Dr. de la Torre calls the general "purpose" question can be both of constitutional stature and a creature of mere statutory interpretation. *See Quinn*, 349 U.S. at 160–70 (remanding with direction to acquit a witness convicted for contempt-of-Congress on *both* Fifth Amendment invocation grounds and lack of "pertinency" under the statute). And again, the statutory reasoning would only be relevant when interpreting the contempt statute after conviction.

Dr. de la Torre relies heavily on *Watkins* for the proposition that Congress may not "expose for the sake of exposure." *Watkins*, 354 U.S. at 200. But that case does not even mention the Speech and Debate Clause; it is a Due Process case invalidating a contempt conviction. *Id.* at 209–15. The conviction suffered from the "vice of vagueness" because the committee failed to show that the questions the witness refused to answer were "pertinent" to the inquiry as the contempt statute requires. *Id.* Two decades after *Watkins*, the Supreme Court cited it in the same passage declaring that purpose was irrelevant to the legislative-act inquiry: "If the mere allegation that a valid legislative act was undertaken for an unworthy purpose would

18

JA139

lift the protection of the Clause, then the Clause simply would not provide the protection historically undergirding it." *Eastland*, 421 U.S. at 508–09 (citing *Watkins* for the proposition that individual legislators' motives are irrelevant as well).[8]

      In sum, Dr. de la Torre's challenge cannot succeed here because this Court's review is limited to an arrest, conviction, or other *non-legislative* action to determine whether it impinged a citizen's rights. An act that is core to the legislative process is absolutely immune to any "question[]." *E.g.*, *Eastland*, 421 U.S. at 508–09. There is no non-legislative action here for Dr. de la Torre to challenge. He has not been convicted or arrested based on the Senate's criminal contempt resolution, the civil contempt resolution has not been enforced, and his vague reference to future enforcement does not suggest any other non-legislative actions from these named defendants. *See supra* Parts I–II. So he must save his fire for challenging a challengeable action.[9]

**V.**

      Dr. de la Torre also moves for jurisdictional discovery, which he insists will illuminate the Committee's true "purpose" for the investigation. Mot. Juris. Disco., ECF No. 20. Recall that district courts should allow a motion for jurisdictional discovery in a Speech or Debate Clause case unless they determine that either the "discovery [is] itself precluded by the Speech or

---

[8] Dr. de la Torre invokes *Trump v. Mazars* to argue that investigations are not immune when they are conducted for personal aggrandizement or punishing the investigated individual. Opp. Mot. Dismiss at 14–15; 591 U.S. 848 (2020). But that opinion rested on unique separation-of-powers concerns when committees subpoenaed the President's information. *Id.* at 853 ("We have never addressed a congressional subpoena for the President's information."). It has little bearing here.

[9] Both parties rely on cases about the Fifth Amendment's invocation before grand or petit juries. Opp. Mot. Dismiss at 18–21; Mot. Dismiss at 47–48. Those cases do not deal with the intersection between the Speech and Debate Clause and the Fifth Amendment, so they are inapt. *E.g.*, *Bowles v. United States*, 439 F.2d 536, 542 (D.C. Cir. 1970).

JA140

Debate Clause" or that "no facts that additional discovery could produce would affect the Speech-or-Debate Clause analysis." *Musgrave*, 104 F.4th at 365. This is such a case.

The Court has already reviewed all the documents it requires to determine that the investigation's purpose was "facially legislative." *McSurely*, 521 F.2d at 1038–39; *see supra* Parts I, III (reviewing the Senate Rules and Sen. Sanders's discussion of the investigation's relevance to the Committee's legislative task); Mot. Dismiss Reply, ECF No. 22, at 13. No further facts would affect this "narrow" inquiry. *Eastland*, 421 U.S. at 506.

Dr. de la Torre says that a list of six types of documents would reveal facts affecting the immunity inquiry. Reply Mot. Juris. Disco., ECF No. 25, at 18–20. But each targets the Committee's knowledge about his Fifth Amendment invocation. *Id.* Recall that the Committee's knowledge about a witness invoking the Fifth Amendment is irrelevant to whether these challenged acts are legislative. *See supra* Parts III–IV (illustrating that immunity applies even to "unconstitutional" legislative acts or legislative acts motivated by ill will). The immunity inquiry centers on whether an action is core to the legislative process, a question barnacled with binding precedent. *See supra* Part III. Fifth Amendment defenses would mainly be important to assessing a non-legislative action's validity, like an arrest or conviction, which are not at issue here. *See supra* Part IV.

