[ORAL ARGUMENT NOT YET SCHEDULED]

IN THE UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT

————————

No. 25-5353

————————

RALPH DE LA TORRE, M.D.,

Appellant,

v.

BILL CASSIDY, in his capacity as Chairman of the Committee on
Health, Education, Labor, and Pensions of the United States Senate, *et al.*,

Appellees.

————————

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

————————

**BRIEF OF APPELLEES**

————————

MORGAN J. FRANKEL
morgan_frankel@legal.senate.gov
D.C. Bar #342022
Senate Legal Counsel

PATRICIA MACK BRYAN
D.C. Bar #335463
pat_bryan@legal.senate.gov
Deputy Senate Legal Counsel

THOMAS E. CABALLERO
thomas_caballero@legal.senate.gov
VIVIAN M. RIVERA
vivian_rivera@legal.senate.gov
Assistant Senate Legal Counsel

Office of Senate Legal Counsel
642 Hart Senate Office Building
Washington, D.C. 20510-7250
(202) 224-4435 (tel)

February 6, 2026                    Counsel for Appellees

# CERTIFICATE OF APPELLEES
## AS TO PARTIES, RULINGS, AND RELATED CASES

## A. Parties and Amici

This appeal arises from a civil action in the district court. Case No. 1:24-cv-02776 (TNM). Plaintiff-appellant is Dr. Robert de la Torre. Defendants-appellees are the Chairman, Ranking Minority Member, and Members of the United States Senate Committee on Health, Education, Labor, and Pensions, all of whom are sued in their official capacities, and the Committee itself.[1] No *amici curiae* appeared, and no parties intervened, below or, to date, in this Court.

## B. Ruling Under Review

Plaintiff appeals from the Order and accompanying Memorandum Opinion

---

[1] Plaintiff sued the Committee on Health, Education, Labor, and Pensions itself and 20 of the 21 Members then-serving on the Committee in the 118th Congress when the suit was filed. (The one Committee Member not sued was Senator Rand Paul, who was the only Member who did not vote on the resolutions that are a subject of this suit. While the appellate docket indicates that Senator Paul is a party to this appeal, he has never been added as a defendant to this action.) Subsequently, with the convening of the current 119th Congress, the Committee was expanded to 23 Members, and its membership adjusted, such that six of the original Senator defendants are no longer Members of the Committee (three are no longer in the Senate) and eight other Senators were newly appointed to the Committee. While the district court's Memorandum Opinion indicated that "[u]nder Federal Rule of Civil Procedure 25(d), these Senators sued in their official capacity [who no longer serve on the Committee] are automatically substituted with the current members of the HELP Committee, insofar as the membership has changed," ECF No. 26 at 1 n.1, it is not clear how or whether Fed. R. Civ. P. 25(d) on substituting public officers named as defendants in their official capacities applies in this situation.

issued on September 16, 2025 by District Judge Trevor N. McFadden granting

defendants' motion to dismiss plaintiff's amended complaint.  Docket Nos. 26 &

27, No. 1:24-cv-02776 (TNM), 800 F. Supp. 3d 54 (D.D.C. Sept. 16, 2025).

### C. Related Cases

This case has not previously been before this Court or any court other than

the district court.  Counsel for defendants-appellees are unaware of any other

related cases within the meaning of D.C. Circuit Rule 28(a)(1)(C).

## TABLE OF CONTENTS

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii

GLOSSARY . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . x

STATEMENT OF JURISDICTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

STATEMENT OF ISSUES PRESENTED FOR REVIEW . . . . . . . . . . . . . . . . . . 1

STANDARD OF REVIEW . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

STATEMENT OF THE CASE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

    A.    Introduction . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

    B.    Background . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

        1.    The HELP Committee's Investigative Authority . . . . . . . . . . 3

        2.    The Committee's Investigation of the Bankruptcy of Steward Health Care System and Issuance of the Subpoena to Dr. de la Torre . . . . . . . . . . . . . . . . . . . . . . . 5

        3.    Dr. de la Torre's Failure to Appear at the Committee Hearing . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

        4.    Senate Action to Certify Dr. de la Torre's Default to the U.S. Attorney for Proceedings under 2 U.S.C. §§ 192, 194 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

    C.    Plaintiff's Allegations . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

    D.    Proceedings Below . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

    E.    The District Court's Decision . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

SUMMARY OF ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

i

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

I.    THE DISTRICT COURT CORRECTLY HELD THAT THE
      SPEECH OR DEBATE CLAUSE BARS THIS SUIT . . . . . . . . . . . . . . . 16

      A.    The District Court Correctly Held That Senate
            Defendants Are Immune Under the Speech or Debate
            Clause. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

            1.    The Actions Challenged By Dr. de la Torre
                  Constitute Legislative Acts Under Well-
                  Established Precedent . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

            2.    Allegations of Improper Motive Cannot
                  Undermine Senate Defendants' Absolute
                  Immunity for These Facially Legislative Acts . . . . . . . . . . . 20

            3.    The District Court Did Not Fail to Analyze the
                  Legislative Nature of the Committee's Conduct. . . . . . . . . . 26

      B.    The District Court Followed Appropriate Procedure
            for Resolving Congressional Defendants' Assertion
            of Speech or Debate Clause Immunity . . . . . . . . . . . . . . . . . . . . . . . 28

II.   THE DISTRICT COURT DID NOT ABUSE ITS
      DISCRETION IN DENYING PLAINTIFF'S MOTION FOR
      LEAVE TO CONDUCT JURISDICTIONAL DISCOVERY. . . . . . . . . . . 33

III.  ALTERNATIVE GROUNDS EXIST FOR AFFIRMING
      THE DISMISSAL OF THIS SUIT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 38

      A.    Dr. de la Torre Lacks Standing to Bring His Claims . . . . . . . . . . . 38

      B.    Dr. de la Torre May Not Use a Civil Lawsuit as a
            Vehicle to Forestall a Criminal Proceeding . . . . . . . . . . . . . . . . . . 46

      C.    Dr. de la Torre's Amended Complaint Fails to State
            a Claim for Violation of His Fifth Amendment Rights. . . . . . . . . . 49

CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 54

ii

**TABLE OF AUTHORITIES**

**CASES**

*Allen v. Illinois*, 478 U.S. 364 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 50

*Arpaio v. Obama*, 797 F.3d 11 (D.C. Cir. 2015) . . . . . . . . . . . . . . . . . . . . . . . . 42

*Bank of Nova Scotia v. United States*, 487 U.S. 250 (1988) . . . . . . . . . . . . . . 50, 51

*Barenblatt v. United States*, 360 U.S. 109 (1959) . . . . . . . . . . . . . . . . . . . . . . . 35

*Bogan v. Scott–Harris*, 523 U.S. 44 (1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Bowles v. United States*, 439 F.2d 536 (D.C. Cir. 1970) . . . . . . . . . . . . . . . . . . 50

*Broidy Cap. Mgmt. LLC v. Muzin*, 12 F.4th 789 (D.C. Cir. 2021) . . . . . . . . . . . 32

*Brown & Williamson Tobacco Corp. v. Williams*, 62 F.3d 408
    (D.C. Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Clapper v. Amnesty Int'l USA*, 568 U.S. 398 (2013) . . . . . . . . . . . . . . . . . . . 38, 41

*Clyde v. Walker*, No. 22-5263, 2023 WL 6939987 (D.C. Cir. Oct.
    20, 2023). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

*Deaver v. Seymour*, 822 F.2d 66 (D.C. Cir. 1987). . . . . . . . . . . . . . . . . . 46, 47, 49

\* *Doe v. McMillan*, 412 U.S. 306 (1973) . . . . . . . . . . . . . . . . . . . . . . . . . . . 18-20

\* *Eastland v. U.S. Servicemen's Fund*, 421 U.S. 491 (1975). . . . 2, 4, 13, 14, 17-19,
                                                                    21, 23, 24, 27,
                                                                    29, 30, 34, 35

_____

\* Authorities upon which we chiefly rely are marked with asterisks.

*Fields v. Office of Eddie Bernice Johnson*, 459 F.3d 1 (D.C. Cir. 2006) . . . . 31, 32

*Fletcher v. United States*, 332 F.2d 724 (D.C. Cir. 1964) . . . . . . . . . . . . . . . . . . 50

*Foretich v. United States*, 351 F.3d 1198 (D.C. Cir. 2003) . . . . . . . . . . . . . . . 44, 45

*Gov't of V.I. v. Lee*, 775 F.2d 514 (3d Cir. 1985) . . . . . . . . . . . . . . . . . . . . . 32, 33

*Gravel v. United States*, 408 U.S. 606 (1972) . . . . . . . . . . . . . . . . . . . 13, 18, 19

*Gulf Coast Maritime Supply, Inc. v. United States*, 867 F.3d 123
    (D.C. Cir. 2017) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

*Haynes v. D.C. Water & Sewer Auth.*, 924 F.3d 519 (D.C. Cir. 2019) . . . . . . . . . . 2

*Helstoski v. Meanor*, 442 U.S. 500 (1979) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*In re Al-Nashiri*, 835 F.3d 110 (D.C. Cir. 2016) . . . . . . . . . . . . . . . . . . . . . . . . 47

*In re Grand Jury Investigation Into Possible Violations of Title 18*,
    587 F.2d 589 (3d Cir. 1978) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

*In re Sealed Case*, 80 F.4th 355 (D.C. Cir. 2021) . . . . . . . . . . . . . . . . . . . 14, 21, 36

*In re Sealed Case*, 829 F.2d 50 (D.C. Cir. 1987) . . . . . . . . . . . . . . . . . . . . . . . . 47

*Ivanenko v. Yanukovich*, 995 F.3d 232 (D.C. Cir. 2021) . . . . . . . . . . . . . . . . . . 32

*Jenkins v. Anderson*, 447 U.S. 231 (1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 50

*Jerome Stevens Pharms., Inc. v. FDA*, 402 F.3d 1249 (D.C. Cir. 2005) . . . . . . . . 28

*Jewish War Veterans of the U.S.A., Inc. v. Gates*, 506 F. Supp. 2d 30
    (D.D.C. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 38

*Judicial Watch, Inc. v. Schiff*, 474 F. Supp. 3d 305 (D.D.C. 2020) . . . . . . . . . . . 29

\* *Judicial Watch, Inc. v. Schiff*, 998 F.3d 989 (D.C. Cir. 2021). . . . . . . . 1, 17-19, 29

*Kilbourn v. Thompson*, 103 U.S. 168 (1881). . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Lemon v. Kurtzman*, 403 U.S. 602 (1971) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 38

*Lewis v. Mutond*, 62 F.4th 587 (D.C. Cir. 2023) . . . . . . . . . . . . . . . . . . . . . . . . 34

*Lujan v. Defs. of Wildlife*, 504 U.S. 555 (1992) . . . . . . . . . . . . . . . . . . . . . . . . 39

*Manafort v. U.S. Dep't of Justice,* 311 F. Supp. 3d 22 (D.C. Cir. 2018) . . . . . . . 47

*Massie v. Pelosi*, 590 F. Supp. 3d 196 (D.D.C. 2022) . . . . . . . . . . . . . . . . . . . . . 29

\* *Massie v. Pelosi*, 72 F.4th 319 (D.C. Cir. 2023) . . . . . . . . . . . . . 19, 20, 28, 29, 31

*McBryde v. Comm. to Review Cir. Council Conduct and
     Disability Orders of the Jud. Conf. of the U.S.*,
     264 F.3d 52 (D.C. Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 44

*McCarthy v. Pelosi*, 480 F. Supp. 3d 28 (D.D.C. 2020) . . . . . . . . . . . . . . . . . . . 29

\* *McCarthy v. Pelosi*, 5 F.4th 34 (D.C. Cir. 2021) . . . . . . . . . . . . . . . 17, 18, 20, 29

*McGrain v. Daugherty*, 273 U.S. 135 (1927) . . . . . . . . . . . . . . . . . . . . . . . . . 3, 19

*McSurely v. McClellan ("McSurely I")*, 553 F.2d 1277
     (D.C. Cir. 1976) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22, 23

*McSurely v. McClellan ("McSurely II")*, 753 F.2d 88
     (D.C. Cir. 1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