Dr. de la Torre retorts that his jurisdictional discovery requests include non-legislative acts. Mot. Juris. Disco. at 16–17. For example, he says that the Committee's "public remarks and communications with members of the press" are outside the Speech or Debate Clause's protection. *Id.* at 16. He is right that these are not core legislative acts subject to immunity. *McMillan*, 412 U.S. at 311–19; *Brewster*, 408 U.S. at 512 (stating that "news letters to constituents, news releases, and speeches delivered outside Congress" are not "protected by the

JA141

Speech or Debate Clause"). But "when the actions upon which a plaintiff seeks to predicate liability are legislative acts, the Speech or Debate Clause operates as a jurisdictional bar, conferring absolute immunity from suit." *Musgrave*, 104 F.4th at 361. And each action Dr. de la Torre *challenges* is "a legislative act protected regardless of its purpose." *Id.* at 366; Am. Compl. at 31–32 (prayer for relief). Neither of his counts targets legislators' speech to the press or public addresses. Am. Compl. ¶¶ 67–89. So purpose-driven discovery into *non-legislative* acts cannot help him illuminate the status of legislative acts. *See MINPECO, S.A. v. Conticommodity Servs., Inc.*, 844 F.2d 856, 862 (D.C. Cir. 1988) ("As the preparation and the publication of the [] statement fall within the sphere of the subcommittee's [immune] legislative activities, the fact of its [non-legislative] transmittal [] does not entitle the [appellant] to the [discovery] information they seek."); *accord In re Sealed Case*, 80 F.4th 355, 367 (D.C. Cir. 2023).[10]

Finally, the Supreme Court has strongly admonished courts to tread carefully when authorizing discovery in Speech and Debate cases. Once an action is deemed legislative, immunity is "absolute." *Rangel*, 785 F.3d at 24. That immunity both provides "a defense on the merits" and "protects a legislator from the burden of defending himself." *Powell v. McCormack*, 395 U.S. 486, 502–03 (1969); *accord Eastland*, 421 U.S. at 503 (calling a "private civil action" a "distraction that forces Members to divert their time, energy, and attention from their legislative

---

[10] The parties debate whether *Jewish War Veterans* applies here. *Jewish War Veterans of the U.S. of Am., Inc. v. Gates*, 506 F. Supp. 2d 30 (D.D.C. 2007). That case dealt with the Establishment Clause, which required investigating "legislative purpose" under the then-applicable *Lemon* test. *Id.* at 43–46; Opp. Mot. Juris. Disco., ECF No. 23, at 18–19 n.2. The Speech and Debate Clause applied only when deciding which documents could be discovered for this legislative-purpose inquiry; in other words, the Speech and Debate protection in that case was only one of documentary privilege, not of immunity. *Jewish War Veterans*, 506 F. Supp. 2d at 54–55 ("The Members maintain that the Speech or Debate Clause allows them to resist producing the documents sought . . . ."). The production privilege is not jurisdictional, but immunity is. *Musgrave*, 104 F.4th at 361 ("Two strands of [the Speech or Debate Clause's] protection are relevant here. . . . [T]he immunity strand operates as a jurisdictional bar, whereas the privilege strand does not deprive the court of jurisdiction."). So the *Jewish War Veterans* discussion is orthogonal to the immunity analysis here.

21

tasks to defend the litigation"). "The privilege would be of little value if they could be subjected to the cost and inconvenience and distractions of a trial upon a conclusion of the pleader . . . ." *Tenney*, 341 U.S. at 377; *see Eastland*, 421 U.S. at 511 n.17 ("Although the Speech or Debate Clause has never been read so broadly that legislators are absolved of the responsibility of filing a motion to dismiss, [] the purpose which the Clause serves require that such motions be given the most expeditious treatment by district courts . . . .").

In short, "[b]ecause [Dr. de la Torre] has not shown that any requested discovery could produce information that would affect the Speech-or-Debate analysis, there is no basis [] to allow it." *Musgrave*, 104 F.4th at 366. Documents illuminating the Committee's knowledge about his Fifth Amendment invocation are irrelevant to the immunity question. The Court thus will deny Dr. de la Torre's motion for jurisdictional discovery.[11]

### VI.

For all these reasons, the Court will grant the Committee's motion to dismiss and deny Dr. de la Torre's motion for jurisdictional discovery. Dismissal will be without prejudice because the case is dismissed for want of subject-matter jurisdiction. *Jud. Watch v. Schiff*, 998 F.3d at 993 (doing so for a motion-to-dismiss in a Speech and Debate Clause case). An appropriate Order will issue today.

2025.09.16
10:42:13 -04'00'

Dated: September 16, 2025                          TREVOR N. McFADDEN, U.S.D.J.

---

[11] Dr. de la Torre's citations to foreign sovereign immunity precedent are inapt because those are governed by a complex statutory scheme rather than Speech and Debate Clause cases. Reply Mot. Juris. Disco. at 11.

JA143

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

---

**DR. RALPH DE LA TORRE, M.D.**,

Plaintiff,

v.                                                    Case No. 1:24-cv-02776 (TNM)

**BILL CASSIDY, M.D.**, in his capacity as
Chairman of the Committee on Health,
Education, Labor and Pensions of the United
States Senate, *et al.*,

Defendants.

---

**ORDER**

Upon consideration of Defendants' [18] Motion to Dismiss and Plaintiff's [20] Motion

for Discovery, the briefing related to these motions, the pleadings, and the relevant law, it is

hereby

**ORDERED** that Defendants' Motion to Dismiss is GRANTED without prejudice; it is

further

**ORDERED** that Plaintiff's [20] Motion for Discovery is DENIED.

The Clerk of Court is requested to close the case. This is a final, appealable order. *See*

Fed. R. App. P. 4(a).

**SO ORDERED**.

2025.09.16
10:40:40 -04'00'

Dated: September 16, 2025                    TREVOR N. McFADDEN, U.S.D.J.

JA144