*Meadows v. Pelosi*, 639 F. Supp. 3d 62 (D.D.C. 2022). . . . . . . . . . . . . . . . . . . . 22

*Miranda v. Gonzales*, 173 F. App'x 840 (D.C. Cir. 2006) . . . . . . . . . . . . . . . . . . 47

*Musgrave v. Warner*, No. 21-cv-2198 (BAH), 2022 WL 4245489
(D.D.C. Sept. 15, 2022) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

\* *Musgrave v. Warner*, 104 F.4th 355 (D.C. Cir. 2024) . . . . . . . . 14, 15, 18, 19, 21,
29, 30, 34, 36

*North v. Walsh*, 656 F. Supp. 414 (D.D.C. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . 47

*Pauling v. Eastland*, 288 F.2d 126 (D.C. Cir. 1960) . . . . . . . . . . . . . . . . . . . . . . 40

*Porteous v. Baron*, 729 F. Supp. 2d 158 (D.D.C. 2010) . . . . . . . . . . . . . . . . . . . 29

*Powell v. McCormack*, 395 U.S. 486 (1969) . . . . . . . . . . . . . . . . . . . . . . 15, 29, 34

*Raines v. Byrd*, 521 U.S. 811 (1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 39

*Rangel v. Boehner*, 20 F. Supp. 3d 148 (D.D.C. 2013) . . . . . . . . . . . . . . . . . 43, 44

\* *Rangel v. Boehner*, 785 F.3d 19 (D.C. Cir. 2015) . . . . . . . . . . . . . 21, 28, 30, 43, 44

*Saline Parents v. Garland*, 88 F.4th 298 (D.C. Cir. 2023) . . . . . . . . . . . . . . . . . 45

*Schilling v. Speaker of U.S. House of Representatives*, 633
F. Supp. 3d 272 (D.D.C. 2022) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

*Schilling v. U.S. House of Representatives*, 102 F.4th 503 (D.C. Cir. 2024) . . . . 29

*Senate Permanent Subcomm. on Investigations v. Ferrer*, 856 F.3d
1080 (D.C. Cir. 2017) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 42

*Simon v. E.Ky. Welfare Rts. Org.,* 426 U.S. 26 (1976) . . . . . . . . . . . . . . . . . . . . 42

*Spokeo, Inc. v. Robins*, 578 U.S. 330 (2016) . . . . . . . . . . . . . . . . . . . . . . . . . . . 39

*Taylor v. FDIC*, 132 F.3d 753 (D.C. Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . 43

*Trump v. Mazars USA, LLP*, 591 U.S. 848 (2020) . . . . . . . . . . . . . . . . . . . . 3, 4, 19

*United States v. Bannon,* 101 F.4th 16 (D.C. Cir. 2024) . . . . . . . . . . . . . . . . . . 49

*United States v. Brewster*, 408 U.S. 501 (1972) . . . . . . . . . . . . . . . . . . . . . . . 31, 32

*United States v. Cefalu,* 338 F.2d 582 (7th Cir. 1964) . . . . . . . . . . . . . . . . . . . 50

*United States v. Dowdy*, 479 F.2d 213 (4th Cir. 1973) . . . . . . . . . . . . . . . . . . . 30

*United States v. Duran*, 884 F. Supp. 573 (D.D.C. 1995) . . . . . . . . . . . . . . . . . 50

*United States v. Friedman,* 445 F.2d 1076 (9th Cir. 1971) . . . . . . . . . . . . . . . . 50

*United States v. Menendez*, 831 F.3d 155 (3d Cir. 2016) . . . . . . . . . . . . . . . 32, 33

*United States v. Navarro*, 651 F. Supp. 3d 212 (D.D.C. 2023) . . . . . . . . . . . . . 49

*United States v. Reese*, 561 F.2d 894 (D.C. Cir. 1977) . . . . . . . . . . . . . . . . . . . 50

*United States v. Rostenkowski*, 59 F.3d 1291 (D.C. Cir. 1995) . . . . . . . . . . . . . . 31

*United States v. Texas*, 599 U.S. 670 (2023) . . . . . . . . . . . . . . . . . . . . . . . . . . . 38

*Watkins v. United States*, 354 U.S. 178 (1957) . . . . . . . . . . . . . . . . . . . . . . . . 3, 22

*Whitmore v. Arkansas,* 495 U.S. 149 (1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . 41

*Wilkinson v. United States*, 365 U.S. 399 (1961) . . . . . . . . . . . . . . . . . . . . . . . . 22

*Williams v. Big Picture Loans, LLC*, 929 F.3d 170 (4th Cir. 2019) . . . . . . . . . . 32

*Younger v. Harris,* 401 U.S. 37 (1971) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 46

**STATUTES**

2 U.S.C. § 192 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 48, 49

2 U.S.C. § 194 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 40, 49

## CONSTITUTIONAL AUTHORITIES

U.S. Const. art. I, § 5, cl. 2 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

U.S. Const. art. I, § 6, cl. 1 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 17

## CONGRESSIONAL MATERIALS

*Backpage.com's Knowing Facilitation of Online Sex Trafficking: Hearing before the Permanent Subcomm. on Investigations of the Senate Comm. on Homeland Security and Governmental Affairs*, S. Hrg. No. 115-6, 115th Cong. (2017) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 53

*Mismanagement of Contracts at Arlington National Cemetery: Hearing before the Ad Hoc Subcomm. on Contracting Oversight of the Senate Comm. on Homeland Security and Governmental Affairs*, S. Hrg. No. 111-1008, 111th Cong. (2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 52

*No Guarantees: As Pension Plans Crumble, Can PBGC Deliver? Hearing before the Special Comm. on Aging*, S. Hrg. No. 111-153, 111th Cong. (2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 53

*Proceeding Against Dr. Ralph de la Torre for Contempt of the Senate*, Report of the Senate Committee on Health, Education, Labor, and Pensions, S. Rep. No. 118-230 (2024) . . . . . . . . . . . . . . . . . . . . . . . . 5-8

S. Res. 837, 118th Cong. (2024) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Senate Rule XXV.1(*l*)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Senate Rule XXV.1(*l*)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Senate Rule XXVI.1 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Tax Haven Banks and U.S. Tax Compliance: Hearings before the Permanent Subcomm. on Investigations of the Senate Comm. on Homeland Security and Governmental Affairs*, S. Hrg. No. 110-614, 110th Cong. (2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 53

*The Hidden Operators of Deceptive Mailings: Hearing before the Permanent Subcomm. on Investigations of the Senate Comm. on Governmental Affairs*, S. Hrg. No. 106-181, 106th Cong. (1999) . . . . . . . 52

## MISCELLANEOUS AUTHORITIES

Mark Arsenault and Jessica Bartlett, *Steward Health Care CEO Ralph de la Torre Will Resign*, THE BOSTON GLOBE (Sept. 28, 2024) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 43

# GLOSSARY

HELP Committee      U.S. Senate Committee on Health, Education, Labor, and Pensions

JA      Joint Appendix

## STATEMENT OF JURISDICTION

This Court has jurisdiction, under 28 U.S.C. § 1291, over this appeal from the district court's September 16, 2025 Order dismissing Plaintiff-Appellant's amended complaint for lack of subject matter jurisdiction based on the Speech or Debate Clause of the Constitution. Plaintiff-Appellant timely appealed on October 1, 2025.

## STATEMENT OF ISSUES PRESENTED FOR REVIEW

This appeal presents three issues for review:

1) Whether the district court correctly held that it lacked jurisdiction over this suit because the claims asserted challenge legislative actions for which Senate Defendants-Appellees are absolutely immune under the Speech or Debate Clause;

2) Whether the district court's denial of Plaintiff-Appellant's motion for leave to conduct jurisdictional discovery was an abuse of discretion; and

3) Whether dismissal of the amended complaint should be affirmed on the alternative grounds that Plaintiff-Appellant lacks Article III standing, that under federal law he may not use a civil lawsuit as a vehicle to forestall a criminal proceeding, and that his amended complaint fails to state a claim.

## STANDARD OF REVIEW

Grant of a motion to dismiss for lack of jurisdiction on Speech or Debate Clause grounds is reviewed *de novo*. *See Judicial Watch, Inc. v. Schiff*, 998 F.3d

989, 991 (D.C. Cir. 2021).  Denial of a request for discovery is reviewed for abuse of discretion.  *See Haynes v. D.C. Water & Sewer Auth.*, 924 F.3d 519, 523 (D.C. Cir. 2019).

## STATEMENT OF THE CASE

### A.    Introduction

The Speech or Debate Clause of the Constitution provides congressional defendants absolute immunity from lawsuits questioning their legislative activities.  Fifty years ago, the Supreme Court held this immunity extended to suits against Members of Congress for issuing subpoenas in a legislative investigation, even when plaintiffs claim that the subpoena violated their constitutional rights. *Eastland v. U.S. Servicemen's Fund*, 421 U.S. 491 (1975).  The Court explained that the Clause "forbid[s the] invocation of judicial power to challenge the wisdom of Congress's use of its investigative authority," *id.* at 511, and, thus, forecloses any suit challenging facially legislative investigative activities.

The district court correctly held that "this is one of those suits."  Opinion at 1 [JA 122].  Dr. de la Torre sues a Senate committee and its Members challenging the subpoena issued to him, the Committee's ruling requiring his attendance at a hearing, and the Committee's reporting to the Senate a resolution to certify his default on the subpoena to the U.S. Attorney, claiming that these actions violated his constitutional rights.  All of these Committee actions, under clear precedent of

2

the Supreme Court and this Circuit, are facially legislative acts for which Senate

Defendants are absolutely immune under the Clause.  Accordingly, the Court

should reject Dr. de la Torre's attempt to invoke judicial power against Members

of Congress to question these legislative acts and affirm dismissal of this suit for

lack of jurisdiction on Speech or Debate Clause grounds.

**B.      Background**

**1.      The HELP Committee's Investigative Authority**

The Supreme Court has long recognized that "[t]he power of the Congress

to conduct investigations is inherent in the legislative process[,]" *Watkins v.*

*United States*, 354 U.S. 178, 187 (1957), for "[w]ithout information, Congress

would be shooting in the dark, unable to legislate wisely or effectively."  *Trump v.*

*Mazars USA, LLP*, 591 U.S. 848, 862 (2020) (internal quotation marks omitted).

Congress's investigatory power is broad, "encompass[ing] inquiries into the

administration of existing laws, studies of proposed laws, and 'surveys of defects

in our social, economic or political system for the purpose of enabling the

Congress to remedy them.'" *Id.* (quoting *Watkins*, 354 U.S. at 187).  That

investigative power includes the ability to compel production of information in aid

of the legislative function, *see McGrain v. Daugherty*, 273 U.S. 135, 174-75

(1927), and the "[i]ssuance of subpoenas . . . has long been held to be a legitimate

3

use by Congress of its power to investigate." *Eastland*, 421 U.S. at 504; *accord Mazars USA*, 591 U.S. at 862.

The Senate, acting under the Constitution's Rulemaking Clause, art. I, § 5, cl. 2, has established standing committees, including the Committee on Health, Education, Labor, and Pensions ("HELP Committee" or "the Committee"), and has empowered "[e]ach such committee" to "make investigations into any matter within its jurisdiction," and "report such hearings as may be had by it." Rule XXVI.1 of the Standing Rules of the Senate, *reprinted in* Senate Manual, S. Doc. No. 118-1, at 41 (2024), *available at* www.govinfo.gov/content/pkg/ CDOC-118sdoc1/pdf/CDOC-118sdoc1.pdf.  In conducting such investigations, the Senate authorizes committees "to hold [] hearings," "to take [] testimony," and "to require by subpoena or otherwise the attendance of [] witnesses and the production of [] correspondence, books, papers, and documents[.]" *Id.*

The Senate has assigned the HELP Committee jurisdiction over "[m]easures relating to education, labor, health, and public welfare," Senate Rule XXV.1(*l*)(1), *reprinted in* Senate Manual, S. Doc. No. 118-1, at 33-34, and directed the Committee to "study and review, on a comprehensive basis, matters relating to health, education and training, and public welfare, and report thereon from time to time." Senate Rule XXV.1(*l*)(2).

### 2. The Committee's Investigation of the Bankruptcy of Steward Health Care System and Issuance of the Subpoena to Dr. de la Torre

Steward Health Care System, LLC ("Steward Health"), was founded in 2010 by Dr. Ralph de la Torre, who served as its Chairman and CEO.  Am. Compl. ¶ 1 [JA 41].  Steward Health acquired several hospitals in 2010 and then expanded to own hospitals in other states.  *Id.* ¶ 43 [JA 56].  On May 6, 2024, Steward Health filed for chapter 11 bankruptcy.  *Id.* ¶¶ 2, 44-46 [JA 45, 56-57].

The HELP Committee initiated an investigation into the cause and effects of Steward Health's bankruptcy.  As Dr. de la Torre declined to appear voluntarily, the Committee voted to authorize its Chair, Senator Sanders, to subpoena his attendance and testimony at a Committee hearing on September 12, 2024; the Chairman issued the subpoena on July 25, 2024.  *See Proceeding Against Dr. Ralph de la Torre for Contempt of the Senate*, Report of the Senate Committee on Health, Education, Labor, and Pensions, S. Rep. No. 118-230, at 2 (2024) ("HELP Committee Report") [JA 77]; Am. Compl. ¶ 48 [JA 58].[2]

On September 4, eight days before the hearing, Dr. de la Torre's counsel notified the Committee that "Dr. de la Torre [would] not participate in the Committee's September 12, 2024 hearing," as "recent developments . . .

---

[2] Senator Sanders then served as Chairman and Senator Cassidy as Ranking Member.  In January 2025, Senator Cassidy became Chairman, and Senator Sanders now serves as Ranking Member.

necessitate that [his] testimony be postponed," and urged the Committee to "reschedule its hearing for a more appropriate date after the conclusion of Steward's bankruptcy proceedings." Letter from Alexander J. Merton to Chairman Sanders, Sept. 4, 2024, *reprinted in* HELP Committee Report at 14, App. III [JA 87-89]. Counsel offered four reasons Dr. de la Torre would not attend. Three related to issues surrounding the pending bankruptcy proceedings. The fourth reason was that requiring him to testify "smacks of a veiled attempt to sidestep Dr. de la Torre's constitutional rights by seeking sworn testimony on matters for which the Committee has pre-determined his guilt[,]" and therefore, "would be inconsistent with . . . [his] core constitutional rights." *Id.* [JA 89].

The Chair and Ranking Member, on behalf of the Committee, promptly responded the next day, informing counsel that "[t]o the extent your letter is either a request for Dr. de la Torre to be excused or an objection to appearing before the Committee, that request is denied and any objection to attending the hearing overruled." *Id.* at 28 [JA 103]. Regarding Dr. de la Torre's constitutional rights, the Chair and Ranking Member explained that "[t]he Fifth Amendment privilege against self-incrimination . . . does not permit witnesses to refuse to appear when summoned to testify before a congressional committee, but, rather, that constitutional privilege must be asserted by witnesses in declining to answer specific questions put to them." *Id.* Accordingly, "the Committee rejects any

suggestion that Dr. de la Torre can refuse to appear for testimony before the Committee on this ground." *Id.* at 28-29 [JA 103-04]. The letter assured that "the Committee respects the constitutional rights of witnesses," but "requires that the witness appear and assert the privilege in response to specific questions." *Id.* at 29 [JA 104].

### 3. Dr. de la Torre's Failure to Appear at the Committee Hearing

On September 12, 2024, the Committee convened its hearing "Examin[ing] the Bankruptcy of Steward Health Care, Focusing on How Management Decisions Have Impacted Patient Care." 170 Cong. Rec. D875 (daily ed. Sept. 12, 2024). In his opening statement, Chairman Sanders explained that "[t]he collapse of Steward Healthcare [sic] is just one extreme example of the damaging role[,] in my view, that private equity is having on our healthcare system," and "[t]he issue of private equity and healthcare is an issue this committee must look into." HELP Committee Report at 37, 38 [JA 112-13]. Ranking Member Cassidy pointed out that "Steward's bankruptcy has nationwide implications impacting more than 30 hospitals across eight states," and the Committee sought to understand what occurred because "[w]e need to keep this from happening again." *Id.* at 39-40 [JA 114-15]. To do that, the Committee "need[s] answers" in order to gather the necessary facts "to inform legislative solutions." *Id.* at 40 [JA 115]. Following opening statements, the Chair called the first witness, Dr. de la Torre, and noted

that he was not present in default of the subpoena.  *See id.* at 41 [JA 116].

> **4.    Senate Action to Certify Dr. de la Torre's Default to the U.S. Attorney for Proceedings under 2 U.S.C. §§ 192, 194**

After the September 12, 2024 hearing, the Committee considered and voted on reporting to the Senate two resolutions addressing Dr. de la Torre's failure to obey the subpoena: (1) a resolution authorizing the President of the Senate to certify to the U.S. Attorney for presentation to a grand jury the HELP Committee Report regarding Dr. de la Torre's refusal to appear, and (2) a resolution directing Senate Legal Counsel to initiate a civil action to enforce the subpoena.  On September 19, the Committee agreed, by votes of 20-0, to both resolutions. Chairman Sanders reported Senate Resolution 837, to certify Dr. de la Torre's default to the U.S. Attorney, with the accompanying HELP Committee Report. *See* Am. Compl. ¶ 61 [JA 63]; 170 Cong. Rec. S6332 (daily ed. Sept. 23, 2024); HELP Committee Report at 3 [JA 78].  That resolution provides:

> [P]ursuant to sections 102 and 104 of the Revised Statutes (2 U.S.C. 192, 194), the President of the Senate shall certify the report of the Committee on Health, Education, Labor, and Pensions of the Senate, detailing the refusal of Dr. Ralph de la Torre, Chairman and Chief Executive Officer of Steward Health Care Systems LLC, to appear and testify before the Committee, to the United States Attorney for the District of Columbia, to the end that Dr. de la Torre be proceeded against in the manner and form provided by law.

*See* S. Res. 837, 118th Cong. (2024), *reprinted in* 170 Cong. Rec. S6334 (daily ed.

8

Sept. 23, 2024).[3]

On September 25, the Senate agreed by voice vote to Senate Resolution 837, 170 Cong. Rec. S6407; Am. Compl. ¶ 63 [JA 64], and the President Pro Tempore of the Senate made the certification as directed.[4]

## C. Plaintiff's Allegations

On September 30, 2024, Dr. de la Torre filed suit against the HELP Committee, then-Chairman Sanders, then-Ranking Member Cassidy, and 18 additional Committee Members who voted to report S. Res. 837 (collectively "Senate Defendants"), ECF No. 1, Sept. 30, 2024; [JA 12-40], and subsequently filed an amended complaint [JA 41-72]. The amended complaint alleges that the

---

[3] On September 18, a day before the Committee meeting to consider the resolutions and six days after the hearing, Dr. de la Torre's counsel sent a second letter reiterating the earlier concerns and stating that "on the advice of counsel, Dr. de la Torre invokes his procedural and substantive rights under the Fifth Amendment of the Constitution[.]" Letter to Chairman Sanders from Alexander J. Merton, Sept. 18, 2024, *reprinted in* 170 Cong. Rec. S6406 (daily ed. Sept. 25, 2024); Am. Compl. ¶ 57 [JA 61]. In response, the Chairman and Ranking Member reminded counsel that "had Dr. de la Torre appeared" as required by the subpoena, "he would have had a full opportunity to assert his Fifth Amendment right against self-incrimination in response to questions posed to him by members of the Committee that implicated that right." Letter to Alexander J. Merton from Chairman Sanders and Ranking Member Cassidy, Sept. 25, 2024, *reprinted in* 170 Cong. Rec. S6406 (daily ed. Sept. 25, 2024). Instead, "Dr. de la Torre willfully placed himself in default of the Committee's subpoena[,]" and counsel's post-hearing letter "does not cure [his] default." *Id.*

[4] No action was taken on the resolution authorizing a civil action to enforce the subpoena.

9

Committee exceeded its authority and violated Dr. de la Torre's Fifth Amendment right by requiring his appearance at the hearing and by reporting to the Senate resolutions regarding his default.  Am. Compl. ¶¶ 6, 12, 63 [JA 47, 50, 64].

The amended complaint asserts two legal claims.  Count I claims the subpoena "lacks a valid legislative purpose[,]" *id.* ¶ 73 [JA 67], and, therefore, the subpoena and "Defendants' actions to enforce the Subpoena . . . are invalid *ultra vires* actions that lacked proper congressional authority."  *Id.* ¶ 77 [JA 68-69] and Count I [JA 66-69].  Count II asserts that, once Dr. de la Torre indicated his intent to invoke the Fifth Amendment, the Committee's "attempt to compel [his] sworn testimony" at the hearing and "to punish [him]" for failing to appear violated his Fifth Amendment right.  *Id.* ¶¶ 79-86, Count II [JA 69-71].

For relief, the amended complaint requests that the court: (a) "enter[] an Order quashing the subpoena"; (b) declare that the subpoena and subsequent actions to enforce it "invalid as *ultra vires* and unconstitutional," and "that the vote of the Committee . . . approving the Contempt Resolutions" and "presenting S. Res. 837 for a full Senate vote" violated "Dr. de la Torre's Fifth Amendment rights"; and (c) enjoin the Committee "from attempting to civilly enforce the . . . Subpoena" and "from causing Dr. de la Torre to suffer from additional punishment for invoking his Fifth Amendment rights[.]" Am. Compl. at 31-32, Prayer for Relief [JA 71-72].

10

### D.    Proceedings Below

Senate Defendants moved to dismiss the amended complaint on the grounds that: they are immune from this suit under the Speech or Debate Clause; Dr. de la Torre lacks Article III standing to sue them; Dr. de la Torre may not use a civil lawsuit to forestall a potential criminal proceeding; and the amended complaint fails to state a claim as Senate Defendants' actions did not violate his Fifth Amendment rights as a matter of law.  ECF No. 18.  On January 2, 2025, Dr. de la Torre moved for leave to conduct jurisdictional discovery.  ECF No. 20.  On September 16, 2025, the court issued a Memorandum Opinion [JA 122-143] and Order [JA 144] granting Senate Defendants' motion to dismiss and denying Plaintiff's motion for jurisdictional discovery.

### E.    The District Court's Decision

The district court held it lacked jurisdiction over this suit because the Speech or Debate Clause provides Senate Defendants with "absolute immunity from suits based on legislative actions."  Opinion at 1 [JA 122].

Initially, the court noted that a motion to dismiss on Speech or Debate Clause grounds raises an issue of subject matter jurisdiction, *id.* at 4 [JA 125], and plaintiff "bears the burden of proving federal subject-matter jurisdiction[.]" *Id.* at 5 [JA 126].  Applying the test for Speech or Debate Clause immunity, the court held that the actions by the Committee and its Members challenged by Dr. de la Torre

11

are all "[e]qually immune" from suit. *Id.* at 8-9 [JA 129-30] (citations omitted).

The court rejected Dr. de la Torre's arguments that the Clause's immunity does not apply because the Committee's actions allegedly violated his Fifth Amendment right and were "illegal." *Id.* at 12 [JA 133]. The court pointed out that the fact he claims a Fifth Amendment violation does not "allow[] suit against the Committee or its Members for immune legislative acts." *Id.* As to his argument that Senate Defendants' actions were not "legislative acts" because they were "illegal," the court followed established precedent recognizing that "immunity applies even to an action that . . . in other than legislative contexts[] would in itself be unconstitutional or otherwise contrary to criminal or civil statutes." *Id.* at 15 [JA 136] (internal quotation marks and citations omitted).

Finally, the court denied Dr. de la Torre's motion for jurisdictional discovery because the court had a sufficient record "to determine that the investigation's purpose was 'facially legislative,'" and "[n]o further facts would affect this 'narrow' inquiry." *Id.* at 20 [JA 141] (internal citations omitted). The court concluded that Dr. de la Torre failed to show that any requested discovery could produce information that "would affect the Speech-or-Debate analysis[.]" *Id*. at 22 [JA 143].[5]

---

[5] While not material to the court's decision, Senate Defendants note that the district court mistakenly interpreted the Speech or Debate Clause as not covering

(continued...)

12

**SUMMARY OF ARGUMENT**

**I.**    Applying well-established Supreme Court and D.C. Circuit precedent, the district court correctly held the Speech or Debate Clause provides Senate Defendants with absolute immunity for the legislative acts challenged by Dr. de la Torre and, therefore, the court lacked jurisdiction over his suit.

**A.**    The Speech or Debate Clause provides Members of Congress, as well as congressional committees, with absolute immunity "against civil as well as criminal" proceedings for all actions within the "legitimate legislative sphere." *Eastland*, 421 U.S. at 502-03.  The legislative sphere includes all activities that are "part of the deliberative and communicative processes by which Members participate in committee and House proceedings with respect to the consideration and passage or rejection of proposed legislation or with respect to other matters which the Constitution places within the jurisdiction of either House." *Gravel v. United States*, 408 U.S. 606, 625 (1972).

Under that test and in light of applicable precedent, the Committee's actions

---

[5](...continued)
acts of "treason, felony, and breach of the peace."  Opinion at 7, 17 [JA 128, 138]. The exception for such crimes, however, applies *only* to the privilege from arrest, not to the immunity provided by the Speech or Debate Clause.  *See* U.S. Const. art. I, § 6, cl. 1 ("[Senators and Representatives] shall in all Cases, *except Treason, Felony and Breach of the Peace,* be privileged from Arrest during their Attendance at the Session of their respective Houses, and in going to and returning from the same; and for any Speech or Debate in either House, they shall not be questioned in any other Place.") (emphasis added).

challenged by Dr. de la Torre – issuing a subpoena for testimony, overruling his objections and declining to excuse his appearance, convening and speaking at a hearing, preparing and introducing resolutions and a Committee Report regarding his default, and voting to refer those resolutions and Report to the Senate – all fall squarely within the scope of Speech or Debate Clause immunity.

Dr. de la Torre attempts to evade immunity by claiming the Committee's motive in overruling his objections and compelling his attendance was solely to punish and harass him by forcing him to invoke the Fifth Amendment in a public hearing, serving no legislative function. This argument is foreclosed by binding precedent that precludes reviewing the motives of congressional defendants to determine whether their actions had a legislative purpose. *See Eastland*, 421 U.S. at 508; *Musgrave v. Warner*, 104 F.4th 355, 365 (D.C. Cir. 2024); *In re Sealed Case*, 80 F.4th 355, 365 (D.C. Cir. 2021). Hence, plaintiff's allegations of improper motive do not undermine the district court's conclusion that Senate Defendants are absolutely immune from this suit.

**B.** Far from "shifting" any burden to Dr. de la Torre to "disprove" the application of Speech or Debate Clause immunity, *see* Appellant's Br. at 15-23, the district court followed the well-established procedure for resolving a motion asserting immunity under the Clause. Namely, congressional defendants asserting immunity bear "the responsibility of filing a motion to dismiss" to demonstrate the

14

Clause's applicability, and, having done so, the court must then "determine the applicability of the clause to plaintiff's action." *Powell v. McCormack*, 395 U.S. 486, 505 n.25 (1969).

That procedure was precisely how the district court proceeded here. Senate Defendants moved to dismiss based on immunity, and the court proceeded to determine whether they had shown, based on the record and applying precedent, that the challenged actions constituted legislative acts to which immunity attached. Opinion at 7-9 [JA 128-30]. Concluding that Senate Defendants had done so, the court then considered Dr. de la Torre's arguments against the Clause's application and concluded they were without merit. Dr. de la Torre offers no explanation for how the proceedings in this case differed from numerous prior Speech or Debate Clause cases in this Circuit challenging facially legislative activities.

**II.** The district court did not abuse its discretion in denying Dr. de la Torre's motion for jurisdictional discovery. Under *Musgrave*, 104 F.4th at 365, jurisdictional discovery in a Speech or Debate Clause case is properly denied when "the discovery [is] itself precluded by the Speech or Debate Clause" or "no facts that additional discovery could produce would affect the Speech-or-Debate-Clause analysis." The district court correctly found that the record here sufficed to establish that Senate Defendants' actions were legislative, and Dr. de la Torre "has not shown that any requested discovery could produce information that would

15

affect the Speech-or-Debate analysis." Opinion at 22 [JA 143].

Dr. de la Torre's contrary arguments are unavailing. His argument that the burden imposed on him merited discovery misunderstands the Speech or Debate Clause inquiry, which focuses on the legislative nature of the acts themselves, acts which here are clear on their face as a matter of law. His attempt to probe the motives of the Members in summoning him is misguided, because clear precedent makes such inquiry irrelevant. None of his arguments demonstrates any error, much less an abuse of discretion, in the court's denial of the intrusive discovery he requested.

**III.**    The Court may also affirm on three alternative grounds. First, Dr. de la Torre lacks standing as his amended complaint fails to allege any legally cognizable injury traceable to Senate Defendants and redressable by any legally-permissible judgment against them. Second, this lawsuit improperly attempts to use a civil suit to interfere with and foreclose a possible future criminal proceeding. Third, the amended complaint fails to state a claim because the Committee did not violate Dr. de la Torre's Fifth Amendment rights.

**ARGUMENT**

**I.    THE DISTRICT COURT CORRECTLY HELD THAT THE SPEECH OR DEBATE CLAUSE BARS THIS SUIT**

Applying well-established Supreme Court and D.C. Circuit precedent, the district court correctly held that Senate Defendants are absolutely immune under

16

the Speech or Debate Clause from Dr. de la Torre's lawsuit.  Dr. de la Torre

asserts error on two grounds: (1) that the court incorrectly determined that Senate

Defendants' activities at issue here, including overruling Dr. de la Torre's

objection and not excusing his appearance after his counsel had raised the Fifth

Amendment right against self-incrimination, were legislative acts subject to the

Clause's immunity, and (2) that the court inappropriately placed on him the burden

to prove Senate Defendants are not immune from this lawsuit under the Speech or

Debate Clause.  Neither argument has any merit.

> **A.      The District Court Correctly Held That Senate Defendants Are Immune Under the Speech or Debate Clause**

The Speech or Debate Clause provides that "for any Speech or Debate in

either House, [Senators and Representatives] shall not be questioned in any other

Place."  U.S. Const. art. I, § 6, cl. 1.  The purpose of the Clause "is to insure that

the legislative function the Constitution allocates to Congress may be performed

independently," *Eastland*, 421 U.S. at 502, "without regard to the distractions of

private civil litigation or the perils of criminal prosecution."  *Brown & Williamson

Tobacco Corp. v. Williams*, 62 F.3d 408, 415 (D.C. Cir. 1995); *see also McCarthy

v. Pelosi*, 5 F.4th 34, 38 (D.C. Cir. 2021) ("The central object of the Speech or

Debate Clause is to protect the independence and integrity of the legislature.")

(internal quotation marks and citation omitted); *Judicial Watch*, 998 F.3d at 991

(same).  By preserving the independence of the legislative process, the Clause

serves to "reinforc[e] the separation of powers so deliberately established by the Founders.'" *Id.* (quoting *Eastland*, 421 U.S. at 502).

The Supreme Court has recognized that "the guarantees of that Clause are vitally important to our system of government," *Helstoski v. Meanor*, 442 U.S. 500, 506 (1979), and so, "[w]ithout exception," it has "read the Speech or Debate Clause broadly to effectuate its purposes." *Eastland*, 421 U.S. at 501; *McCarthy*, 5 F.4th at 38. Accordingly, "although it speaks of 'Speech or Debate,'" the Clause "extends to protect all 'legislative acts.'" *Judicial Watch*, 998 F.3d at 991 (quoting *Doe v. McMillan*, 412 U.S. 306, 312 (1973)); *see also McCarthy*, 5 F.4th at 39. The Clause thus provides immunity for all actions "within the sphere of legitimate legislative activity," *Eastland*, 421 U.S. at 503, which encompasses "anything 'generally done in a session of the House by one of its members in relation to the business before it.'" *McMillan*, 412 U.S. at 311 (quoting *Kilbourn v. Thompson*, 103 U.S. 168, 204 (1881)). The Clause protects

> the deliberative and communicative processes by which Members participate in committee and House proceedings with respect to the consideration and passage or rejection of proposed legislation or with respect to other matters which the Constitution places within the jurisdiction of either House.

*Gravel*, 408 U.S. at 625; *McCarthy*, 5 F.4th at 39.

The Clause equally covers committees as it does individual Members, *see Musgrave*, 104 F.4th at 361-65; *Judicial Watch*, 998 F.3d at 991-93, and provides

18

immunity "against actions brought by private individuals as well as those initiated by the Executive Branch." *Eastland*, 421 U.S. at 502-03.  And, where the Clause's immunity applies, it is "an absolute bar to interference." *Id.* at 503; *accord Musgrave*, 104 F.4th at 361 ("[W]hen the actions upon which a plaintiff seeks to predicate liability are legislative acts, the Speech or Debate Clause operates as a jurisdictional bar, conferring absolute immunity from suit.") (internal quotation marks and citation omitted); *Massie v. Pelosi*, 72 F.4th 319, 323 (D.C. Cir. 2023).

1.     The Actions Challenged By Dr. de la Torre Constitute
Legislative Acts Under Well-Established Precedent

The Supreme Court has held that congressional investigations, and subpoenas in support of such investigations, are part of the legislative power exercised by the House and Senate under the Constitution, see *Mazars USA,* 591 U.S. at 862-63; *McGrain*, 273 U.S. at 174-75, and, pursuant to delegations of those Chambers, by their committees.  *See Eastland*, 421 U.S. at 505.  As such, the Supreme Court and this Circuit have held that committees' investigative activities – whether authorizing investigations, issuing subpoenas, holding hearings, or producing committee reports on investigations – are legislative acts protected by the Clause.  *See id.* at 504; *McMillan*, 412 U.S. at 306; *Musgrave*, 104 F.4th at 363-65; *Judicial Watch*, 998 F.3d at 992.  Voting on resolutions and legislation is also a legislative act protected by the Clause, as is the preparation and adoption of committee reports.  *See Gravel*, 408 U.S. at 617 (stating that "Committee reports,

19

resolutions, and the act of voting are . . . covered" by the Speech or Debate Clause); *Massie*, 72 F.4th at 322-23 (holding that "enactment of the [House] Resolution and its enforcement . . . are legislative acts"); *McCarthy*, 5 F.4th at 38-40; *see also McMillan*, 412 U.S. at 311-12.

Straightforward application of these precedents confirms that the district court correctly determined the actions of the Committee and its Members challenged in this suit – issuing the subpoena to Dr. de la Torre, overruling his objections and declining to excuse his appearance, introducing resolutions on his default, voting to report those resolutions to the Senate, Members' "conduct at legislative committee hearings," and "the Committee's report" – "fall comfortably within the scope of the Speech or Debate Clause" and are all "[e]qually immune" from suit. Opinion at 8-9 [JA 129-30] (citations omitted).

> 2. Allegations of Improper Motive Cannot Undermine Senate Defendants' Absolute Immunity for These Facially Legislative Acts

Dr. de la Torre does not seriously challenge the district court's finding that the Committee's inquiry into Steward Health's bankruptcy and private equity's increased presence in the healthcare system is legislative activity, Opinion at 12 [JA 133], or that the issuance of the subpoena to him was a legislative act. Rather, he argues that the Committee's motive in overruling his objections and compelling his attendance was solely to "create a public spectacle" to "punish[]" and "harass"

him, Appellant's Br. at 13, 32, 33, by forcing him to invoke the Fifth Amendment in a public proceeding, serving "no legislative function." *Id.* at 33.

This argument is foreclosed by binding case law. As this Circuit has stated, "[i]n assessing whether the Committee's investigation is a 'legislative act[ ],' . . . 'we do not look to the motives alleged to have prompted it.'" *Musgrave*, 104 F.4th at 364 (quoting *Eastland*, 421 U.S. at 508); *In re Sealed Case*, 80 F.4th at 365 ("Legislative acts receive [the Clause's] protections regardless of the Member's subjective motives."); *Rangel v. Boehner*, 785 F.3d 19, 24 (D.C. Cir. 2015) ("Instead of looking into the defendants' 'motive or intent,' the standard for determining whether an act is legislative 'turns on the nature of the act' itself.") (quoting *Bogan v. Scott–Harris*, 523 U.S. 44, 54 (1998)).

As the Supreme Court has recognized, "[i]f the mere allegation that a valid legislative act was undertaken for an unworthy purpose would lift the protection of the Clause, then the Clause simply would not provide the protection historically undergirding it." *Eastland*, 421 U.S. at 508-09. Dr. de la Torre cannot challenge the legislative nature of the Committee's actions by pointing to the alleged motives of the Committee or its Members.[6]

---

[6] Dr. de la Torre cites statements by some Committee Members to argue that the Committee had an improper motive, Appellant's Br. at 2, 32, despite the fact that, as the district court stated, "the parties agree that the legislators' individual motives are irrelevant." Opinion at 15 n.7 [JA 136]. Statements by individual

(continued...)

21

Dr. de la Torre cites *McSurely v. McClellan (McSurely I)*, 553 F.2d 1277 (D.C. Cir. 1976), to argue that the specific intention underlying a particular legislative act can be used to vitiate the legislative nature of that act even if the overall investigation serves a legislative purpose. In *McSurely I*, state officials had seized the plaintiffs' private documents based on a warrant seeking "seditious materials" under Kentucky law. *Id.* at 1281-82. A federal court found Kentucky's sedition law facially unconstitutional and ordered the prosecutor to hold the seized materials in safekeeping pending appeal. *Id.* at 1282. Despite the court order, a Senate subcommittee investigator coordinated with the state prosecutor to access, review, and ultimately take copies of seized materials back to Washington, including materials he knew to be irrelevant to the subcommittee's investigation. *Id.*

The *McSurely I* plaintiffs filed suit against the subcommittee chairman, the investigator, and two other staff members. While the subcommittee's investigation into civil disorder and riots and its focus on particular individuals were found to serve legislative objectives, *id.* at 1287-88, the D.C. Circuit, by an

---

[6](...continued)
committee members cannot vitiate the legislative nature of facially legislative committee actions. *See Watkins*, 354 U.S. at 200; *Wilkinson v. United States*, 365 U.S. 399, 412 (1961) ("[I]t is not for us to speculate as to the motivations that may have prompted the decision of individual members of the subcommittee to summon the petitioner."); *see also Meadows v. Pelosi*, 639 F. Supp. 3d 62, 76 (D.D.C. 2022).

22

equally-divided en banc court, determined that the particular actions by the investigator in "select[ing] and seiz[ing]" certain "concededly irrelevant" documents fell outside the Clause's protections. *Id.* at 1294-95. The Court recognized that, "[i]n the usual case if the activity is arguably within the 'legitimate legislative sphere' the Speech or Debate Clause bars inquiry even in the face of a claim of 'unworthy motive.'" *Id.* at 1295. However, the Court concluded that the investigator's informal information gathering actions were not the "usual case" but, instead, fell "outside the protection of legislative immunity" because he *knowingly* "took and transported concededly extraneous material," which included private "personal letters.'" *Id.* at 1296.

The situation in *McSurely I* is vastly different from the circumstances in this case. Here, the Committee's investigation, hearing, subpoena, ruling, and votes challenged by Dr. de la Torre involve not merely "arguably," but facially legislative acts of a Senate committee for which, as is the "usual case," immunity applies regardless of "a claim of unworthy motive."

Rather than *McSurely I*, the case that *is* directly on point is the Supreme Court's decision in *Eastland*. There, a Senate subcommittee issued a subpoena to a bank seeking financial records from the accounts of a non-profit organization that had distributed publications opposing the Vietnam War to persons serving in the Armed Forces. *Eastland*, 421 U.S. at 493-94. The organization and two of its

23

members sued the Members of the subcommittee and its chief counsel alleging, similar to Dr. de la Torre here, that the "'sole purpose' of the subpoena was to 'harass, chill, punish and deter [the organization and its members] in their exercise of their rights and duties under the First Amendment[.]'" *Id.* at 495. Despite that allegation, the Supreme Court held that the actions of the subcommittee Members and chief counsel fell within the legislative sphere and were absolutely immune under the Clause, *id.* at 507, and that the legislative nature of the congressional action could not be undermined by "look[ing] to the motives alleged to have prompted it." *Id.* at 508. *Eastland* commands the same result here.

Dr. de la Torre attempts to circumvent the Supreme Court's proscription against inquiring into the motive behind legislative acts by asserting that, because his counsel's letter had "invoked" his Fifth Amendment rights, the Committee "knew" that "no testimony would be forthcoming," Appellant's Br. at 27, and therefore, the sole purpose for requiring his appearance must have been "to create a public spectacle, not to elicit information." *Id.* at 32. This argument misunderstands the scope of both congressional inquiry and the Fifth Amendment right of witnesses.

Unlike criminal defendants, witnesses in congressional hearings, as in other proceedings such as grand juries, do not have a Fifth Amendment right to be excused from appearing entirely when summoned; rather, they must appear and

24

assert any Fifth Amendment privilege in response to specific questions. *See infra* at 50. As the court below recognized, it is "a matter of discretion, not requirement[,]" whether to excuse a subpoenaed witness from attending a hearing. Opinion at 12 [JA 133]. Furthermore, the scope of questioning at a congressional hearing, unlike a criminal trial, is broad and not limited to a specific factual instance. A witness cannot and does not know in advance the full scope of possible questions that Members may ask sufficient to support a blanket Fifth Amendment invocation. The decision whether to assert the privilege can appropriately be made only in response to a specific question at a hearing. Only once the privilege is actually asserted in response to a specific question can a committee evaluate whether the privilege is properly claimed.

Until a witness appears for questioning and is presented with the actual choice of testifying or invoking the Fifth Amendment, his stated intention to invoke is just an intention, as the witness may not truly and certainly know what he will do until the circumstance triggering the decision arises. Indeed, as cited *infra* at 52, there have been instances in which witnesses before Senate committees have provided important testimony when called, despite earlier insisting they would assert their Fifth Amendment privilege as to all questions. A committee cannot and does not *know* in advance whether a witness will assert a Fifth Amendment privilege to any, let alone all, questions.

Accordingly, Dr. de la Torre's argument that his counsel's letter established that there could be no legislative purpose for requiring his appearance at the hearing is without merit.  The Committee had a legitimate basis to subpoena Dr. de la Torre and to decline to excuse his appearance.

Dr. de la Torre fails to demonstrate any error in the district court's holding that Senate Defendants are immune from this suit.

### 3.     The District Court Did Not Fail to Analyze the Legislative Nature of the Committee's Conduct

Finally, Dr. de la Torre's argument that the district court evaluated the legislative nature of the Committee's investigation generally, but "failed to analyze" whether the decision to require his appearance for testimony was, standing alone, legislative is without merit.  Appellant's Br. at 29.  The court below not only analyzed and found a clear legislative purpose underlying the Committee's inquiry into Steward Health's bankruptcy and the role of private equity in the healthcare system, Opinion at 11-12 [JA 132-33], but also found that the various actions challenged by Dr. de la Torre were immune acts, *id.* at 8-9, 12-15 [JA 129-30, 133-36], and specifically addressed his assertion that, because the Committee "knew" of his intent to invoke the Fifth Amendment, its insistence on his appearance did not qualify as a legislative act protected by the Clause.  *Id.* at 12 [JA 133].

Dr. de la Torre's argument suggests that courts must analyze each discrete Committee action in isolation from its function in the Committee's investigation. Such a narrow view, however, is incompatible with the "consistently broad construction" the Supreme Court has given the Clause. *Eastland*, 421 U.S. at 510-11. When a Committee, as here, acting through its Chairman and Ranking Member, rules on a witness's objection to a subpoena, it does so as part of the investigatory processes that effectuate the power of inquiry. Just as the subpoena power is a necessary part of that power, so is the ability to consider and rule on objections to subpoenas.

As the Supreme Court explained, the Clause's protection would be "meaningless" if it protected only Members' actions in authorizing investigations and not other procedural actions that are part of that investigation:

> The issuance of a subpoena pursuant to an authorized investigation is similarly an indispensable ingredient of lawmaking; without it our recognition that the act 'of authorizing' is protected would be meaningless. To hold that Members of Congress are protected for authorizing an investigation, but not for issuing a subpoena in exercise of that authorization, would be a contradiction denigrating the power granted to Congress in Art. I and would indirectly impair the deliberations of Congress.

*Id.* at 505. Similarly, to hold that a Committee and its Members are immune for authorizing and issuing a subpoena for information, but not for ruling on objections raised by witnesses in response to such subpoenas, would equally impair the ability and independence of Congress to conduct its investigations.

27

### B. The District Court Followed Appropriate Procedure for Resolving Congressional Defendants' Assertion of Speech or Debate Clause Immunity

The district court recognized that a motion to dismiss based on Speech or Debate Clause immunity raises an issue of subject matter jurisdiction, Opinion at 4-5 [JA 125-26] (citing *Massie*, 72 F.4th at 321); *Rangel*, 785 F.3d at 22, and the plaintiff bears the burden to establish jurisdiction. Opinion at 5 [JA 126]. The court then proceeded, in accord with previous Speech or Debate Clause decisions, to determine whether Senate Defendants had shown, based on the record[7] and, applying the established test for the Clause's application, that the challenged actions constituted legislative acts. *Id.* at 7-9 [JA 128-29]. Concluding that Senate Defendants had made that showing, the court then considered Dr. de la Torre's contrary arguments and found them without merit. The court thus held that Senate Defendants were immune from this suit. *Id.* at 6-19 [JA 127-40].

Dr. de la Torre contends that the court erroneously relieved Senate Defendants from having to "prove" their entitlement to the Clause's immunity and imposed on him the burden to refute that immunity. Appellant's Br. at 16-22. His

---

[7] The record here included the Committee Report and its exhibits. The court "may consider materials outside the pleadings in deciding whether to grant a motion to dismiss for lack of jurisdiction[,]" *Gulf Coast Maritime Supply, Inc. v. United States*, 867 F.3d 123, 128 (D.C. Cir. 2017) (quoting *Jerome Stevens Pharms., Inc. v. FDA*, 402 F.3d 1249, 1253 (D.C. Cir. 2005)), including matters subject to judicial notice, such as congressional committee reports.

argument is without merit, and none of the cases he cites demonstrates error in the district court's analysis.

The Supreme Court has explained that the Speech or Debate Clause provides Members of Congress with an absolute immunity from suit for their legislative activities, but does not "absolve" Members "of the responsibility of filing a motion to dismiss" to demonstrate the Clause's applicability. *See Powell*, 395 U.S. at 505 n.25; *Eastland*, 521 U.S. at 511 n.17. Once a congressional defendant meets that burden, the court then must "determine the applicability of the clause to plaintiff's action," *Powell*, 395 U.S. at 505 n.25, and do so with "the most expeditio[n]." *Eastland*, 421 U.S. at 511 n.17. That procedure set out by the Supreme Court is precisely the process courts in this Circuit have followed[8] and how the district court proceeded here.

Dr. de la Torre offers no explanation as to how this case differs from the normal proceedings in other Speech or Debate Clause cases. It appears that Dr. de

---

[8] *See, e.g.*, *Musgrave v. Warner*, No. 21-cv-2198 (BAH), 2022 WL 4245489, at *3-*5 (D.D.C. Sept. 15, 2022) (granting motion to dismiss on Speech or Debate Clause immunity grounds), *aff'd*, 104 F.4th 355 (D.C. Cir. 2024); *Massie v. Pelosi*, 590 F. Supp. 3d 196, 209-31 (D.D.C. 2022) (same), *aff'd*, 72 F.4th 319 (D.C. Cir. 2023); *Schilling v. Speaker of U.S. House of Representatives*, 633 F. Supp. 3d 272, 274-84 (D.D.C. 2022) (same), *aff'd on other grounds*, 102 F.4th 503 (D.C. Cir. 2024); *McCarthy v. Pelosi*, 480 F. Supp. 3d 28, 30, 37-39 (D.D.C. 2020) (same), *aff'd*, 5 F.4th 34 (D.C. Cir. 2021); *Judicial Watch, Inc. v. Schiff*, 474 F. Supp. 3d 305, 309, 316-19 (D.D.C. 2020) (same), *aff'd*, 998 F.3d 989 (D.C. Cir. 2021); *Porteous v. Baron*, 729 F. Supp. 2d 158, 160, 167 (D.D.C. 2010) (same).

la Torre's claim, Appellant's Br. at 41-42, that the burden was improperly shifted rests entirely on his argument that Senate Defendants should have been required to *prove* that their *motives* for compelling his appearance were properly legislative to be granted immunity. But, as explained *supra* 20-24, the Supreme Court and this Circuit have made clear that the applicability of the Clause does not depend on the motives of Members of Congress, and, thus, courts do not inquire into motives in determining the Clause's immunity. *See Rangel*, 785 F.3d at 24 ("Instead of looking into the defendants' motive or intent, the standard for determining whether an act is legislative turns on the nature of the act itself.") (internal quotation marks and citation omitted); *accord Eastland*, 421 U.S. at 508; *Musgrave*, 104 F.4th at 365.

"Once a court determines, as we have, that a congressional committee was '*apparently*' performing a legitimate investigative function, the court may not press on and inquire into 'the propriety and the motivation for the action taken." *McSurely v. McClellan ("McSurely II")*, 753 F.2d 88, 106 (D.C. Cir. 1985) (quoting *United States v. Dowdy*, 479 F.2d 213, 226 (4th Cir. 1973)). Hence, the district court did not erroneously shift to Dr. de la Torre the burden to prove Senate Defendants' motivation in requiring his appearance at the hearing, because no "proof" or "evidence" of motive is either required or relevant. There was no "burden of proof" to "shift."

30

The cases Dr. de la Torre cites in support, Appellant's Br. at 16-22, are all distinguishable for various reasons:

- They involved the Clause's testimonial or evidentiary privilege, not immunity from suit, *see United States v. Rostenkowski*, 59 F.3d 1291, 1300 (D.C. Cir. 1995) (addressing defendant congressman's request for pre-trial discovery and evidentiary hearing to review evidence to be used against him at criminal trial)[9]; *In re Grand Jury Investigation*, 587 F.2d 589, 597 (3d Cir. 1978) (applying the Clause's evidentiary use privilege to grand jury subpoena); or

- They addressed actions that were not facially legislative and thus required a further showing of legislative purpose, *see United States v. Brewster*, 408 U.S. 501, 516 (1972) (Clause does not encompass all official actions by Members, but only those that are part of the legislative process); *Fields v. Office of Eddie Bernice Johnson*, 459 F.3d 1, 10-11 (D.C. Cir. 2006) (en banc) (plurality) (evaluating congressional personnel decisions, which are

---

[9] Dr. de la Torre concedes that *Rostenkowski* addressed the Clause's evidentiary privilege, not immunity from suit, but argues that "the Court did not differentiate between the two categories for purposes of allocating the burden of proof, nor has any subsequent decision done so." Appellant's Br. at 21. But this Court has stated repeatedly that the Clause's immunity from suit, which operates as a bar to jurisdiction, is distinct from its evidentiary or testimonial privileges, which do not. *See Massie*, 72 F.4th at 321 n.1; *Clyde v. Walker*, No. 22-5263, 2023 WL 6939987, at *1 & n.4 (D.C. Cir. Oct. 20, 2023).

not presumptively legislative)[10]; *United States v. Menendez*, 831 F.3d 155 (3d Cir. 2016) (distinguishing criminal prosecution for use of official position to advocate for friend from civil lawsuits challenging "inherently" or "manifestly legislative acts"); *Gov't of V.I. v. Lee*, 775 F.2d 514, 524 (3d Cir. 1985) (criminal prosecution for obtaining reimbursement for allegedly personal business meetings); or

• They involved application of other immunities that arise from common law or "a complex statutory scheme," Opinion at 22 n.11 [JA 143], not the Constitution, and are irrelevant to application of Speech or Debate Clause immunity. *See Ivanenko v. Yanukovich*, 995 F.3d 232, 236 (D.C. Cir. 2021) (Foreign Sovereign Immunities Act); *Broidy Cap. Mgmt. LLC v. Muzin*, 12 F.4th 789 (D.C. Cir. 2021) (common law foreign sovereign immunity); *Williams v. Big Picture Loans, LLC*, 929 F.3d 170, 176-77 (4th Cir. 2019) (application of common law tribal immunity to business entities requires proof that they are "arm of the tribe" under fact-based, multi-factor test).

---

[10] Although Dr. de la Torre asserts that *Fields* "*obliged* a Congressional office to provide an affidavit 'recounting facts sufficient to show that the challenged [action was] . . . protected by the Speech or Debate Clause." Appellant's Br. at 16 (emphasis added), the plurality in *Fields* merely suggested that personnel actions not clearly part of the legislative function might qualify for immunity where an "employing [Member] office [could] produce[] evidence – by affidavit, for example – that the personnel decision was made because of the plaintiff's poor performance of conduct that is an integral part of 'the due functioning of the [legislative] process.'" 459 F.3d at 15 (citing *Brewster*, 408 U.S. at 516)).

Notably, none of these cases required congressional defendants to prove they had a proper motive for clearly legislative actions to qualify for Speech or Debate Clause immunity.

Rather, "[m]anifestly legislative acts," such as "introducing and voting on proposed resolutions and legislation, introducing evidence and interrogating witnesses during committee hearings, subpoenaing records for committee hearings, inserting material into the Congressional Record, and delivering a speech in Congress," *Menendez*, 831 F.3d at 166, are "'so clearly legislative in nature that no further examination has to be made to determine their appropriate status.'" *Id.* (quoting *Lee*, 755 F.2d at 522).  Senate Defendants' actions challenged here *are* quintessential "manifestly legislative acts" that are "so clearly legislative in nature" that "no further examination" is needed to conclude they are legislative acts immune under the Clause.  Dr. de la Torre's protestations of burden shifting are simply much ado about nothing and demonstrate no reversible error.

## II.  THE DISTRICT COURT DID NOT ABUSE ITS DISCRETION IN DENYING PLAINTIFF'S MOTION FOR LEAVE TO CONDUCT JURISDICTIONAL DISCOVERY

Dr. de la Torre moved the district court for leave to conduct jurisdictional discovery to challenge the application of immunity to Senate Defendants' actions. In considering that motion, the district court recognized that, because Speech or Debate Clause immunity "not only provides a defense on the merits but also

protects a legislator from *the burden of defending himself*," *Powell*, 395 U.S. at 502-03 (emphasis added); *see also Eastland*, 421 U.S. at 503, courts are "strongly admonished to tread carefully" when considering requests for discovery in Speech or Debate Clause cases. Opinion at 21 [JA 142].

Under this Circuit's decision in *Musgrave,* jurisdictional discovery is properly denied when "the discovery [is] itself precluded by the Speech or Debate Clause" or "'no facts that additional discovery could produce would affect' the Speech-or-Debate Clause analysis." 104 F.4th at 365 (citing *Lewis v. Mutond*, 62 F.4th 587, 595 (D.C. Cir. 2023)). Here, the district court concluded that no basis exists to allow discovery because Dr. de la Torre "has not shown that any requested discovery could produce information that would affect the Speech-or-Debate analysis[.]" Opinion at 22 [JA 143].

Dr. de la Torre posits "three critical errors" in the court's denying him jurisdictional discovery. Appellant's Br. at 37, 40. None of his arguments has merit.

First, Dr. de la Torre claims that the court "mischaracterized [his] requests as seeking only information about 'the Committee's knowledge about his Fifth Amendment invocation,' which it deemed irrelevant," when, he asserts, "the requests sought evidence of whether the Committee's actions supported specific legislation or were otherwise in the legislative sphere[.]" Appellant's Br. at 40 (quoting Opinion at 20 [JA 141]). However, the three discovery requests Dr. de la

34

Torre specifically identifies as "bearing on whether the challenged acts served any legislative function" all address his purported Fifth Amendment invocation.  *Id.* at 39 (noting document requests regarding (1) "the ultimate legislative purpose of Dr. de la Torre's attendance at the September 12 Hearing *despite his invocation*," (2) "the Committee's enforcement efforts of the Subpoena, and what the purported purpose was of Dr. de la Torre appearing at the September 12 Hearing solely to *re-invoke the Fifth Amendment*," and (3) "the Committee's decision to 'overrule' Dr. de la Torre's *Fifth Amendment invocation* and the grounds for such decision.") *Id.* (emphasis added)).

Moreover, Dr. de la Torre's claim that these requests are necessary to show "evidence of whether the Committee's action supported specific legislation or were otherwise in the legislative sphere," *id.* at 40, ignores that, as the Supreme Court has made clear, no specific legislation needs to be identified in order to demonstrate the legislative character of congressional investigative acts.  *See Eastland*, 421 U.S. at 509 ("Nor is the legitimacy of a congressional inquiry to be defined by what it produces. . . . To be a valid legislative inquiry there need be no predictable end result"); *Barenblatt v. United States*, 360 U.S. 109, 111 (1959) ("The power of inquiry" covers any subject on which Congress "*might legislate or decide upon due investigation not to legislate. . . .*") (emphasis added).  Because the district court had an adequate factual record from which "to determine that the

35

investigation's purpose was 'facially legislative,'" Opinion at 20 [JA 141] (internal citation omitted), no further facts about specific legislation would affect this inquiry.  Accordingly, such discovery is neither warranted nor necessary.  *See Musgrave,* 104 F. 4th 355 (affirming denial of discovery to test "legislative purpose" in applying Speech or Debate Clause).

Second, relying on *In re Sealed Case*, 80 F.4th 355 (D.C. Cir. 2023), Dr. de la Torre claims that the district court "failed to apply the document-by-document analysis as required by precedent" and its "blanket denial [of his request for discovery] ignored this distinction."  Appellant's Br. at 41.  Again, it is Dr. de la Torre who ignores the distinction between the Clause's immunity from suit and its testimonial and evidentiary privileges.  *In re Sealed Case* did not involve a civil suit against Members of Congress, which implicates the Clause's jurisdictional bar, but rather a search warrant in a criminal matter authorizing the seizure and review of the contents of a Member's personal cell phone, which implicated the Member's testimonial privilege regarding specific communications contained on the device.  80 F.4th at 366.  Application of testimonial privilege to a device used for both personal and official business requires a particularized review to determine which items on the device constitute legislative materials protected by the Clause's privilege.

Unlike in such a case, a "fact-specific," "document-by-document" analysis

is not necessary where, as here, the court considers a request for jurisdictional discovery to test the application of the Clause's immunity to facially legislative acts challenged in a civil suit. Requiring such an analysis in adjudicating a motion for jurisdictional discovery into a Member's facially legislative acts would undermine the very purpose of the Clause's immunity *from suit* by burdening Members with defending – "document-by-document" – against intrusive discovery requests regarding purely legislative activities.[11]

Third, plaintiff argues, without citing any legal authority, that "the district court failed to account for how its burden misallocation made discovery essential." Appellant's Br. at 41. As explained in detail in section I.B above, the district court did not erroneously shift to Dr. de la Torre the burden to refute the application of the Clause's immunity or relieve Senate Defendants from having to "prove" their entitlement to immunity. The district court followed the same framework applied in other recent Speech or Debate Clause cases involving facially legislative acts and correctly concluded that the Senate Defendants had established their immunity. None of the discovery Dr. de la Torre requested is either relevant or necessary to the resolution of that question.

---

[11] As the district court correctly found, to the extent Dr. de la Torre also seeks discovery into "non-legislative acts," such as press statements, this discovery is also barred because those actions are not the basis of any of his legal claims and, therefore, cannot support jurisdictional discovery related to Speech or Debate Clause immunity. Opinion at 21 [JA 142].

Dr. de la Torre's passing reference to *Jewish War Veterans of the U.S.A., Inc. v. Gates*, 506 F. Supp. 2d 30 (D.D.C. 2007), *see* Appellant's Br. at 40, does not support a contrary conclusion, as the court there permitted discovery *not* to test an assertion of the Speech or Debate Clause, but rather to understand the "legislative purpose" of a federal statute as it related to the then-applicable Establishment Clause test set forth in *Lemon v. Kurtzman*, 403 U.S. 602 (1971). *Jewish War Veterans*, 506 F. Supp. 2d at 43-46.  Unlike the discovery sought here, *Jewish War Veterans* did not concern discovery of privileged documents from defendant Members of Congress to evaluate their motives behind plainly legislative acts.

The district court did not err – much less abuse its discretion – in declining Dr. de la Torre's request for discovery.

## III.    ALTERNATIVE GROUNDS EXIST FOR AFFIRMING THE DISMISSAL OF THIS SUIT

### A.    Dr. de la Torre Lacks Standing to Bring His Claims

"Article III of the Constitution confines the federal judicial power to 'Cases' and 'Controversies,'" and "a case or controversy can exist only if a plaintiff has standing to sue[.]" *United States v. Texas*, 599 U.S. 670, 675 (2023).  Requiring a plaintiff demonstrate standing "serves to prevent the judicial process from being used to usurp the powers of the political branches," *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 408 (2013).  Indeed, "the law of Art. III standing is built on a single

38

basic idea – the idea of separation of powers[,]" and, therefore, the standing inquiry is "especially rigorous" where "reaching the merits of the dispute would force [the Court] to decide whether an action taken by one of the other two branches of the Federal Government was unconstitutional." *Raines v. Byrd*, 521 U.S. 811, 819-20 (1997) (internal quotation marks and citation omitted).

"The plaintiff, as the party invoking federal jurisdiction, bears the burden of establishing the[] elements" of standing. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). To do so, a plaintiff must show that (1) he "ha[s] suffered an injury in fact – an invasion of a legally protected interest which is (a) concrete and particularized, . . . and (b) actual or imminent, not conjectural or hypothetical;" (2) the injury was caused by or is "fairly . . . trace[able] to the challenged action of the defendant"; and (3) it is "likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992) (internal quotation marks and citations omitted).

Dr. de la Torre alleges that he suffered injury because he was "punished" for asserting his Fifth Amendment right by being "tarred and feathered live at a public hearing," "being held in contempt," and "being prosecuted by the United States," Am. Compl. at 9-10, ¶¶ 10, 11, 12 [JA 20-21], and that he suffered "reputational damage" that rendered him "no longer able to serve as CEO of [Steward Health.]" *Id.* ¶ 65 [JA 64-65]. None of these alleged injuries satisfies Article III standing.

First, Dr. de la Torre's alleged injury from being forced to appear at a public congressional hearing and treated harshly during questioning cannot support standing. Leaving aside whether any "mistreatment" at the hearing would have occurred, and, if it had, whether it would constitute a "legally cognizable harm," the fact is Dr. de la Torre did not suffer any such treatment because he willfully chose *not to appear*.

Dr. de la Torre's assertion that he has been punished by "being held in contempt" also fails to establish standing. The Committee did not "punish" Dr. de la Torre for contempt of the subpoena; what the Committee did was report to the full Senate proposed resolutions for action regarding his failure to comply with the subpoena. The Senate, which is not a defendant here, adopted Senate Resolution 837 directing the President of the Senate to certify Dr. de la Torre's default to the U.S. Attorney for presentment to a grand jury. *See* 2 U.S.C. § 194 (procedures for certifying witness's default to U.S. Attorney). Any concrete harm from "being held in contempt" would only be suffered if and when he is convicted and criminally sanctioned following trial for disobeying the Committee's subpoena. No such sanction has been imposed, and it remains speculative whether one will be. *Cf. Pauling v. Eastland*, 288 F.2d 126, 130 (D.C. Cir. 1960) (statement of Prettyman, C.J., concurred in by Bastien, J.) ("[I]t is perfectly clear in my view that, if Pauling should be cited for contempt and thereafter convicted, either by the

40

Senate or by a court, of contempt, the courts will review that judgment and may in that proceeding pass upon the validity of the order of the Subcommittee. It is equally clear to me that the courts have no power in the proceeding presently before us to pass upon, either by injunction or by declaratory judgment, the validity of the Subcommittee order.").

Accordingly, Dr. de la Torre's claim of injury from the risk of "being prosecuted by the United States" does not establish standing. While the Senate adopted a resolution certifying Dr. de la Torre's default to the U.S. Attorney over a year ago, he has not yet been indicted by a grand jury; therefore, that injury is merely "conjectural" and not "imminent." *Clapper*, 568 U.S. at 409 ("[T]hreatened injury must be certainly *impending* . . . allegations of *possible* future injury are not sufficient.") (internal quotation marks and citation omitted). Whether the U.S. Attorney will seek an indictment against him, and whether a grand jury will return such an indictment, are simply too speculative to support standing. *See Whitmore v. Arkansas,* 495 U.S. 149, 159-60 (1990) ("It is just not possible for a litigant to prove in advance that the judicial system will lead to any particular result in his case. Thus, . . . there is no amount of evidence that potentially could establish that [plaintiff]'s asserted future injury is 'real and immediate.'") (internal citation omitted).

Any harm from a future prosecution also lacks causation and redressability.

41

Any potential injury from a prosecution under 2 U.S.C. § 192 would be caused by the independent action of third parties – namely, the U.S. Attorney, who requests an indictment, and the grand jury, which determines whether to return an indictment – not by Senate Defendants. *See Simon v. E. Ky. Welfare Rts. Org.*, 426 U.S. 26, 41-42 (1976) ("[T]he 'case or controversy' limitation of Art. III . . . requires that a federal court act only to redress injury that fairly can be traced to the challenged action of the defendant, and not injury that results from the independent action of some third party not before the court."); *accord Arpaio v. Obama*, 797 F.3d 11, 19 (D.C. Cir. 2015).

In addition, such alleged harms cannot be redressed in a suit against *Senate Defendants*, because the Speech or Debate Clause precludes courts from ordering relief against Members of Congress for the legislative acts that allegedly injured Dr. de la Torre. Even were it within the Court's power, relief against Senate Defendants would be unable to prevent the harm from potential future prosecution. The Committee reported Senate Resolution 837 to the Senate, the Senate adopted it, and the President Pro Tempore certified the matter to the U.S. Attorney. The Committee's and the Senate's action is complete.[12] The matter is now in the hands

---

[12] Indeed, any controversy presented by Senate Defendants' actions challenged by Dr. de la Torre would be moot as Senate action is completed and there is no relief a court can grant to undo any of those actions. *See Senate Permanent Subcomm. on Investigations v. Ferrer*, 856 F.3d 1080, 1085-89 (D.C.

(continued...)

42

of the U.S. Attorney and of the grand jury, which has independent authority to decide whether to return an indictment. No relief against Senate Defendants could remedy injury from the "risk" of future prosecution.

Dr. de la Torre's generalized assertion of "reputational damage," Am. Compl. ¶ 65 [JA 64], also fails to establish standing to sue Senate Defendants. While Dr. de la Torre alleges that he "is no longer able to serve as CEO" of Steward Health, he makes no allegations that the Committee's subpoena and the Senate's certification of his default caused his removal by the company's Board. Indeed, as he acknowledges in the amended complaint, he was not terminated but resigned, *Id.* ¶ 66 [JA 65], and, as his spokesperson stated, "amicably separated" from Steward Health. *See* Mark Arsenault and Jessica Bartlett, *Steward Health Care CEO Ralph de la Torre Will Resign*, THE BOSTON GLOBE (Sept. 28, 2024), https://www.bostonglobe.com/2024/09/28/business/ralph-de-la-torre-steward-health-care-ceo-resigns/, *cited in* Am. Compl. ¶ 65 n.24 [JA 65]. Such "self-inflicted harm" does not establish a causal link to Senate Defendants sufficient for standing. *See Taylor v. FDIC*, 132 F.3d 753, 767 (D.C. Cir. 1997) (voluntary resignation breaks chain of causation for standing purposes).

While Dr. de la Torre may claim he suffers on-going reputational harm from

---

[12](...continued)
Cir. 2017); *see also Rangel v. Boehner*, 20 F. Supp. 3d 148, 162 (D.D.C. 2013), *aff'd on other grounds*, 785 F.3d 19 (D.C. Cir. 2015).

the Committee's subpoena, ruling, hearing, and votes on the resolutions, those actions have been completed and any injury to his reputation from them constitutes only a "lingering," "secondary effect" that is a "byproduct of government action," insufficient to support standing. *See Foretich v. United States*, 351 F.3d 1198, 1212 (D.C. Cir. 2003) ("Our case law makes clear that where reputational injury is the lingering effect of an otherwise moot aspect of a lawsuit, no meaningful relief is possible and the injury cannot satisfy the requirements of Article III."); *McBryde v. Comm. to Review Cir. Council Conduct and Disability Orders of the Jud. Conf. of the U.S.*, 264 F.3d 52, 57 (D.C. Cir. 2001) (no on-going reputational injury to federal judge, other than collateral consequences, from one-year suspension and three-year disqualification that had already expired). Additionally, no relief against Senate Defendants can reverse Senate action here as the Senate has already passed the Committee's resolution certifying plaintiff's default and the President Pro Tempore has sent that certification to the U.S. Attorney. *See Rangel*, 20 F. Supp. 3d at 162 ("Assuming that the House reversing course and striking [plaintiff's] censure would remedy his reputational harm – although defendants contest this point, too – this Court has no power to issue an order bringing about that result."), *aff'd on other grounds*, 785 F.3d 19 (D.C. Cir. 2015).

The D.C. Circuit's decision in *Foretich*, 351 F.3d 1198, relied on by Dr. de la Torre below, does not support his standing. In *Foretich*, the plaintiff challenged

44

an Act of Congress as an unconstitutional Bill of Attainder, alleging that the law harmed his reputation because it "embodie[d] a congressional determination that he engaged in criminal acts of child abuse," *Id.* at 1211, and gave "the imprimatur of government authority . . . effectively denounc[ing him] as a danger to his own daughter." *Id.* at 1215. While Dr. de la Torre alleges reputational harm from criticism of his management of Steward Health and comments about criminal investigations of him, *see, e.g.*, Am. Compl. ¶¶ 47, 65 [JA 57-58, 64-65], the Committee's resolution certifying his default does not address, much less "embody," anything regarding his actions at Steward Health or any criminal investigations of him. Hence, unlike in *Foretich*, the government action here provided no "imprimatur" to negative comments on Dr. de la Torre's actions as CEO of Steward Health. *Cf. Saline Parents v. Garland*, 88 F.4th 298, 306 (D.C. Cir. 2023) ("Appellants have not offered anything to show that the Government labeled them in any way, let alone impugned their reputations. Any reputational injury Appellants believe they have suffered is therefore insufficient to satisfy Article III.").

Furthermore, unlike in *Foretich*, where the plaintiff sought relief against the United States and the District of Columbia, Dr. de la Torre sues U.S. Senators and a Senate committee, which are constitutionally immune from having any judgment or relief, including declaratory relief, issued against them for the legislative activities challenged here, and, thus, his alleged reputational injury cannot be

45

redressed in this suit.

Dr. de la Torre has failed to establish Article III standing to assert his claims against Senate Defendants.

### B.      Dr. de la Torre May Not Use a Civil Lawsuit as a Vehicle to Forestall a Criminal Proceeding

Dr. de la Torre's amended complaint essentially seeks to block any criminal proceeding against him for failure to comply with the Committee's subpoena.  Yet, the Supreme Court and this Court have rejected attempts to use civil lawsuits to interfere with threatened criminal proceedings.  The leading case here is *Younger v. Harris,* 401 U.S. 37 (1971), where the Supreme Court barred a federal injunction against a state criminal prosecution, holding that a threat of prosecution does not constitute harm that justifies federal court interference in a criminal proceeding, "when the moving party has an adequate remedy at law and will not suffer irreparable injury if denied equitable relief."  *Id.* at 43-44.  The ability to present defenses in the criminal action furnishes the adequate remedy.  *See id.* at 49.

While *Younger* involved federalism concerns, *see id.* at 44-45, it also rested its holding on "equitable principles."  *Id.* at 55.  Applying *Younger*'s equitable principles combined with separation-of-powers concerns, this Court held in *Deaver v. Seymour*, 822 F.2d 66 (D.C. Cir. 1987), that suits by prospective criminal defendants seeking to prevent a *federal* criminal indictment are equally precluded.  The plaintiff in *Deaver*, seeking to prevent a potential forthcoming

indictment, sued the independent counsel investigating him claiming that the prosecutor's appointment was invalid under the Constitution. *See id.* at 67-68. The Court held that "[e]ven were we disposed to agree entirely with appellant's constitutional argument, we think he has no right to an injunction restraining a pending indictment in a federal court." *Id.* at 68.

Since *Deaver*, this Circuit has consistently rejected attempts to use civil suits to intercept federal investigations and prosecutions, *see In re Al-Nashiri*, 835 F.3d 110, 126-27 (D.C. Cir. 2016) ("[T]he availability of legal remedies in Article III courts has historically *barred* criminal defendants from receiving pretrial equitable relief"), including cases where no indictment had yet been issued. *See Miranda v. Gonzales*, 173 F. App'x 840, 841 (D.C. Cir. 2006) (affirming dismissal of pre-indictment federal civil suit, explaining that "if indicted, [plaintiff] can protect his rights . . . pursuant to [Fed. R. Crim. P.] 12(b)"); *In re Sealed Case*, 829 F.2d 50, 62 n.60 (D.C. Cir. 1987) ("As we said in *Deaver*[,]. . . courts do not, except in very limited circumstances not alleged here, entertain the claim of a person subject to a criminal investigation that the investigation is unlawful and must therefore be enjoined."); *see also Manafort v. U.S. Dep't of Justice,* 311 F. Supp. 3d 22, 26 (D.C. Cir. 2018) ("[A] civil case is not the appropriate vehicle for taking issue with what a prosecutor has done in the past or where he might be headed in the future."); *North v. Walsh*, 656 F. Supp. 414, 423 (D.D.C. 1987)

47

("Colonel North, like any other potential criminal defendant, can raise his objections by appropriate motions, *if* and *when* an indictment is entered.").

The principles set forth in *Younger, Deaver,* and related cases squarely foreclose this lawsuit. The relief sought includes requests that the Court declare the subpoena and the Committee's vote in favor of the resolutions violated Dr. de la Torre's Fifth Amendment rights and enjoin the Committee from causing him "to suffer from additional punishment for invoking his Fifth Amendment rights" in response to the subpoena. Am. Compl. at 32, Prayer for Relief, [JA 72]; *see also id.* ¶ 13 [JA 51]. In effect, Dr. de la Torre seeks a pre-indictment ruling from the court that no crime was committed because the Committee violated his Fifth Amendment rights. His lawsuit is plainly an improper attempt to interfere in potential criminal proceedings through an ancillary civil action.

That Dr. de la Torre nominally seeks redress for purported violations of his constitutional rights against Senate Defendants, and not a federal prosecutor, does not escape the application of *Deaver* and its progeny. The relevant question is not which government official is sued, but whether the relief requested would interfere with an ongoing criminal investigation or prosecution.

In sum, Dr. de la Torre's requests for declaratory and injunctive relief cannot be construed as anything other an attempt to unwind actions taken against him to prevent enforcement of the criminal contempt of Congress statute, 2 U.S.C.

48

§§ 192, 194.  As the Court has made clear, the Federal Rules of Criminal Procedure provide a forum and opportunity for criminal defendants to raise their legal defenses to any forthcoming indictment.  *Deaver*, 822 F.2d at 69-71; *see e.g.*, *United States v. Bannon,* 101 F.4th 16, 25-27 (D.C. Cir. 2024) (criminal defendant charged with contempt of Congress for failure to comply with congressional subpoena moved to dismiss indictment, in part on grounds that "subpoena was invalid"); *United States v. Navarro*, 651 F. Supp. 3d 212, 222-29 (D.D.C. 2023) (criminal defendant charged with contempt of Congress for failure to comply with congressional subpoena raising defenses by motion in his criminal case).  Dr. de la Torre may not forestall such a criminal proceeding through this preemptive civil action.

### C.    Dr. de la Torre's Amended Complaint Fails to State a Claim for Violation of His Fifth Amendment Rights

The dismissal of Dr. de la Torre's amended complaint may also be affirmed because the allegation that the Committee required him to appear at its hearing despite his counsel's letter stating that doing so would infringe on his constitutional rights does not state a claim for violation of the Fifth Amendment as a matter of law.  Am. Compl. ¶¶ 85, 86 [JA 71].[13]

Under well-established case law, only a defendant in a criminal trial has the absolute right to avoid taking the witness stand either to testify or affirmatively to

---

[13]  While the amended complaint nominally asserts a second claim for relief, that the subpoena lacked a valid legislative purpose, Am. Compl. ¶¶ 71-78 [JA66-69], it points to no law establishing a cause of action for such a claim.

assert a Fifth Amendment privilege.  *See Jenkins v. Anderson*, 447 U.S. 231, 235

(1980) ("The Fifth Amendment guarantees an *accused* the right to remain silent

*during his criminal trial* and prevents the prosecution [from] commenting on the

silence of a defendant who asserts the right.") (emphasis added).  In contrast,

witnesses to proceedings, including congressional committee hearings, have no

blanket Fifth Amendment right to be excused from appearing when summoned to

testify, but must instead appear for testimony and assert the privilege as to specific

questions.  *See United States v. Duran*, 884 F. Supp. 573, 574 (D.D.C. 1995)

(citing *Allen v. Illinois*, 478 U.S. 364, 368 (1986)).  Notably, courts have held that

even *targets* of criminal investigations may be compelled to appear before a grand

jury.  *See e.g., United States v. Friedman,* 445 F.2d 1076, 1088 (9th Cir. 1971);

*United States v. Cefalu,* 338 F.2d 582, 584 (7th Cir. 1964).[14]

      The Supreme Court's decision in *Bank of Nova Scotia v. United States*, 487

U.S. 250 (1988), demonstrates the lack of merit to Dr. de la Torre's Fifth

Amendment claim.  There, the Supreme Court rejected efforts to dismiss an

---

[14] Although courts in some criminal trials have exercised their discretion and excused a non-defendant witness from having to take the stand and invoke the Fifth Amendment privilege in front of the jury, s*ee, e.g.*, *United States v. Reese*, 561 F.2d 894, 899-901 (D.C. Cir. 1977); *Bowles v. United States*, 439 F.2d 536, 541-42 (D.C. Cir. 1970) (en banc); *Fletcher v. United States*, 332 F.2d 724, 725-27 (D.C. Cir. 1964), they did so to protect the defendant's fair trial interests and not the rights of the witness.  Such concern is not implicated in congressional committee hearings.

indictment based on alleged violations in the underlying grand jury proceedings, including that prosecutors had required witnesses to appear before the grand jury despite the witnesses having stated their intention to assert the Fifth Amendment privilege. *Id.* at 258-59. The Supreme Court held that "no Fifth Amendment violation occurred as a result of the Government's calling seven witnesses to testify despite an avowed intention to invoke their Fifth Amendment privilege." *Id.* at 258. The Court explained that the Government was not required to accept "at face value" the assertions made by these witnesses outside the grand jury room. *Id.* at 259.

Dr. de la Torre's Fifth Amendment claim, Am. Compl. ¶ 83 [JA 70]; Appellant's Br. 27-28, rests on the same reasoning the Supreme Court rejected in *Bank of Nova Scotia*. As the Supreme Court noted there, the Committee here was not required to accept assertions made by counsel prior to the hearing, and, like the grand jury witnesses there*,* Dr. de la Torre had no Fifth Amendment right excusing him from appearing entirely.

As discussed previously, Dr. de la Torre's Fifth Amendment claim fundamentally misunderstands the nature of congressional hearings, which, unlike criminal trials, address broad subjects with many possible areas of inquiry. Hence, any pre-appearance intention to assert a Fifth Amendment privilege to all possible questions is particularly speculative. Indeed, there have been instances in which

51

witnesses before Senate committees have provided important testimony when called, despite earlier insisting that they would assert their Fifth Amendment privilege as to all questions. *See, e.g., Mismanagement of Contracts at Arlington National Cemetery: Hearing before the Ad Hoc Subcomm. on Contracting Oversight of the Senate Comm. on Homeland Security and Governmental Affairs*, S. Hrg. No. 111-1008, 111th Cong., at 9-10 (2010) (witness indicated intent to assert Fifth Amendment but responded to questions at hearing); *The Hidden Operators of Deceptive Mailings: Hearing before the Permanent Subcomm. on Investigations of the Senate Comm. on Governmental Affairs*, S. Hrg. No. 106-181, 106th Cong., at 26-30, 36-40 (1999) (witness declined to answer two questions on Fifth Amendment privilege grounds, but responded to numerous other questions).

If Dr. de la Torre believed he faced a legitimate threat of criminal liability, he assuredly had the right to avail himself of his Fifth Amendment privilege and not answer those questions at the hearing where a response might tend to incriminate him, as the Committee informed him. [JA 103-04]. When witnesses have done so, committees have treated them respectfully, recognizing the privilege and excusing the witness from the hearing once the privilege had been specifically

52

invoked in response to questions.[15]  Unlike those witnesses, however, Dr. de la Torre chose not to appear, and thus, he never properly invoked the Fifth Amendment privilege.

Accordingly, the amended complaint's allegations against Senate Defendants do not state a claim for violation of Dr. de la Torre's Fifth Amendment rights as a matter of law.

---

[15] *See e.g., No Guarantees: As Pension Plans Crumble, Can PBGC Deliver? Hearing before the Special Comm. on Aging*, S. Hrg. No. 111-153, 111th Cong., at 3-4 (2009) (statement of committee chair in response to witness's invocation of Fifth Amendment); *Backpage.com's Knowing Facilitation of Online Sex Trafficking: Hearing before the Permanent Subcomm. on Investigations of the Senate Comm. on Homeland Security and Governmental Affairs*, S. Hrg. No. 115-6, 115th Cong., at 10-19 (2017) (witnesses declined to answer questions on Fifth Amendment privilege grounds and were subsequently excused from the hearing); *Tax Haven Banks and U.S. Tax Compliance: Hearings before the Permanent Subcomm. on Investigations of the Senate Comm. on Homeland Security and Governmental Affairs*, S. Hrg. No. 110-614, 110th Cong., at 31-34, 51-53 (2008) (same).

**CONCLUSION**

For these reasons, the Court should affirm the judgment of the district court.

Respectfully submitted,

*/s/ Morgan J. Frankel*
MORGAN J. FRANKEL
morgan_frankel@legal.senate.gov
D.C. Bar #342022
Senate Legal Counsel

PATRICIA MACK BRYAN
D.C. Bar #335463
pat_bryan@legal.senate.gov
Deputy Senate Legal Counsel

THOMAS E. CABALLERO
thomas_caballero@legal.senate.gov

VIVIAN M. RIVERA
vivian_rivera@legal.senate.gov
Assistant Senate Legal Counsel

Office of Senate Legal Counsel
642 Hart Senate Office Building
Washington, D.C. 20510-7250
(202) 224-4435 (tel)

February 6, 2026                    Counsel for Appellees

**CERTIFICATE OF COMPLIANCE
WITH TYPE-VOLUME LIMITATION AND
TYPEFACE AND TYPE-STYLE REQUIREMENTS
OF FED. R. APP. P. 32(a)**

I certify that this brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B), and the typeface and type style requirements of Fed. R. App. P. 32(a)(5)-(6) because:

(1) this brief contains 12,974 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f) and Circuit Rule 32(e)(1); and

(2) this brief has been prepared in a proportionally spaced typeface using Word Perfect 2021 in Times New Roman, 14-point font.

*/s/ Morgan J. Frankel*
MORGAN J. FRANKEL

# CERTIFICATE OF SERVICE

I certify that, on February 6, 2026, I filed electronically the foregoing Brief of Appellees with the Clerk of the Court using the CM/ECF system, which will provide notice of electronic filing to the following:

Derek L. Shaffer        derekshaffer@quinnemanuel.com
Christopher G. Michel    christophermichel@quinnemanuel.com
William A. Burck        williamburck@quinnemanuel.com
Alexander J. Merton      ajmerton@quinnemanuel.com
Rachel G. Frank         rachelfrank@quinnemanuel.com
Kaylee A. Otterbacher    kayleeotterbacher@quinnemanuel.com

QUINN EMANUEL URQUHART & SULLIVAN LLP
1300 I Street, NW, Suite 900
Washington, DC 20005

Counsel for Appellant

 */s/ Morgan J. Frankel*
MORGAN J. FRANKEL